CLARENCE & DYER LLP
Nanci L. Clarence, SBN 122286
Kate Dyer, SBN 171891
Jodi Linker, SBN 230273
899 Ellis Street
San Francisco, CA 94109-7807
Telephone: (415) 749-1800
Facsimile:  (415) 749-1694

Attorneys for Defendant Thomas F. White

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSE ROE I, a minor, through JOSE ROE IV, a minor, by MAURICIO RODRIGUEZ BORREGO, their guardian ad litem; and CARLOS ROE I through CARLOS ROE XVIII, inclusive,<br><br>        Plaintiffs,<br><br>v.<br><br>THOMAS F. WHITE, NATHAN LOVAAS, ARTHUR COLLINGSWORTH, and DOES 1 through 100, inclusive,<br><br>        Defendants. | Case No.: C-03-4035 CRB<br><br>**NOTICE OF EX PARTE MOTION AND EX PARTE MOTION TO RETURN EVIDENCE**<br><br>Date: February 14, 2005<br>Time: 3:30 PM<br>Place: Courtroom 8, 19th Floor<br>Judge: Charles R. Breyer |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

        PLEASE TAKE NOTICE THAT on February 14, 2005, at 3:30 p.m. in Courtroom 8, 19th

Floor, or as soon thereafter as may be heard, defendant Thomas F. White will and hereby does

move ex parte for the Court to return the third party evidence White's counsel attempted to lodge

with the Court on February 11, 2005.  This Motion is based on the Declaration of Nanci L.

Clarence, the Declaration of Shawn Azizzadeh, the Declaration of Stuart Hanlon, the attached

motion, all pleadings previously filed in this action, and such arguments as may be made in oral

argument before the Court.

///

///

1

**INTRODUCTION**

2       On Friday, February 11, 2005, counsel for Thomas F. White advised this Court that it

3  sought to lodge with the Court certain electronic documents that she believed contained attorney-

4  client privileged communications and possible evidence of crimes.  The Court agreed to accept

5  the material; however, when Mr. White's counsel duly arrived at chambers to lodge it, the

6  Assistant United States Attorney prosecuting Mr. White in a related criminal matter pending

7  before this Court and a Special Agent with the Federal Bureau of Investigation informed her that

8  the FBI was to receive the documents rather than the Court.

9       Mr. White's counsel strenuously objected to this course of action because the documents

10  she was being asked to turn over not only contained attorney-client communications of opposing

11  counsel, but also attorney-client privileged communications *between Mr. White and his attorneys*

12  *related to the pending criminal action* – and the Assistant U.S. Attorney knew as much.  Thus,

13  when the Court's law clerk advised that the Judge had directed the evidence be given to the FBI,

14  Mr. White's counsel was presented with two options: either to follow the Court's direction and

15  deposit the material with the FBI or take possession of material she believed contained opposing

16  counsel's attorney-client communications.  Under these circumstances, she followed the Court's

17  instruction.

18      Mr. White objects to the FBI's receipt and possession of evidence containing his own

19  attorney-client privileged communications, especially given the pending federal criminal charges

20  against him.  Mr. White recognizes, however, that the Court may not have been aware of the

21  content of the material in question or its significance when it directed that the FBI take this

22  evidence from his counsel.  Accordingly, Mr. White now respectfully requests that the Court

23  review *in camera* the evidence provided and return all materials to Mr. White that do not contain

24  other individuals' attorney-client privileged communications.

25

**BACKGROUND**

26      On January 10, 2005, a deposition subpoena issued on behalf of defendant Thomas F.

27  White was served on third-party witness Zeke Fennell in a San Francisco Superior Court matter

28  entitled *Daniel Garcia et al. v. Thomas White et al.*, case number CGC-02-414569.  Declaration

EX PARTE MOTION TO RETURN EVIDENCE                                                    2

of Nanci L. Clarence ("Clarence Decl."), ¶ 2; Declaration of Shawn Azzizadeh ("Azzizadeh Decl."), ¶ 2.  The subpoena directed Mr. Fennell to appear on January 20, 2005 for a deposition and to produce relevant documents.

