To: Cathy Catterson
ViaFax: 415-355-8551


Re: General Order 12.10(a) and Roe v. White, 08-70226 (D. Ct. 03-4035 CRB)
Amended Stay Issued February 8, 2008, before Judges Kleinfeld, Thomas and District Court Judge Larson

Dear Ms. Catterson:

I learned today that an amended stay has been issued in the above matter. I am taking this extraordinary step of writing the panel (only the second time I have done so in 10 years) because the panel has not had the opportunity to learn of the irreparable harm that will occur to the plaintiffs as a result of a stay, even a brief stay.

As the panel will recall, in 2005 appellant Thomas White sought to renege on a settlement he reached with 20 young, poor Mexican boys who alleged that they had been sexually molested by White in Puerto Vallerta, California. After months of proceedings this court granted plaintiffs summary judgment enforcing the settlement and ordered White to pay the settlement proceeds to the district court. White appealed and in June 2007 the Ninth Circuit affirmed the judgment. As part of its judgment, the Ninth Circuit ordered the district court to "consider carefully any arguments to be made about the fund distribution arrangements, the request for attorney fees, and the role of the guardian ad litem. We are confident that the district court will independently review all of these matters anew guided by ethical and legal restraints and *the best interests of the children.*"

After the mandate issued, this court appointed a Special Master to investigate the relationship of various attorneys claiming to represent the plaintiffs as well as any fee arrangements they and the guardian ad litem may have had. (Docket no. 610). An attorney named Eric Safire appeared in the action and claimed to represent many of the plaintiffs. (Docket no. 577). Even more surprising, he represented that these poor, uneducated plaintiffs wished to renounce their share of the settlement. Plaintiffs' counsel objected that Safire was being indirectly retained by White. (Docket no. 581) Before the issue could be resolved, Safire withdrew from his purported representation. (Docket no. 647).

As a result of Safire's withdrawal, there was no longer any question that plaintiffs are entitled to receive their share of the settlement proceeds as the Ninth Circuit had affirmed the judgment rejecting White's arguments that he should be relieved from his agreement.

Page 1

Accordingly, as plaintiffs, several of whom are essentially homeless, had already waited more than two and half years to receive their payments, the court went forward and after careful consideration approved a trust and appointed Wells Fargo as the trustee and C. Joseph Smith as the trust protector. (Docket no. 703). As the trust protector Smith is charged with ensuring that the trust proceeds are distributed to the plaintiffs and used in ways that better their lives. No party objected to the terms of the trust or the appointment of the trustees.

The court then put aside the funds claimed by various counsel as fees and costs and in December 2007 distributed the remainder (approximately $4.2 million) to the Wells Fargo trust for plaintiffs' benefit. In early January the trust protector visited the plaintiffs in Mexico to learn of their needs, set up bank accounts, and make initial distributions. The trust protector intends to use the funds to assist with housing, education, and drug rehabilitation; in short, our hope is that this settlement will help these badly damaged plaintiffs turn their lives around. The trust protector's report to the court which explains the dire circumstances of these plaintiffs is attached to this letter (Docket no. 765). The court has also amended the trust in accordance with some of the trust protector's recommendations.

The panel's stay will irreparably harm the plaintiffs and disrupt months of work in developing a system for the distribution of funds that will improve the lives of the plaintiffs. The trust protector has made tremendous efforts to earn the trust of each plaintiff so that he can work individually with each plaintiff to better his life. The plaintiffs will no longer trust the trust protector, and may even refuse to communicate with him, if the trust protector is precluded from making the monthly distributions as required by the trust. Indeed, there is a real danger that the trust protector will lose all contact with these plaintiffs, who live on the margin of society to begin with, and that, as a result of the stay, they will never receive the proceeds of their settlement. Moreover, the distributions are being used for such basics as housing and support for dependents, as well as substance abuse treatment; it will cause tremendous hardship to these plaintiffs and their families to suddenly cut off their means of subsistence. Finally, the stay means that the trust protector cannot be paid and thus must cease all his efforts on behalf of the plaintiffs–this hiatus will likely derail the progress the trust protector has made in using the settlement funds to improve the plaintiffs' lives.

In contrast to the irreparable harm suffered by these plaintiffs, White will not suffer any harm. White is incorrect when he writes that the court granted "final but prejudgment relief" to plaintiffs. On June 28, 2007 the Ninth Circuit affirmed the *final* judgment in favor of plaintiffs enforcing the settlement. White has acknowledged that final judgment has been issued as in December 2007 (Docket no. 677) he filed a Rule 60(b) motion to vacate (later withdrawn); indeed, if no final judgment had been issued the Ninth Circuit would not have had jurisdiction to consider the appeal in the first place. Thus, unless and until White files and is successful on a Rule 60(b) motion, these proceedings are complete as to him.

White is also incorrect when he accuses this court of disregarding the Ninth Circuit's instructions to carefully consider the fund distribution arrangements, the request for attorney fees, and the role of the guardian ad litem. As explained, the court has carefully considered the

terms of the trust and the appointment of the trustee and trust protector, and upon the recommendation of the trust protector, and after giving all parties a chance to respond, has modified the terms of the trust to best serve the plaintiffs.

As for the request for attorney fees and the role of the guardian ad litem, the court appointed a Special Master who issued his report in mid-January 2008. The court then gave all parties the chance to respond to the report; those responses have only recently been filed. Thus, the court has not yet determined how much to award in fees and costs. Indeed, one issue the court must address is whether the guardian ad litem must be replaced with respect to plaintiffs' counsel's request for fees. The court cannot retain a replacement guardian, however, as long as any distribution of funds from the plaintiffs' trust is stayed.

In light of these circumstances, circumstances which White's Petition for Writ of Mandate does not reveal, this court urges the panel to immediately vacate the stay, at least as it applies to the distribution of funds from plaintiffs' trust with Wells Fargo. I take this extraordinary step because I believe the efforts of this court and the trust protector to "serve the best interests of the children" will be irreparably harmed if the stay remains in place.

Sincerely,

Charles R. Breyer
United States District Judge
Northern District of California