**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE ROE, et al.,

               Plaintiffs,

   v.

THOMAS F. WHITE,

               Defendant.

_____/

No. C 03-04035 CRB

**AMENDED MEMORANDUM AND ORDER RE COUNSEL FEES AND COSTS**

Defendant Thomas White paid the 20 plaintiffs $350,000 each to settle this lawsuit. Now pending before the Court is the motion of plaintiffs' counsel for an award of attorney's fees and costs from the settlement fund.   Pursuant to contingency fee agreements between plaintiff's counsel David Replogle and each individual plaintiff, counsel seek 40 percent of the gross recovery of the 16 adult plaintiffs and 33 percent of the gross recovery of the plaintiffs who were minors at the time they brought their claims, plus reimbursement for costs.

**BACKGROUND**

**A.**     **Pre-settlement proceedings**

In September 2003, a minor from Puerto Vallerta, Mexico filed this lawsuit against White alleging child sexual tourism pursuant to 18 U.S.C. section 2255.  The minor, known fictitiously as Jose Roe, brought the lawsuit through his purported guardian ad litem,

**United States District Court**
For the Northern District of California

1   Mauricio Rodriguez Borrego ("Rodriguez Borrego").  The complaint identifies David

2   Replogle and John Hill as plaintiff's counsel of record and alleges that beginning in 1998,

3   White traveled to Mexico from San Francisco to find homeless young boys who he would

4   bring to his home in Puerto Vallerta and sexually abuse.  Plaintiff Jose Roe alleged he is one

5   of White's victims.  Counsel moved for an order permitting the filing of the complaint under

6   the minor's fictitious name, Jose Roe, and for appointment of Rodriguez Borrego as the

7   minor's guardian ad litem.  The Court granted the motion and appointed Rodriguez Borrego

8   guardian ad litem.  Around the same time, plaintiff's counsel filed a separate sexual abuse

9   lawsuit against White in state court on behalf of two California residents.

10        The United States subsequently indicted White for conspiracy to travel with intent to

11   engage in sexual acts with children (18 U.S.C. § 2423(b)), and conspiracy to sexually exploit

12   children (18 U.S.C. § 2251(d)), among other things.  White, however, remained in prison in

13   Thailand, fighting extradition to Mexico for similar charges.

14        In June 2004, counsel filed a Second Amended Complaint which added six new

15   plaintiffs to the lawsuit: one minor plaintiff, identified fictitiously as Jose Roe II, and five

16   adult plaintiffs, identified fictitiously as Carlos Roe I through Carlos Roe V.  Although the

17   complaint added a minor plaintiff, counsel did not file an application to appoint Rodriguez

18   Borrego as guardian ad litem for the minor.  Two months later a Third Amended Complaint

19   was filed, adding a third minor plaintiff, fictitiously identified as Jose Roe III, and six more

20   adult plaintiffs, Carlos Roe VI through Carlos Roe XI.  Once again no application was made

21   to appoint Rodriguez Borrego, or anyone else, as guardian ad litem.  Two months later yet

22   another amended complaint was filed; this complaint added a fourth minor plaintiff and

23   seven additional adult plaintiffs.  As a result of this amendment, the complaint had 22

24   plaintiffs.

25   **B.    The settlement**

26        In the summer of 2005 White and the state court plaintiffs agreed to settle their

27   lawsuit.  The parties to this action also settled.  The agreement tied the settlement of this

28

2

1  action to the settlement of the state court action, and was conditioned upon the participation

2  of all plaintiffs.  In exchange for releases, White agreed to pay each plaintiff $350,000.

3  White paid the plaintiffs in the state court case pursuant to the terms of that settlement

4  in July 2005.  As of the beginning of August, however, plaintiff's counsel had not yet moved

5  the Court for approval of the settlement in this action; accordingly, as the compromise of the

6  minor plaintiffs' claims required the Court's approval, the Court ordered plaintiffs to file a

7  motion for approval and set a hearing for August 16, 2005.

