```
Pages 1 - 19

                UNITED STATES DISTRICT COURT

              NORTHERN DISTRICT OF CALIFORNIA

           BEFORE THE HONORABLE CHARLES R. BREYER

JOSE ROE I-IV, minors, et al.,     )
                                   )
         Plaintiffs,               )
                                   )
  VS.                              )   No. C 03-4035 CRB
                                   )
THOMAS F. WHITE, et al.,           )
                                   )
         Defendants.               )
_____)
                                   )
MAURICIO RODRIGEZ BORREGO,         )
                                   )
         Intervenor/               )
         Third Party-in-Interest,  )
                                   )
  VS.                              )
                                   )
DAVID REPLOGLE, an individual; and )
LAW OFFICES OF DAVID REPLOGLE, A   )
PROFESSIONAL CORPORATION, a        )
California professional corporation,)
                                   )
         Intervenor/               ) San Francisco, California
         Third Party-in-Interest,  ) Friday, April 4, 2008
_____) 10:06 a.m.
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

**For Plaintiffs:**         LAW OFFICES OF DAVID REPLOGLE, APC
                            550 Montgomery Street, Suite 550
                            San Francisco, California  94111
                      **BY: DAVID REPLOGLE, ESQUIRE**

(Appearances continued on next page)

**Reported By:**    *Katherine A. Powell, CSR # 5812, RPR, CRR*

**APPEARANCES (CONTINUED):**

| | |
|---|---|
| **For Plaintiffs:** | LAW OFFICES OF JOHN E. HILL |
| | 8105 Edgewater Drive, Suite 100 |
| | Oakland, California 94621 |
| BY: | **JOHN E. HILL, ESQUIRE** |
| | **MICHAEL PAUL GUTA, ESQUIRE** |
| | |
| **For Defendant Thomas White:** | LAW OFFICES OF GEOFFREY ROTWEIN |
| | 400 Montgomery Street, Second Floor |
| | San Francisco, California 94104 |
| BY: | **GEOFFREY ROTWEIN, ESQUIRE** |
| | |
| **For Defendant Arthur Collingsworth:** | LAW OFFICES OF GILBERT EISENBERG |
| | 400 Montgomery Street, suite 200 |
| | San Francisco, California 94104 |
| BY: | **GILBERT EISENBERG, ESQUIRE** |
| | |
| **For the Guardian:** | Kerr & Wagstaffe LLP |
| | 100 Spear Street, Suite 1800 |
| | San Francisco, CA 94105 |
| BY: | **JAMES MATTHEW WAGSTAFFE, ESQUIRE** |
| | |
| **As Special Fees Counsel for John Hill:** | O'CONNOR AND ASSOCIATES |
| | Embarcadero Center, Suite 1020 |
| | San Francisco, California 94111 |
| BY: | **BRADLEY KAPLAN, ESQUIRE** |

```
 1                     P R O C E E D I N G S
 2   APRIL 4, 2008                                      10:06 A.M.
 3
 4           THE CLERK:  Calling case C 03-4035, Jose Roe versus
 5   Thomas White.
 6           Appearances, Counsel.
 7           MR. ROTWEIN:  Good morning, Your Honor.
 8           Geoffrey Rotwein for Thomas White.
 9           THE COURT:  Good morning.
10           MR. WAGSTAFF:  Good morning, Your Honor.
11           I'm James Wagstaff, Kerr & Wagstaff, on behalf of the
12   guardian.
13           MR. REPLOGLE:  Good morning, Your Honor.
14           David Replogle for the plaintiffs.
15           MR. HILL:  Good morning, Your Honor.
16           John Hill for plaintiffs and himself.
17           MR. KAPLAN:  Good morning, Your Honor.
18           Brad Kaplan, special fee counsel for John Hill.
19           THE COURT:  Sorry?
20           MR. KAPLAN:  Fee counsel for John Hill.  We represent
21   Mr. Hill in the fee dispute.
22           THE COURT:  And Mr. --
23           MR. EISENBERG:  Good morning, Your Honor.
24           THE COURT:  Good morning.
25           MR. EISENBERG:  Nice to see you, Your Honor.
```

1          Gil Eisenberg appearing for Arthur J. Collingsworth,
2  Your Honor, in opposition to Mr. White's motion.
3          **THE COURT:**  All right.  Mr. White's motion is to --
4          **MR. EISENBERG:**  To set aside --
5          **THE COURT:**  Has everybody identified themselves?