Mr. Shawn Azizzadeh, counsel for Mr. Fennell, requested that the deposition be rescheduled.  Mr. Azizzadeh and Mr. White's counsel agreed to reschedule the deposition and also agreed to meet in advance of the deposition.  Clarence Decl. at ¶ 3.

Mr. Fennell was then and is now in possession of electronic and other evidence that shows that, among other things, Daniel Garcia obtained personal information about Mr. White, compromised his online bank accounts, stole a significant amount of money, and breached White's attorney-client privilege in the federal criminal action.  This materials also include documents related to the allegations against Mr. White in Mexico, including statements of Mexican witnesses and communications related to Mr. Garcia's interactions with the plaintiffs in the pending federal civil action against Mr. White.  Azizzadeh Decl. at ¶ 3.

On Thursday afternoon, January 27, 2005, Mr. White's counsel met with both Mr. Azizzadeh and Mr. Fennell.   Clarence Decl. at ¶ 4.  During that meeting, through counsel, Mr. Fennell advised that he possessed a substantial amount of electronic evidence showing that Daniel Garcia (plaintiff in the companion state case) had breached Mr. White's attorney-client privilege, had stolen hundreds of thousands of dollars from Mr. White's bank account, and had "hacked" into various internet sources to illegally obtain personal information about Mr. White and others.  Id.  In addition, Mr. Fennell stated that the evidence showed that Mr. Garcia had taken numerous trips to Puerto Vallarta, Mexico, where he had interviewed plaintiffs in the above-entitled action along with Mr. Replogle and had been promised a "cut" of any recovery by each plaintiff he helped bring into the case.  Id.  Mr. Fennell also advised that the evidence chronicles Mr. Garcia's involvement in the federal criminal investigation, including his and Mr. Replogle's frequent contacts with FBI Special Agent Martha Parker.  Id.

On January 27, 2005,  Mr. Fennell, through counsel, also advised that the electronic evidence he possessed demonstrated that David Replogle, Mr. Garcia's attorney (also counsel of record for plaintiffs in the above-captioned action, now pending before this Court) had

1   knowledge of and participated in the theft from Mr. White.  Id. at ¶ 5.  Mr. White's counsel and

2   Mr. Azizzadeh agreed that no communications between Mr. Garcia and his counsel should be

3   produced to Mr. White's counsel.  Id.

4        Neither Mr. Fennell nor his counsel produced any electronic evidence whatsoever on

5   January 27, 2005.  Id. at ¶ 6.  Mr. Azizzadeh advised that he could not produce any such

6   evidence, because he had not yet reviewed it for attorney-client privileged documents.  Id.

7   However, Mr. Fennell did provide several pages of documents which Mr. Fennell described as

8   having been left at his home by Mr. Garcia (the two men had lived together previously).  Id.

9   Among other items, these documents included detailed information regarding Mr. White's

10  personal and banking information, as well as notes describing communication between Mr.

11  White and his attorneys regarding the federal criminal matter pending before the court.  Id.  The

12  documents produced by Mr. Fennell did not include any attorney-client communications

13  between Mr. Replogle and Mr. Garcia.  Id.

14       After the meeting, Mr. Fennell was served with a revised subpoena setting Mr. Fennell's

15  deposition for February 4, 2005.  Id. at ¶ 7.  The next day, January 28, 2005, Mr. Replogle wrote

16  a letter to Nanci Clarence, counsel for Mr. White, accusing her of being in possession of

17  property he alleged Mr. Fennell had stolen from Mr. Garcia.  Id. at ¶ 8.  Mr. Replogle demanded

18  that Ms. Clarence return it to him by 5:00 that day, and threatened to file a police report accusing

19  her of receiving stolen property if she failed to do so.  Id..  On January 30, 2005, Ms. Clarence

20  wrote Mr. Replogle a letter denying that she or her office possessed stolen materials.  Id. at ¶ 9.