8  The day of the hearing, counsel filed an application for the appointment of Rodriguez

9  Borrego as guardian ad litem for the three additional minor plaintiffs.  Replogle explained

10 that he had inadvertently failed to seek such appointment at the time the minor plaintiffs had

11 appeared in the action, the previous year.  The Court approved the appointment *nunc pro*

12 *tunc*.

13 The parties also disclosed that plaintiffs' counsel had been unable to locate two of the

14 named plaintiffs, known as Carlos Roe XI and Carlos Roe XIV.  Because the settlement

15 required the participation of each plaintiff, the parties entered into a written stipulation

16 dismissing Carlos Roe XI and Carlos Roe XIV from this action.  The stipulation provided

17 that if plaintiffs' counsel is unable to locate any plaintiffs by the date the Court approves the

18 settlement, the missing plaintiffs shall be dismissed from the lawsuit.  After White's counsel

19 provided the Court with a copy of the stipulation, the Court scheduled the hearing on the

20 Court's approval of the settlement for August 29, 2005.

21 At the August 29 hearing White substituted in new counsel.  New counsel had not

22 reviewed the settlement agreement and therefore asked to continue the hearing.  The Court

23 denied counsel's request, noting that trial was scheduled for October 11 and that the Court

24 had reviewed the settlement and found that it was an appropriate compromise for the minor

25 plaintiffs.  Accordingly, the Court ordered White to pay the settlement funds to the Clerk of

26 the Court.

27 //

28 //

3

**United States District Court**
For the Northern District of California

**C.     The enforcement of the settlement and entry of judgment**

White subsequently signed a document purporting to repudiate the settlement and filed a motion to vacate the Court's approval.  White's primary argument was that since the settlement required the signature of each plaintiff, the stipulation dismissing the claims of the two missing plaintiffs was an improper modification of the settlement agreement.  White also argued that the settlement was invalid because at the time Rodriguez Borrego signed the settlement on behalf of the minor plaintiffs the Court had not yet appointed him as guardian ad litem for three of those plaintiffs.  The Court rejected White's arguments.  October 3, 2005 Memorandum and Order.

White then filed a second motion to vacate the Court's approval of the settlement. This time White argued that the plaintiffs, or more specifically, their counsel and guardian ad litem, had violated the settlement agreement's confidentiality and non-disparagement provisions and that these violations required the Court to vacate its prior approval of the settlement.  The Court denied White's motion.  October 11, 2005 Memorandum and Order. Plaintiffs also filed a motion for summary enforcement of the settlement pursuant to California Code of Civil Procedure 664.5 and for appointment of a receiver.  At an October 7, 2005 hearing, the Court denied these motions as the law is clear that under the circumstances of this case summary enforcement was not warranted.  The Court converted plaintiffs' motion into a Federal Rule of Civil Procedure 56 motion for summary judgment for enforcement of the settlement and gave White a deadline to respond.

White raised the same arguments he had made in support of his earlier motions to vacate the settlement; namely, he challenged the validity of the stipulation, the Court's appointment of Rodriguez Borrego as guardian ad litem *nunc pro tunc*, and Rodriguez Borrego's and Replogle's alleged breaches of the confidentiality provisions of the settlement agreement.  The Court granted plaintiffs' motion, denied White's counter motions, and entered judgment in favor of plaintiffs.  White appealed and posted a bond.

//

//

4

United States District Court
For the Northern District of California
For the Northern District of California

**D.     Post appeal proceedings**

The Ninth Circuit affirmed the judgment enforcing the settlement.  Roe ex rel.
Borrego v. White, 232 Fed. Appx. 733 (9th Cir. May 23, 2007).  The amount of the judgment
plus interest was subsequently deposited with the Court pending the Court's approval of a
trust for plaintiffs' benefit and the Court's determination of the amount of fees and costs to
award plaintiffs' counsel from the settlement.