6          **MR. REPLOGLE:**  I'm sorry.
7          **MR. WAGSTAFF:**  Yes, Your Honor.
8          **THE COURT:**  Mr. White's motion ...
9          **MR. EISENBERG:**  To set aside the settlement.
10         **THE COURT:**  That motion is denied.  I'll write an
11 opinion on it, as I have written an opinion on everything in
12 this case.  You'll get a written, reasoned opinion.
13         **MR. ROTWEIN:**  Could I argue the matter?
14         **THE COURT:**  No.  I don't need any further argument.
15 I have the argument well in mind.  It's about the fifth time
16 it's been made in various forms.  And anything that is new in
17 your most recent submission on it will be addressed in the
18 written opinion.  But thank you for offering.
19         **MR. ROTWEIN:**  Yes, Your Honor.
20         **THE COURT:**  Okay.  So we have -- turning to the fee
21 dispute, I have received a number of submissions.  Where are we
22 on that?
23         **MR. WAGSTAFF:**  Your Honor, perhaps I can could
24 address that briefly.
25         **THE COURT:**  Sure, Mr. Wagstaff.

1          **MR. WAGSTAFF:**  It is my hope, and I'll know better by
2   the end of the day, that we may be able to submit a
3   stipulation, Your Honor, that will address the procedure.  I'll
4   know by the end of the day, so I don't want to prejudice that
5   process.
6          Either way, next week I'll be submitting a report to
7   the Court in the form of a memorandum that will set forth the
8   recommendations on the guardian's behalf for the measure of
9   fees and costs and perhaps some other way of resolving the
10  dispute.
11         **THE COURT:**  Okay.  I would only say I would -- this
12  litigation, as we know, has gone on for a long period of time.
13  It can go on for a lot longer.  I'm not quite sure who benefits
14  from it going on too much longer.
15         And so I would just encourage the parties -- and I
16  don't know any details, but I would encourage the parties to
17  sit down and see whether or not they could, through matters of
18  compromise and otherwise, set upon a procedure that will try to
19  bring this to a resolution sooner rather than later.
20         One has to be -- when you say sooner or when I say
21  sooner, it's in its ironic form, because there's nothing soon
22  about this case.
23         **MR. WAGSTAFF:**  Your Honor, I'm hoping --
24         **THE COURT:**  Including hearing from the Ninth Circuit,
25  as I --

1           **MR. WAGSTAFF:**  Yes, the speed of the appellate
2  process in Dickens form.
3           Your Honor, we are hoping, however, sooner will mean
4  sooner, and perhaps weeks before we can resolve it all, and
5  certainly a matter of a small number of months.  If it gets
6  into years, you won't be hearing from me in a supportive
7  fashion.
8           **THE COURT:**  Well, anyway, sit down and see what you
9  can do.  And I'll await some advice from the parties as to what
10 you've been able to agree to, or whatnot.  You know.
11          **MR. WAGSTAFF:**  Fair enough.
12          **THE COURT:**  All right.  Thank you very much.  Thank
13 you for coming in this morning.
14          **MR. REPLOGLE:**  Yes, there was one further motion.
15          **THE COURT:**  A question of sanctions.
16          **MR. REPLOGLE:**  I filed a motion for an order to show
17 cause, not sanctions, order to show cause based on the Safire
18 affair.
19          **THE COURT:**  Well, let me ask that.  I'm delighted
20 you're here, Mr. Rotwein, to address that issue.  There is an
21 issue as to whether or not Mr. White directly or indirectly had
22 a role in connection with Mr. Safire's representations to the
23 Court and the records set forth in that regard in part as to at
24 least some of the things that occurred.
25          I mean, certainly some of them occurred in front of

1  the Court.  Mr. Safire coming in and saying he represented a
2  number of the plaintiffs, they wished to withdraw their -- the
3  claims that they -- in connection with the lawsuit, and so
4  forth and so on.  I don't need to delineate them.  We are all
5  aware of what they are.  They are in the record.  There is also
6  the report of the Special Master in the record.
7           And the question is, should I issue an order to show
8  cause requiring Mr. White or his counsel to come forward and
9  explain, to the extent they wish to, their role with respect to
10 those matters?