21       On February 1, 2005, Mr. Replogle made an ex parte motion to quash the subpoena that

22  was served on Mr. Fennell on January 27, 2005, and additionally requested the state court to

23  direct Mr. White's counsel to return any property Mr. Fennell had provided, claiming it had been

24  stolen.  Id. at ¶ 10.  On February 2, 2005, the San Francisco Superior Court held a hearing on

25  plaintiffs' ex parte motion.   The court granted plaintiffs' motion to quash the revised deposition

26  subpoena – that served on January 27, 2005 – but specifically stated that it was not quashing the

27  subpoena served on Mr. Fennell on January 10, 2005.  Id. at ¶ 11.  The Court did not grant

28  plaintiffs' motion to direct Mr. White's counsel to return the allegedly stolen property.  Id.  Also

1  on February 2, 2005, counsel for White re-noticed Mr. Fennell's deposition for February 16,

2  2005. Id. at ¶ 12.

3       On February 4, 2005, Mr. Replogle caused to be filed a "Verified Complaint for

4  Possession of Personal Property and Damages" in Sacramento County Superior Court, Case No.

5  05AM00844, on Daniel Garcia's behalf. Id. at ¶ 13; Azizzadeh Decl. at ¶ 9. The verification,

6  however, is signed by Mr. Replogle, not Mr. Garcia. The Complaint names both Zeke Fennell

7  and Shawn Azizzadeh as defendants, and alleges that Mr. Fennell took personal property

8  (including electronic documents), from Mr. Garcia in November 2003. Id.

9       Mr. Garcia's Sacramento Complaint alleges that he has filed an action against Mr. White

10  in San Francisco Superior Court which he believes is worth $500,000. He further alleges that,

11  while the value of the allegedly stolen property is $5,000, his damages against Mr. Fennell in the

12  Sacramento action would be "substantially greater" if Mr. Fennell were to produce the material

13  to "White's lawyers." Azizzadeh Decl. ¶ 9, Ex. A, ¶¶ 8 & 11.

14       On February 10, 2005, Mr. Replogle sent Mr. Azizzadeh a "Settlement Agreement and

15  Mutual Release," which Mr. Replogle drafted and was provided to me by Mr. Azizzadeh.

16  Essentially, the Agreement requires Mr. Fennell to return all property to Mr. Garcia in exchange

17  for Mr. Garcia's dismissal of the lawsuit – with the specific proviso that no documents be

18  produced to counsel for Mr. White. Azizzadeh Decl. at ¶¶ 10, 11.

19       The Settlement Agreement provides that Mr. Garcia will dismiss the lawsuit with

20  prejudice if Mr. Fennell agrees to the following: (1) to "return the Personal Property, and all

21  copies thereof, to Garcia;" (2) "not [to] retain any documents . . . that are responsive to the

22  Deposition Subpoena(s) served on Fennell by lawyers for Thomas F. White;" and, (3) "that he

23  has not given, nor will he give, to Thomas White's lawyers, investigators or other agents any of

24  the documents that are responsive to the Deposition Subpoena(s) served on Fennell by lawyers

25  for Thomas F. White." In short, Mr. Replogle's proposed settlement would require Mr. Fennell

26  to violate the subpoena issued by White's counsel in order to have the lawsuit against him

27  dismissed. Id. at ¶ 11.

28       On February 10, 2005, Ms. Clarence sent Mr. Azizzadeh a letter confirming that before

EX PARTE MOTION TO RETURN EVIDENCE                                          5

1   producing any documents to Mr. White's counsel, any documents which appeared to be attorney-

2   client privileged communications would be removed, placed in a sealed envelope and conveyed

3   directly to the court. Clarence Decl. at ¶ 17.