Before the Court ruled on any of these pending matters, Eric Safire, a San Francisco
attorney, filed a motion to substitute in as counsel for some, but not all, of the plaintiffs.
Safire contended that these plaintiffs desired new counsel so that they could renounce their
participation in the settlement and judgment.  Shortly thereafter Rodriguez Borrego filed a
motion to intervene as a party and to stay the proceedings.  Rodriguez Borrego argued that
Replogle intended not to honor a fee agreement with Rodriguez Borrego.  Around the same
time it came to the Court's attention that Replogle and his co-counsel John Hill were
disputing Hill's compensation for his work on this case, and, indeed, Replogle filed various
motions seeking to terminate Hill's work on this case.

In light of Safire's remarkable representation, the dispute between Replogle and
Rodriguez Borrego, and the dispute between Replogle and Hill, the Court appointed a
Special Master to investigate all of these matters.  While the Special Master was preparing
his report, Safire withdrew his request to substitute in as counsel for plaintiffs.  As there was
no longer a dispute as to who represented the plaintiffs, the Court approved a trust for
plaintiffs' benefit and directed that a portion of the settlement funds deposited with the Court
be distributed to the plaintiffs' trust.

**E.     The guardian ad litem's financial interest in plaintiffs' recovery**

In support of the original motion to appoint Rodriguez Borrego as guardian ad litem
for Jose Roe I, Replogle declared that Rodriguez Borrego, a lawyer and former judge in
Puerto Vallerta, "has no adverse interest" and "is fully qualified to act as guardian ad litem."
Sep. 4, 2003 Declaration of David Replogle ¶ 8 (Docket no. 2).  In support of the belated
application to appoint Rodriguez Borrego guardian ad litem for the three additional minor

1  plaintiffs, Replogle declared that Rodriguez Borrego "has demonstrated his ability to act

2  faithfully to the minor plaintiffs in this case."  Aug. 16, 2005 Replogle Decl. ¶ 5 (Docket no.

3  233).  Rodriguez Borrego swore in a declaration attached as an exhibit to Replogle's

4  declaration: "I have no conflict of interest with the Applicants."  Id., Exh. D, ¶ 6.

5       Replogle's and Rodriguez Borrego's representations were untrue.  From the outset of

6  this lawsuit, Rodriguez Borrego had a contingency interest in the fees paid to Replogle for

7  Replogle's representation of all of the plaintiffs in this case.  At the October 7, 2005 hearing,

8  and in response to White's complaint that Replogle had refused to disclose whether

9  Rodriguez Borrego has a financial interest in the outcome of this case, the Court and

10 Replogle engaged in the following colloquy:

11 THE COURT:        Why wouldn't I be entitled to know what Mr. Borrego's financial

12                  interest in this litigation is?  What–why wouldn't I know that?  Why

13                  wouldn't you tell me?

14 MR. REPLOGLE:     There is no reason.

15 THE COURT:        So you would tell me that.

16 MR. REPLOGLE:     Right. He is not getting any compensation for assisting the minors

17                  without court approval.  And we have no intention of seeking that court

18                  approval.  I have paid him directly for some of the activities he has done

19                  in Puerto Vallerta with the criminal proceedings down there.

20 THE COURT:        Are you telling me–and that is what I'm hearing–he doesn't have a

21                  contingency interest in the recovery in this case.

22 MR. REPLOGLE:     I pay him directly.

23 THE COURT:        That doesn't quite answer the question.  I mean, you can pay a

24                  contingency directly.

25 MR. REPLOGLE:     There is nothing in writing.

26 THE COURT:        That doesn't answer it, either.  My question is, does he–are you telling

27                  me he has no contingent interest in the outcome of this litigation?

28 MR. REPLOGLE:     No, I believe he does, because if I don't get paid, he doesn't get paid.

United States District Court
For the Northern District of California

6

**United States District Court**
For the Northern District of California

1   THE COURT:          Okay.

2   MR. REPLOGLE:    But he will not be paid from the minors.  It has been very clear to him.

3   Oct. 5, 2005 Hearing Transcript at pp. 10-11 (Docket no. 379).

4          Replogle attempted to conceal the guardian ad litem's contingency interest in this

5   case; only when the Court refused to accept his evasive answers did he reluctantly concede

6   that there was such an arrangement.  Replogle, however, still did not reveal the whole truth.