11          And that's -- I think it's appropriate that I do give
12 some thought to that.  I don't -- as an initial matter, I don't
13 understand that even if I were to find Mr. White responsible in
14 some manner, he would be responsible for the total costs of the
15 Special Master.  The Special Master was appointed for a number
16 of reasons, one of which was the Safire matter.  But that
17 wasn't his exclusive role in this.
18          **MR. REPLOGLE:**  If I could, Your Honor.
19          **THE COURT:**  Yes, Mr. Replogle.
20          **MR. REPLOGLE:**  The motion is simply for an order to
21 show cause.  And it's at the end of that hearing process that
22 the Court would be able to make a determination as to the
23 amount.  We're not seeking an amount today.  We're simply
24 seeking an order to show cause.
25          **THE COURT:**  Well, I think my initial reaction, when I

1  read the motion, was an order to show cause is appropriate.
2  And then that provides the forum for which I then have to make
3  certain findings.
4           **MR. REPLOGLE:**  I agree, Your Honor.
5           **THE COURT:**  It allows Mr. Rotwein to come forward in
6  a formal proceeding and put forward any explanation that he
7  wishes to.
8           **MR. REPLOGLE:**  And, again, he will have -- Mr. White
9  will have his full due process rights under the law.  That's
10 all we're seeking here, is we want a process for them to come
11 forward and explain their behavior.
12          **THE COURT:**  I think I have to ask Mr. Rotwein what
13 his position is.
14          **MR. ROTWEIN:**  Your Honor, my position --
15          **THE COURT:**  So I want to hear argument on that.
16          **MR. ROTWEIN:**  I'm sorry?
17          **THE COURT:**  I want to hear argument.
18          **MR. ROTWEIN:**  On that issue.  Your Honor, I don't
19 think an order to show cause is appropriate.  I think that
20 Mr. Replogle, for the plaintiffs, had the initial burden to
21 make a showing that this was a basis for requiring Mr. White to
22 come forward and explain something, to explain anything about
23 the -- the appearance of Eric Safire in this case.  He's
24 presented nothing that's admissible.
25          He has his declaration which, frankly, is perjurious,

1  which I want to bring to the Court's attention.  All the
2  information that he supplies is based on hearsay.  It's
3  unreliable.  It's based on information and belief.  It's based
4  on he received information from reliable sources.  That's not
5  enough to get an order to show cause.
6           **THE COURT:**  Well, the order to show cause is a pretty
7  low threshold.  You know, it's -- things occurred in front of
8  me that weren't -- I mean, Mr. Safire came in front of me and
9  said:  I represent these individuals, and they want to withdraw
10 their claims.
11          This was after a Court of Appeal awarded each of
12 these individuals a sum up to $350,000.  It's never occurred to
13 me, I mean as long as I have sat as a judge, that somebody
14 having been awarded $350,000 now comes in and says, No, I don't
15 want it.  And one reason that that then triggered in part a
16 Special Master making the inquiries that were made.  He
17 reported his findings, what they were, his observations and so
18 forth.  And that seemed to me to suggest enough in the record
19 to warrant the issuance of an order to show cause.
20          **MR. ROTWEIN:**  Why against Thomas White?
21          **THE COURT:**  Well, because the allegation is --
22          **MR. ROTWEIN:**  That's an allegation without any
23 factual basis.  The Special Master did a very thorough
24 investigation.  He talked to everybody, Your Honor.  There is
25 no suggestion that Tom White had anything to do with Eric

1   Safire's appearance.
2           Eric Safire -- incidentally, he didn't make a
3   representation that he was -- he didn't appear in this court
4   and say, I'm representing the plaintiffs.  He said, I'm making
5   a special experience.  You know, I -- whether that's minor or
6   major I don't know.
7           But the allegation is against Tom White.  If
8   Mr. Flores or Mr. Mena or Mr. Ortega or Mr. Safire did
9   anything, that's one thing.  But the allegation -- and it's a
10  hollow allegation without any factual basis, Your Honor.
11          Mr. Replogle says under penalty of perjury -- and I
12  got the transcript from August 3rd, filed, prepared and filed,
13  yes.  I will -- and I assume Mr. Replogle has a copy.