4          On February 11, 2005, Mr. White's counsel met with Mr. Azzizadeh, who at that time

5   advised that he was in possession of six CDs containing numerous electronic documents created

6   by Daniel Garcia which were responsive to Mr. White's subpoena. Id. at ¶ 18.  During the

7   meeting, Mr. Azizzadeh described some of the content on the six CDs.  Specifically, he advised

8   that the CDs contained detailed billing statements from Mr. White's previous criminal counsel,

9   Cris Arguedas and Ted Cassman – clear evidence that Mr. Garcia had breached Mr. White's

10  attorney-client privilege pertaining to the federal criminal case pending before this Court.  Id.

11  Mr. Azzizadeh showed Mr. White's counsel approximately two pages of the Arguedas, Cassman

12  & Headly bills on a laptop computer and described that the CDs contained more of the same.  Id.

13  Mr. Azizzadeh advised that, among the electronic documents were confidential communications

14  among Mr. White's counsel.  Id.  Given the prior agreement with Mr. Azizzadeh, all attorney-

15  client communications between Mr. Garcia and Mr. Replogle were placed in sealed envelopes

16  and were not viewed by any of Mr. White's attorneys.  Id.

17         At this point, Mr. White's counsel first learned that, in addition to the attorney-client

18  privileged communications between Mr. Replogle and Mr. Garcia (to which Mr. Azizzadeh

19  earlier had alerted counsel), communications between Mr. White and his counsel were also in

20  Mr. Garcia's possession.  Believing that any such documents could only have been obtained

21  through illegal means, Mr. Azizzadeh and Mr. White's counsel discussed the fact that the

22  materials in his possession potentially contained evidence of a crime.  Id. at ¶ 19.

23         Ms. Clarence immediately contacted Stuart Hanlon, Mr. White's counsel in the federal

24  criminal action, *United States v. White*, case number CR 04-0093, now pending before this

25  Court.  Id. at ¶ 20.  Ms. Clarence advised Mr. Hanlon that the third party's electronic evidence

26  contained billing statements from Arguedas, Cassman & Headley, Mr. White's previous criminal

27  counsel in the criminal case before this Court, as well as confidential communications among

28  White's attorneys, including his criminal defense attorney in the federal criminal action.  Id.  Mr.

EX PARTE MOTION TO RETURN EVIDENCE                                                    6

1   Hanlon and Ms. Clarence determined that the best course of action would be to lodge the

2   evidence with the Court, under seal.  Id; Declaration of Stuart Hanlon ("Hanlon Decl.") at ¶ 9.

3   Mr. Hanlon advised Assistant United States Attorney Elise Becker of this development.  Hanlon

4   Decl. at ¶ 11.

5       Mr. Azizzadeh and Ms. Clarence telephoned the Court.  After Mr. Azizzadeh and Ms.

6   Clarence advised the Court that Mr. Azizzadeh possessed electronic evidence which contained

7   attorney-client privileged communications and possibly evidence of crimes, the Court agreed to

8   receive the materials.  Clarence Decl. ¶ 21.  Because this was an ex parte communication with

9   the Court, counsel did not present the full exposition of the events surrounding the genesis of the

10  third-party documents.  Id.  However, Ms. Clarence did tell the Court that she had been informed

11  that both FBI Special Agent Parker and the Northern District U.S. Attorney's Office had a

12  conflict and were not participating in any aspect of this case involving allegations of misconduct

13  by either Daniel Garcia or David Replogle.  Id.  See also Hanlon Decl. at ¶¶ 5-7.

14      On the Court's instruction, Ms. Clarence drafted a letter outlining her understanding of

15  what was being lodged with the Court and why. Clarence Decl. at ¶ 22.  The letter explained that

16  the documents could contain evidence of crimes as well as attorney-client privileged

17  communications between parties and counsel in the cases pending before the Court as well as

18  other related proceedings.  Id.  The letter also provided that, for the above-cited reasons, Ms.