7   His assertion that "there is nothing in writing" reflecting Rodriguez Borrego's financial

8   interest was false.  Only four months earlier Replogle had memorialized his agreement with

9   Rodriguez Borrego in a letter dated June 13, 2005:

10          This is to acknowledge our agreement concerning attorneys' fees to be earned
           in the above-referenced action pending before the federal court in San
11          Francisco.  In consideration of your continuing efforts on behalf of the
           plaintiffs in Mexico, we have agreed that you will receive 20% of the
12          attorneys' fees earned in the case.

13   Replogle's representation that Rodriguez Borrego did not have a contingency interest in the

14   fees earned from the minor plaintiffs' recovery was also false.  The June 15, 2005 letter

15   memorializing the contingency agreement directly contradicts Replogle's representation.

16   Moreover, the January 29, 2008 proposed findings of fact submitted jointly by Replogle and

17   Rodriguez Borrego assert: "Replogle agreed to compensate Rodriguez Borrego for his work

18   in Mexico on behalf of the Plaintiffs and pay to Rodriguez Borrego 20% of the gross

19   attorneys' fees earned on behalf of the adult Plaintiffs.  Rodriguez Borrego understood he

20   would be paid a like amount for his services as the Guardian ad Litem for the Plaintiffs."

21   Jan. 29, 2008 Proposed Findings of Fact and Conclusions of Law at ¶ 5 (Docket no. 754);

22   see also Declaration of Mauricio Rodriguez Borrego in Support of Joint Stipulation, Jan. 30,

23   2008 at ¶ 13 (Docket no. 763) ("At the outset of the litigation Replogle orally agreed that I

24   would be paid 20% of all the fees earned as compensation for my legal services, not just out

25   his portion.  The oral agreement was memorialized in a letter dated June 13, 2005.").

26          The Special Master's investigation included Rodriguez Borrego's agreement with

27   Replogle.  White has also repeatedly urged Rodriguez Borrego's financial interest as a

28   ground for vacating the judgment.  Most recently he filed a writ of mandamus with the Ninth

7

**United States District Court**
For the Northern District of California

1   Circuit that, among other things, argued that the Court could not distribute any of the

2   settlement funds because of Rodriguez Borrego's conflict of interest and how it allegedly

3   impacts the settlement.  Although the Ninth Circuit dismissed White's petition on April 8,

4   2008, White has now filed a fifth motion to vacate the settlement, again basing his argument

5   on Rodriguez Borrego's financial interest in the outcome of this lawsuit and the conflict it

6   created between he and the minor plaintiffs.  White has already filed another appeal with the

7   Ninth Circuit, even though the Court has not yet issued its written order on his motion.

8   **F.      The attorney's fees and costs proceedings**

9          After the Special Master filed his Report, Replogle, Hill and Rodriguez Borrego all

10  filed objections to certain portions of the Report.  At the Court's direction, each also filed

11  their requests for costs with supporting documentation.  The Court determined that because

12  Rodriguez Borrego has a financial interest in the amount of fees awarded to plaintiffs'

13  counsel (the more Replogle receives the more Rodriguez Borrego is entitled to receive),

14  Rodriguez Borrego could not represent the minor plaintiffs' interests with respect to

15  Replogle's request for fees and costs.  Accordingly, the Court replaced Rodriguez Borrego as

16  guardian ad litem with James Wagstaffe, an attorney with no financial interest in the outcome

17  of this lawsuit.

18         Replogle, Hill and Rodriguez Borrego subsequently stipulated to binding arbitration to

19  resolve the dispute among themselves as to the allocation of the ultimately awarded

20  attorney's fees and costs.  Thus, this Court's task is to determine the total amount of fees and

21  costs to award to counsel; the Court will not decide how that amount is to be apportioned

22  among the claiming attorneys.

23                              **DISCUSSION**

           Rodriguez Borrego and Replogle have jointly asked this Court to award fees and costs

24  for Replogle's representation of the 16 adult plaintiffs in accordance with Replogle's fee

25  agreement with each plaintiff; namely, 40 percent of the adult plaintiffs' $5.6 million

26  judgment ($2.24 million) and 33 percent of the minor plaintiffs' $1.4 million judgment

27

28

                                        8

1   ($462,000), plus counsel's costs and interest.[1]  The current guardian ad litem recommends

2   that the Court award counsel 30 percent of the judgment for all plaintiffs for fees and costs

3   ($2.1 million), plus an additional amount for interest.