14          He says under penalty of perjury that -- it's here
15  someplace.  Here it is.  He signs it on February 22nd of this
16  year.  And he says on page 2, line 16 through 21, quote, Safire
17  then stated to the Special Master that he was then contacted by
18  Hilaro Silvar Mena.
19          And here's the critical part.  Quote, according to
20  the declaration filed by Safire in support of his position to
21  substitute counsel, Mena works for Flores.  I didn't see that
22  anywhere in any petition, Judge.
23          And, secondly, then he says, Mr. Replogle says,
24  quote, Safire acknowledged the fact that Mena works for Flores
25  before the Court, on the record on August 3, 2007.

1        Mr. Safire said no such thing.  And I have the
2   transcript.  It's been filed.  And if you look at -- starting
3   at page 12, going over to 14, Mr. Safire talks.  There's no
4   comment by Mr. Safire that Mena works for Flores.  There's
5   nothing on the record.  Mr. Replogle says something about
6   somebody nodding to something.
7        Now, Mr. Replogle committed perjury, Your Honor, in
8   this court.  And I don't think I've ever said that in my 34
9   years in practice in state and federal court, in a whole
10  variety of civil and criminal cases, as you know.  He committed
11  perjury.  You know -- and there's a constant allegation against
12  this man that he lies.
13       You know, last week or maybe this week Mr. Replogle
14  files a letter -- I don't understand why letters by Replogle to
15  Mr. Hill are being E filed, but they are -- claiming that
16  Mr. Hill went down to Puerto Viarta.
17       Mr. Hill comes back with his letter.  And I
18  understand why he did it, because Replogle E files this
19  correspondence saying, I haven't been to Puerto Viarta.  And
20  Mr. Replogle is a liar.  And that comes from Replogle's
21  co-counsel in this case, Your Honor.
22       I mean, this is a repeat problem.  So I am concerned
23  about anybody committing perjury.  I'm very concerned about an
24  attorney, an officer of the Court, committing perjury.  And it
25  happened here.

1           In representation of my client, Mr. Replogle has
2   presented nothing in his declaration under penalty of perjury,
3   Your Honor, that triggers any kind of showing that my client,
4   Tom White, should come forward and explain anything about the
5   Safire matter.
6           **THE COURT:**  Mr. Flores, does he or did he work for
7   Mr. White?
8           **MR. ROTWEIN:**  Your Honor, I'm not going to be
9   providing information.  That's not for me to be doing here.
10          **THE COURT:**  You're not going to answer the question?
11          **MR. ROTWEIN:**  No, I'm not going to answer it, Judge.
12  I'm sure you understand why.  That's not my duty to come
13  forward with information.
14          **THE COURT:**  I understand why.  I don't know that I
15  understand why, but it's not interesting whether I understand
16  or don't understand.
17          **MR. ROTWEIN:**  Right.
18          **THE COURT:**  I mean, you take the position that you
19  don't have to tell me, that you have no obligation to tell me
20  that.  You take that position.  Is that correct?
21          **MR. ROTWEIN:**  Well, I do, Judge, because --
22          **THE COURT:**  That's okay.
23          **MR. ROTWEIN:**  Yes, I do.  I do.
24          **THE COURT:**  That's your position.  Okay.  So I'll
25  take a look.  I'll take a look and make a determination whether

1   or not I feel there's sufficient evidence to warrant an order
2   to show cause.  I'll review it.  If I think there is, I'll sign
3   it.  If I think there isn't, I won't.
4              **MR. ROTWEIN:**  I gathered.
5              **THE COURT:**  Sorry?
6              **MR. ROTWEIN:**  I gathered.
7              **THE COURT:**  Well, do you have anything else?  I don't
8   want to cut you off, because I am asking you for your position
9   as to the issuance of an order to show cause.  Of course, I
10  could ask Mr. Hanlon.  He's here.  He also represents
11  Mr. White.
12             **MR. HANLON:**  Not on this matter, Judge.
13             **MR. ROTWEIN:**  First of all, Judge, I don't think that
14  an order to show cause is appropriate for sanctions, monetary
15  sanctions.
16             **THE COURT:**  Why wouldn't it be?