19  Clarence was lodging the evidence with the Court so that the Court could retain it under seal

20  until it could be "conveyed to the appropriate law enforcement officials or until an otherwise

21  appropriate resolution [could be] reached."  Id.

22      Mr. Hanlon spoke with Ms. Becker and informed her that Ms. Clarence was lodging the

23  materials with the Court.  Hanlon Decl. ¶¶ 10-11.  Mr. Hanlon specifically advised Ms. Becker

24  that the materials were appropriately with the Court because they contained attorney-client

25  privileged communications related to the pending federal criminal action.  Id.

26      Ms. Clarence arrived at this Court's chambers at approximately 5:40 p.m. with the

27  evidence in hand.  Clarence Decl. ¶ 24.  As she started to deliver the envelopes to the Court's

28  law clerk, Assistant U.S. Attorney Elise Becker and an FBI agent who identified himself as

1   Special Agent Peter F. Adduci, appeared beside her.  Id.  Agent Aducci demanded that Ms.

2   Clarence give him the material, as he had been informed that it was evidence of a crime.  Id.  Ms.

3   Clarence refused, telling him that she was there to deposit the materials with the Court on the

4   Judge's instruction, that the materials contained attorney-client privileged communications

5   between Mr. White and his criminal counsel, that Special Agent Martha Parker of his office had

6   a conflict with respect to any investigation of Mr. Replogle or Mr. Garcia, and further that the

7   U.S. Attorney's office had recused itself from this aspect of the case and referred this

8   investigation to the Eastern District.  Id.  Ms. Clarence stated emphatically that she would not

9   turn over the materials to the government unless specifically ordered to do so by the Court.  Id.

10  At this point, the Court's law clerk advised that he had spoken with the Court more recently than

11  Ms. Clarence , and that the Judge had instructed that the materials be lodged with the

12  government.  Id.  On hearing this, Ms. Clarence did so.  Id.

13  **ARGUMENT**

14          The material Mr. White intended to be lodged with the Court – now in the possession of

15  the FBI – contains his *own* attorney-client privileged communications regarding the criminal

16  action now pending before this Court.  Clearly, the Court could not have had a complete

17  understanding of the nature of this material based on a brief and limited ex-parte telephone

18  conversation late Friday afternoon.  However, the Assistant United States Attorney who came to

19  the Court's chambers with an FBI agent to take the documents from his attorney Ms. Clarence

20  *did.*

21          The Assistant United States Attorney had been expressly advised that these materials

22  contained Mr. White's attorney-client privileged communications with his counsel related to the

23  criminal action twice:  First by Mr. Hanlon during his courtesy phone informing her that the

24  documents were to be lodged with the Court and again by Ms. Clarence when she vigorously

25  objected to relinquishing the materials to the government because they contained her own

26  client's communications with counsel.   Hanlon Decl. at ¶; Clarence Decl. at ¶ 24.

27          It is important to recognize that the reason Ms. Clarence and Mr. Azizzadeh sought to

28  lodge this evidence with the Court was two-fold: (1) the material contained attorney-client

EX PARTE MOTION TO RETURN EVIDENCE                                                          8

1    privileged communications between opposing counsel Mr. Replogle and his clients that Ms.

2    Clarence did not believe she should view or possess; and (2) there was possible evidence of

3    crimes, including documentation that a third party illegally had obtained attorney-client

4    privileged communications between Mr. White and his attorneys.[1]

5          Thus, while there was certainly nothing to prevent Mr. White's counsel from retaining

6    materials which contained his own privileged communications, the fact that someone else's

7    attorney-communications were included made it impossible for her to receive it.   Accordingly,

8    counsel sought to lodge the materials with the Court to preserve the attorney-client privilege

9    (both as to Mr. White and Mr. Regploge's clients) and to preserve potential evidence of crimes

10   until an appropriate resolution could be reached.  That way, the evidence could be preserved

11   inviolate without breaching any person's privilege, and the appropriate law enforcement officials

12   could be alerted regarding the potential evidence of a crime.