4   **A.      The Court has the authority to set a reasonable fee**

5          The Court has the authority, and indeed the obligation, to approve the amount of

6   attorney's fees and costs awarded to counsel for the representation of the minor plaintiffs.

7   Donnarumma v. Barracuda Tanker Corp., 79 F.R.D. 455, 460 (C.D. Cal. 1978); Cal. Fam.

8   Code § 6602.  Thus, notwithstanding the contingency fee agreements with the minor

9   plaintiffs, the Court must set the fee and costs.

10         The Court is also not obligated to award fees and costs in accordance with the

11  contingency fee agreements with the adult plaintiffs.  The ABA Canons of Professional

12  Ethics, Canon 13, provide: "A contract for a contingent fee, where sanctioned by law, should

13  be reasonable under all the circumstances of the case, including the risk and uncertainty of

14  the compensation, *but should always be subject to the supervision of a court, as to its*

15  *reasonableness*." (emphasis added).  Accordingly, "a court is empowered to supervise fee

16  awards under contingent fee agreements to avoid unreasonable results."  Hamner v. Rios, 769

17  F.2d 1404, 1409 (9th Cir. 1985);  see also In re Agent Orange Prod. Liability Litig., 818 F.2d

18  226, 240 (2nd Cir. 1987) ("It is well established that a district court, pursuant to its

19  rulemaking authority or on an ad hoc basis, may review a contingency fee agreement.");

20  Hoffert v. General Motors Corp., 656 F.2d 161, 165 (5th Cir. 1981) ("[T]he district judge has

21  broad equity power to supervise the collection of attorneys' fees under such fee

22  arrangements.").  The Court can respond to a specific concern of a plaintiff or can raise the

23  issue sua sponte.  See Dunn v. H.K. Porter Co., Inc., 602 F.2d 1105, 1108 (3d Cir. 1979)

24  ("Because contingency fee agreements are of special concern to the courts and are not to be

25  enforced on the same basis as are ordinary commercial contracts, courts have the power to

26

27
_____

28         [1]Counsel's most recent pleading in support of an award of fees, filed April 11, 2008,
    erroneously states that each plaintiff received $375,000 from the settlement for a total settlement
    of $7,700,000 (Docket no. 871).

9

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1  monitor such contracts either through rule-making or on an Ad hoc basis." (citations

2  omitted)).

3          Consistent with this authority, the Ninth Circuit directed this Court to consider the

4  conduct of Replogle and the former guardian ad litem in connection with the request for

5  attorneys fees:

6          To the extent that the district court's orders prematurely distributed funds
           without fully resolving questions surrounding the propriety of the actions taken
7          by plaintiffs' counsel and the guardian ad litem, those questions can still be
           accounted for by the district court going forward by awarding some of the
8          money originally slated for counsel and the guardian ad litem to plaintiffs
           themselves should the district court find any impropriety in counsel or the
9          guardian ad litem's actions after it completes its review of those actions.

10  Order Denying Petition for Writ of Mandamus, White v. United States District , 08-70226

11  (9th Cir. April 8, 2008);  see also Jackson v. United States, 881 F.2d 707, 710 (9th Cir. 1989)

12  ("all courts possess an inherent power to prevent unprofessional conduct by those attorneys

13  who are practicing before them.").

14  **B.      A reasonable fee**

15          Counsel's request for 40 percent of the adult plaintiffs' $5.6 million recovery and 33

16  percent of the minor plaintiffs' gross recovery--plus costs--is unreasonable in the

17  circumstances of this case.