17             **MR. ROTWEIN:**  I think an order to show cause perhaps
18  is appropriate for civil contempt or criminal contempt, to come
19  forward and explain.  Mr. Replogle --
20             **THE COURT:**  Wouldn't it be --
21             **MR. ROTWEIN:**  No, no, for sanctions under, you know,
22  the Supreme Court decision that says misconduct in a civil case
23  can sanctioned by the Court.  An order to show cause isn't
24  appropriate for that.
25             **THE COURT:**  What would I do?

```
 1            MR. ROTWEIN:  Okay.  What's required is the person
 2   seeking the sanctions presents sufficient information,
 3   evidence, you know, declarations and evidence --
 4            THE COURT:  You're talking about the remedy.  You
 5   were saying to me -- I mean, I know your position is that there
 6   is inadequate evidence, that there isn't evidence to issue an
 7   order to show cause.  But I think you're taking a further
 8   position that even if there were, an order to show cause is not
 9   the proper remedy.
10            MR. ROTWEIN:  Yes, that's right.
11            THE COURT:  To which I say, Why isn't it?
12            MR. ROTWEIN:  Mr. Replogle is seeking monetary
13   sanctions in addition to civil contempt against Tom White.
14   Okay.  The monetary sanctions, the money for covering his
15   attorneys' fees in all the proceedings and the Special Master
16   and so on, that's by way of motion, where he has to come
17   forward with evidence, declarations, information and so on.
18   And then we have a hearing.
19            But it's my understanding that there is no issuance
20   of an order to show cause against Mr. White to come forward for
21   monetary sanctions.  Civil contempt, I think, perhaps is
22   different.  But I think that --
23            THE COURT:  I don't know how I would proceed.  I'm a
24   little confused as to how I would proceed to bring Mr. White to
25   court to respond to these allegations, if it weren't through
```

1  the mechanism of an order to show cause.  Is there some other
2  thing that I issue?
3          **MR. ROTWEIN:**  Mr. White is here.  If there's a motion
4  for monetary sanctions under --
5          **THE COURT:**  He's here because you're representing
6  him.
7          **MR. ROTWEIN:**  Right, right.  If there's a motion for
8  monetary sanctions under Rule 11 or Rule 60, or the other
9  bases, and the case that Mr. Replogle is relying on, Your
10 Honor -- excuse me for the moment.  Chambers.  The Chambers
11 versus NASCO decision, okay, allows the Court to award monetary
12 sanctions against a party for misconduct.
13         But it doesn't -- it doesn't trigger the -- you know,
14 the order to show cause mechanism.  It is, rather, a motion for
15 sanctions, where the moving party comes forward to the Court
16 with admissible evidence.  Tom White then responds.  And then
17 you decide whether sanctions are appropriate, and then the
18 amount.
19         I think contempt is different, where --
20         **THE COURT:**  I don't --
21         **MR. ROTWEIN:**  I don't think the order to show cause
22 mechanism is appropriate for monetary sanctions.  In that vein,
23 Your Honor, I don't think Mr. Replogle has presented any
24 information --
25         **THE COURT:**  Well, that gets back to your first

1 argument.

2     **MR. ROTWEIN:** Right.

3     **THE COURT:** So I guess if I were to reject your first
4 argument, I would then issue, perhaps, an order in the
5 alternative, say an order to show cause is hereby issued but,
6 in any event, Mr. White is required under civil contempt, and
7 so forth, to respond to ...

8     **MR. ROTWEIN:** Okay.

9     **THE COURT:** Maybe that's what I would do. I don't
10 know yet. I have to take a look. It seems to me the threshold
11 question is whether or not I should take any further action at
12 this point, whatsoever.

13     And you've brought into question the sufficiency of
14 the evidence that would warrant a further stay. I appreciate
15 that.

16     **MR. ROTWEIN:** Okay.

17     **THE COURT:** I'll take a look at that, as I've
18 indicated I would. I don't know the response is, well, you
19 know, Mr. Replogle has committed perjury. I don't know that
20 I --

21     **MR. ROTWEIN:** Whether he has commented perjury or
22 not, he hasn't made a proper showing. But I'm mentioning that,
23 Judge, because it's troubling, and it goes to his declaration,
24 which I think you should strike. I think he's an incredible
25 person. I think he commits perjury. I think he lies. And

1  it's been repeatedly shown in this court among the parties with
2  correspondence.