13          Unfortunately, given its limited ex parte conversation with Ms. Clarence and Mr.

14   Azizzadeh, the Court was not given sufficient information to fully appreciate the situation.

15   Accordingly, counsel now presents the Court with the full and necessary background and facts.

16          Recognizing that the material in question contains attorney-client privileged

17   communications of both Mr. White and of Mr. Replogle's clients – and with the belief that it also

18   contains evidence directly relevant to both the civil and criminal actions now pending before this

19   court – Mr. White respectfully requests that the Court review all of the evidence *in camera* for

20   privilege and return to him all evidence that does not contain attorney-client privileged

21   communications between Mr. Replogle and his clients.

22   \\

23   \\

24   \\

25                              **CONCLUSION**

26   _____

27        [1]  Additionally, the materials contain evidence of Mr. Garcia's substantial theft from and
     impersonation of Mr. White, among others.  Both The Northern District U.S. Attorney's Office

28   and its FBI case agent assigned to the White criminal action specifically have recused
     themselves from any investigation of those crimes.  Hanlon Decl. at ¶¶ 5-7.

1         Mr. White respectfully requests that the Court review the evidence intended to be lodged

2    with the Court *in camera*.  After reviewing this evidence, Mr. White respectfully requests that

3    the Court return to him all of the evidence that does not contain Mr. Replogle's attorney-client

4    privileged communications.

5                                     Respectfully submitted,

6    Dated: February 14, 2005                    CLARENCE & DYER, LLP

7                                       /s/: Nanci L. Clarence
                            By:   Nanci L. Clarence

8                                       Kate Dyer
                                   Jodi Linker

9                                       Attorneys for Defendant Thomas F. White

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

      I, Abbie Chin, declare as follows:

3

      I am over eighteen years of age and not a party to the within action; my business address

4

is 899 Ellis Street, San Francisco, CA 94109; I am employed in the City and County of San Francisco, California.

5

      On February 14, 2005, I served a copy, with all exhibits, of the following document(s):

6

    •   **EX PARTE MOTION TO RETURN EVIDENCE**

7

To be served on the parties or attorneys in this action as follows:

8

_____**(BY MAIL)** I am readily familiar with the business practice for collection and processing of

9

correspondence for mailing with the United States Postal Service. I placed a true copy of the aforementioned document(s) in a sealed envelope with postage fully prepaid and addressed as noted

10

below, and placed them for collection and mailing following ordinary business practices to be deposited with the United States Postal Service.

11

12

  \_\_x\_\_  **(BY ELECTRONIC SERVICE)** I caused an electronic delivery subject to 28 U.S.C ¶1746, Local Rules or General Orders of this Court regarding Electronic Case Filing.  All pleadings and papers

13

must be electronically served in accordance with those Rules or General Orders.

14

15

Attorney for Plaintiff                 Attorney for Plaintiff
David Replogle, Esq.                  John E. Hill, Esq.

16

550 Montgomery Street, Suite 550      8105 Edgewater Drive, Suite 100
San Francisco, CA 94111             Oakland, CA 94621

17

Email: davidreplogle@aol.com        Email: johnhill-law@msn.com
Fax: (415) 781-6683                Fax: (510) 588-1087

18

Attorney for Defendant

19

William S. Berland, Esq.
1816 Fifth Street

20

Berkeley, CA 94710
Email: bill@fergusonberland.com

21

Fax: ( 510) 548-3143

22

      I declare under penalty of perjury under the laws of the State of California that the foregoing is

23

true and correct and that this declaration was executed on February 14, 2005.

24

25

                 /s/: Abbie Chin
                 ABBIE CHIN

26

27

28

EX PARTE MOTION TO RETURN EVIDENCE        11