18          Some circumstances do support a substantial fee award.  The case presented several

19  difficulties, including that the plaintiffs were poor, resided in Mexico, and did not speak

20  English, and that the case was brought under a relatively new federal law with little

21  precedent.  Counsel also took a risk in bringing the case, and paid the expenses necessary to

22  litigate the action.  Of most significance, counsel obtained an appropriate outcome.  Plaintiffs

23  received a substantial sum of money which, if spent wisely, can transform their lives.  To

24  ensure that the funds will be spent wisely, counsel had the money placed in a trust for each

25  plaintiff and secured the services of a trust protector to facilitate the use of the funds to

26  improve the plaintiffs' lives.

27          Counsel's overall conduct of this litigation, however, compels a much lower fee.  For

28  example, while counsel negotiated a beneficial settlement, counsel's conduct jeopardized that

United States District Court
For the Northern District of California

1  settlement and created the issues that White used to attack the settlement and delay plaintiffs'

2  receipt of the settlement proceeds by more than two years.

3     Counsel neglected to move for the appointment of a guardian ad litem for three of the

4  minor plaintiffs until after the settlement was signed by all parties.  This omission required

5  the Court to appoint the guardian *nunc pro tunc* and created an issue that White repeatedly

6  urged as a ground for vacating the Court's approval of the settlement.  While the Ninth

7  Circuit ultimately rejected White's argument, White was only able to raise the issue in the

8  first place because of counsel's neglect.

9     Counsel also negotiated a settlement that required the participation of all 22 plaintiffs,

10  even though counsel had not had *any* contact with two of the plaintiffs during the preceding

11  eight months.  Counsel added these two plaintiffs to the complaint after meeting with each

12  only once, and then had no further contact with them.  Oct. 7, 2005 Hearing Transcript at 7-8

13  (Docket No. 379).  As a result, counsel was unable to locate the plaintiffs to sign the

14  settlement agreement and had to negotiate the stipulation that led to further litigation and

15  delay.  Again, the Ninth Circuit ultimately rejected White's arguments as to the stipulation,

16  but counsel's carelessness as to who he maintained as a plaintiff created an issue that

17  contributed to the more than two-year delay.

18     Finally, counsel failed to disclose Rodriguez Borrego's financial interest in the

19  plaintiffs' recovery and instead affirmatively misrepresented that Rodriguez Borrego did not

20  have any interests adverse to the minor plaintiffs.  Rodriguez Borrego's contingency interest

21  created a conflict with the minors he was appointed to represent.  The operation of this

22  conflict is most apparent in the context of Replogle's request for attorney's fees; while the

23  minors' interests are best served by receiving as much of the settlement as possible,

24  Rodriguez Borrego advocates for a large fee recovery since he is entitled to a percentage of

25  all fees awarded.  The conflict existed regardless of whether Rodriguez Borrego had a

26  financial interest in only the adult plaintiffs' recovery or in the recovery of all plaintiffs.  See

27  Williams v. Superior Court, 147 Cal.App.4th 36, 48 (2007).  As Rodriguez Borrego's

28

1  contingency interest was material to the Court's decision to appoint Rodriguez Borrego

2  guardian ad litem, it should have been disclosed.

3      Not only did Replogle not disclose the conflict until it was raised by White (and then

4  only under persistent questioning from the Court), he then lied about the details.  He falsely

5  represented that there was no writing memorializing the agreement and he falsely represented

6  that the agreement did not include the fees earned on the minors' recovery.  The Court cannot

7  overlook such misconduct; indeed, the Ninth Circuit directed the Court to consider such

8  misconduct when deciding counsel's fee request.

9      Moreover, much of counsel's "legal work" was frivolous and involved filing

10 documents with wholly unsubstantiated allegations.  For example, Replogle served a

11 subpoena dues tecum on the bank account of White's then-criminal counsel Arguedos,

12 Cassman and Headley ("ACD").  Replogle sought all of the firm's banking records from

13 January 2001 to the present based on the scurrilous and unsupported allegation that ACD had

14 attempted to bribe the plaintiff into recanting his allegations against White.  ACD moved to

15 quash the subpoena and for a protective order prohibiting Replogle from deposing the

16 members of ACD and obtaining their clients files, time records, and phone records.  Replogle

17 did not file an opposition to the motion to quash and, in violation of the Local Rules, did not

18 even file a notice of non-opposition; he simply ignored ACD's motion and made no attempt

19 to defend his discovery requests on White's criminal attorneys.