3           Secondly, Your Honor, civil contempt -- here we are
4  again.  Mr. Replogle says, in his notice of motion, why Thomas
5  White should not be held in, quote, civil contempt.  Well,
6  guess what he comes back with on his reply brief?  "I meant
7  criminal contempt."  With no response to -- Judge, let me
8  finish -- in any of my objections to his facts without any
9  legal authority.  Now he's going for a criminal contempt.
10          Civil contempt, Judge, is where a party has violated
11 a court order.  There's no order that Mr. White has violated
12 here.  Whatever Mr. Safire did, regardless of what he did,
13 regardless of what other people did, civil contempt arises when
14 there's a court order that a party or, I guess, an attorney
15 violates.
16          **THE COURT:**  Well, what would you describe if, in
17 fact, a lawyer comes in and says, I represent X, who's a
18 plaintiff in the action, and it turns out he doesn't represent
19 X, as a plaintiff in the action?
20          And add the further fact that there's some evidence
21 which suggests the defendant actually obtained the services of
22 the lawyer to come in and make that representation to the
23 Court.  Now, none of those things, I understand, you agree
24 occurred.  But if they did occur what, then, does the Court do?
25          **MR. ROTWEIN:**  Then the appropriate remedy is a motion

```
 1  for monetary sanctions under Chambers vs. NASCO.
 2            THE COURT:  Okay.
 3            MR. ROTWEIN:  I think that the Supreme Court holding
 4  there is appropriate.  But it doesn't trigger the order to show
 5  cause evidentiary hearing.
 6            THE COURT:  You made that argument.
 7            MR. ROTWEIN:  Okay.
 8            THE COURT:  I understand what you're saying, and I'll
 9  take a look at it.
10            Anything further?  No.  Thank you very much.  Thanks
11  for coming.
12            (Multiple counsel simultaneously thank the Court.)
13            MR. REPLOGLE:  Your Honor, could I have one last --
14            THE COURT:  Sure.
15            MR. REPLOGLE:  I believe if the Court looks at the
16  record in this matter, it's Mr. Safire's acknowledgment of
17  Flores' role appears, I believe, in the first memorandum he
18  filed in this case, beginning on the first page, continuing on
19  to the second page.  That's where it is.
20            And in terms of his acknowledgment, he may not have
21  stated it but he was nodding very vigorously when queried on
22  that issue by the Court.
23            That's the point.  I did not state that he stated it
24  on the record.  I said he acknowledged it on the record.  There
25  is a difference.  And he was in court, and he acknowledged
```

1  that.
2          **MR. ROTWEIN:**  I'm very sorry.  Mr. Replogle says in
3  his declaration under penalty of perjury that Mr. Safire said
4  in court on August 3 of 2007, that Mena works for Flores.
5  That's under penalty of the perjury.  The transcript is
6  completely different.
7          He was here, Mr. Replogle.
8          **THE COURT:**  Okay.  Thank you very much.
9          **MR. REPLOGLE:**  Thank you.
10         **THE COURT:**  Always a pleasure.
11         And it was a particular pleasure having you,
12 Mr. Eisenberg, in court today.
13         (At 10:29 a.m. the proceedings were adjourned.)
14                         - - - -

*Katherine A. Powell, CSR, RPR, CRR*
*Official Reporter - U.S. District Court*
*(415) 794-6659*

1

2          **CERTIFICATE OF REPORTER**

3          I, KATHERINE A. POWELL, Official Reporter for the

4   United States Court, Northern District of California, hereby

5   certify that the foregoing proceedings in C 03-4035 CRB, Jose

6   Roe, et al. vs. Thomas White, et al., were reported by me, a

7   certified shorthand reporter, and were thereafter transcribed

8   under my direction into typewriting; that the foregoing is a

9   full, complete and true record of said proceedings as bound by

10  me at the time of filing.

11      The validity of the reporter's certification of said

12  transcript may be void upon disassembly and/or removal

13  from the court file.

14

15                  s/b Katherine A. Powell
                    _____

16

17          Katherine A. Powell, CSR 5812, RPR, CRR

18                  Tuesday, May 20, 2008

19

20

21

22

23

24

25

*Katherine A. Powell, CSR, RPR, CRR*
*Official Reporter - U.S. District Court*
*(415) 794-6659*