20     Most recently, Replogle filed a letter with the Court accusing Hill of traveling to

21 Puerto Vallerta on March 29, 2008 and, assisted by Rodriguez Borrego, contacting the

22 plaintiffs for some improper purpose; indeed, he accused Hill of working with White's

23 counsel, Geoffrey Rotwein to "tag team" the plaintiffs.  April 1, 2008 Letter (Docket no.

24 858).  As is often the case with Replogle's filings, he offered no support whatsoever for his

25 inflammatory accusations.  That same day Hill wrote the Court and explained that he had not

26 been to Puerto Vallerta since November 1, 2007.  April 1, 2008 Letter (Docket no. 859).

27 Replogle made no effort to defend his baseless allegations.  This proceeding is just one of

28

United States District Court
For the Northern District of California

12

1  many examples of the poor quality of counsel's representation of plaintiffs during this
2  litigation.

3        The Court is not persuaded that a 40 percent fee plus costs is appropriate based on
4  counsels' claim that the lodestar of Replogle, Hill and Rodriguez Borrego together exceeds
5  the fee they seek here.  The amount of hours claimed is excessive and incredible.  Counsel
6  conducted little, if any, discovery; counsel did not even take White's deposition after--over
7  White's vigorous objection--the Court granted plaintiffs' motion to take his deposition in jail.
8  Counsel's pleadings were unhelpful and contained little, if any, legal argument or citations.
9  The Court had to address White's arguments and reasoning on its own without meaningful
10  assistance from plaintiffs' counsel.

11        Moreover, as is explained above, many of the hours spent on this case were required
12  because of counsel's carelessness and misconduct or were not beneficial to the plaintiffs.
13  White continues to use counsel's failure to disclose Rodriguez Borrego's contingency
14  interest as a basis for attacking the judgment.  While this Court has found that regardless of
15  Rodriguez Borrego's conflict of interest, the settlement was and is in the best interests of the
16  plaintiffs, and has continually rejected White's challenges (as has the Ninth Circuit), the
17  plaintiffs themselves did not create these circumstances; counsel and the former guardian ad
18  litem are responsible.

19        In light of all these circumstances, the arguments made by the current guardian ad
20  litem, and based on the Court's detailed knowledge of counsel's conduct during this nearly
21  five year litigation, the Court awards counsel a total of $2,200,744.00 for fees, costs and
22  interest.  The Court calculated this amount by awarding counsel 30 percent of the total $7
23  million recovery for fees *and* costs, that is, $2.1 million.  If the Court had not included costs
24  in this figure, it would have awarded a lower total amount. The Court notes that as of August
25  2005, when the Court approved the settlement, counsel represented that the attorneys had up
26  to that point incurred reimburseable expenses of approximately $200,000.  Motion to
27  Approve Compromise of Minors, Aug. 26, 2005 ¶ 15 (Docket no. 240).  Any costs incurred
28  after this date are primarily counsel's responsibility.

13

**United States District Court**
For the Northern District of California

1       The Court then added $215,240.00 in interest to the $2.1 million figure.  Interest was

2  calculated at the federal post-judgment rate (4.34%) as of the December 5, 2005 date of the

3  judgment.  From this amount the Court subtracted the cost to plaintiffs of the Special Master

4  and the new guardian ad litem ($114,496.00).  Counsel, and not plaintiffs, should bear the

5  burden of these costs because the Special Master and new guardian ad litem were required

6  because of counsel's infighting about fees and Rodriguez Borrego's financial arrangement

7  with Replogle.

8                          **CONCLUSION**

9       For the foregoing reasons, the Court awards plaintiffs' counsel a total of

10  $2,220,744.00.  The difference between $2,220,744.00 and the amount remaining in the

11  Clerk's Registry has been distributed to plaintiffs in accordance with the Ninth Circuit's

12  order.

13      **IT IS SO ORDERED.**

14  Dated: May 7, 2008



15

16                  CHARLES  R. BREYER
                        UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28