1  GEOFFREY ROTWEIN (CA SBN 58176)
   LAW OFFICES OF GEOFFREY ROTWEIN
2  400 Montgomery Street, Second Floor
   San Francisco, CA  94104
3  Facsimile: (415) 397-0862
   Telephone: (415) 397-0860
4
   Attorney for Defendant
5  THOMAS F. WHITE

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10 JOSE ROE I, *et al*,                )   No.  C-03-4035 CRB
                                       )
11          Plaintiffs,                )
                                       )
12      vs.                            )
                                       )
13 THOMAS F. WHITE,                    )
                                       )
14          Defendant.                 )
                                       )
15 _____   )

16

17   **REPLY TO OPPOSITION TO MOTION TO VACATE JUDGMENT**
            **(Rule 60 of the Federal Rules of Civil Procedure)**
18
        ***(Request for Court Indication to Entertain/Grant Motion)***
19

20

21
                    DATE:  November 20, 2009
22                  TIME:  11:00 a.m.
                    CTRM:  8, 19th Floor,
23                         Hon. Charles R. Breyer

24

25

26

27

28

REPLY MEMORANDUM TO OPPOSITION
TO MOTION TO VACATE JUDGMENT
No. C-03-4035 CRB

1

## **TOPICAL INDEX**

2   Table of Authorities                                                                    ii

3   I.  PLAINTIFFS, DAVID REPLOGLE AND MAURICIO                                              1
    BORREGO HAVE DEFRAUDED THIS COURT
4
        A.  Defendant White Has Presented a *Prima Facie* Showing of Fraud                  1
5           that Warrants an Evidentiary Hearing

6       B.  Fraudulent Representations to Court by Attorney David Replogle,                  2
            Guardian *Ad Litem* Mauricio Borrego and Plaintiffs
7
    II.  JUDICIAL AUTHORITY TO REMEDY FRAUD ON THE COURT                                     6
8
        A.  General Legal Principles                                                         6
9
        B.  Prejudice to a Party from the Fraud Is Not Required for Relief                  10
10
        C.  A Settling Party May Seek Relief from Fraud on the Court                        11
11
    III.  RELIEF UNDER RULE 60(b)(6)                                                        13
12
    IV.  THIS COURT HAS JURISDICTION TO INDICATE WHETHER IT                                 14
13  WILL ENTERTAIN AND/OR GRANT THE MOTION TO VACATE

14  V.  CONCLUSION                                                                          15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

### **FEDERAL CASES**

3   *Abatti v. Commissioner*, 859 F.2d 115 (9th Cir. 1988)                                7

4   *Ackermann v. United States*, 340 U.S. 193 (1950)                                    14

5   *Alexander v. Robertson*, 882 F.2d 421 (9th Cir. 1989)                           7, 9, 10

6   *Appling v. State Farm Mutual Automobile Insurance Co.*,
    340 F.3d 769 (9th Cir. 2003)                                                      7

7
    *Bush Ranch, Inc. v. E.I. DuPont De Nemours & Co.*, 99 F.3d 363 (11th Cir. 1996)   12

8
    *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)                                      6

9
    *Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862 (9th Cir. 1976)                    14

10
    *Demjanjuk v. Petrovsky*, 10 F.3d 338 (6th Cir. 1993)                              8

11
    *Dixon, et al v. Commissioner of Internal Revenue*, 316 F.3d 1041 (9th Cir. 2003)  10

12
    *Geders v. United States*, 425 U.S. 80 (1976)                                      9

13
    *Greater Boston Television Corp. v. FCC*, 463 F.2d 268 (C.A. D.C. 1971)            6

14
    *H.K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.*, 536 F.2d 1115 (6th Cir. 1976)   8

15
    *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238
16  88 L.Ed. 1250, 64 S.Ct. 997 (1944)                                          7, 8, 9, 10, 11

17  *In re Intermagnetics America, Inc.*, 926 F.2d 912 (9th Cir. 1991)                 7

18  *In re M.T.G., Inc., et al*, 366 B.R. 730 (Bank. Ct., E.D. Mich., 2007)            12

19  *Kenner v. Committee of Internal Revenue Service*, 387 F.2d 689 (7th Cir. 1968)    7

20  *Klapprott v. United States*, 335 U.S. 601 (1949)                                  14

21  *Kupferman v. Consolidated Research & Manufacturing Corp.*,
    459 F.2d 1072 (2d Cir. 1972)                                                     7, 9
22
    *Levander v. Prober*, 180 F.3d 1114 (9th Cir. 1999)                                11
23
    *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988)             14
24
    *Lockwood v. Bowles*, 46 F.R.D. 625 (D.C. 1969)                                   8
25
    *Martina Theatre Corp. v. Schine Chain Theatres, Inc.*,
26  278 F.2d 798 (2nd Cir. 1960)                                                    10, 12

27  *Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995)             7, 10, 11

28  *Rhinehart v. Stauffer*, 638 F.2d 1169 (9th Cir. 1979)                             3

*Root Refining Co. v. Universal Oil Products Co.*, 335 U.S. 912,
169 F.2d 514, 69 S.Ct. 481, 93 L.Ed. 444 (3d Cir. 1948)                           7, 10

*Standard Oil Co. v. United States*, 429 U.S. 17 (1976)                               8

*Toscano v. Committee of Internal Revenue Service*, 441 F.2d 930 (9th Cir. 1971)      10

*Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575 (1946)      6, 8, 10, 11, 12

*USM  Corp. v. SPS Technologies, Inc.*, 694 F.2d 505 (11th Cir. 1982)             12, 13

*Virgin Islands Housing Authority v. David*, 823 F.2d 764 (3rd Cir. 1987)              7

*Williams v. Woodford*, 384 F.3d 567 (9th Cir. 2004)                                   1

## STATE CASES

*Sutter v. Easterly*, 354 Mo. 282, 189 S.W.2d 284 (1945)                               8

## FEDERAL STATUTES

Federal Rules of Civil Procedure:
    Rule 11                                                                         2
    Rule 60                                          2, 7, 10, 11, 12, 13, 14
    Rule 62.1                                                                      14

Federal Rules of Appellate Procedure, Rule 12.1                                       15

Local Rule 11-4, United States District Court                                          3
for the Northern District of California

## MISCELLANEOUS

J. Moore & J. Lucas, Moore's Federal Practice § 60.33, at 515 (2d ed. 1978)           7

*Survey and Proposal for General Reform,* 60 Cal. L. Rev. 531, 557 (1972)             11

**I.**

## PLAINTIFFS, DAVID REPLOGLE AND MAURICIO BORREGO HAVE DEFRAUDED THIS COURT

### A.  Defendant White Has Presented a *Prima Facie* Showing of Fraud that Warrants an Evidentiary Hearing

The new witness is credible, nothing impeaches his/her credibility and plaintiffs have not presented any counter declarations.  The evidence presented for White's motion shows that David Replogle and Mauricio Borrego, with the cooperation and participation of the Plaintiffs, devised and carried out a scheme to defraud this Court by presenting false civil claims against White.  *See* Motion to Vacate, pp. 3-4.

The other witnesses previously presented, Daniel Garcia, Alexander Shahbazian, Ulises Ramces Spinola Garcia, Jose Alberto Hernandez Hernandez and Robert Ortiz Olguin, completely corroborate the new witness.  Plaintiffs note this Court's comments regarding the credibility of these witnesses in its Order dated October 4, 2006 when refusing to entertain White's motion to vacate filed August 3, 2006.  Opposition to Motion to Vacate (Opp.), p. 15**.**  However, these comments are not binding judicial findings that have any bearing on the instant motion, since the Court was without jurisdiction to rule on the motion having declined to indicate a willingness to entertain it followed by a limited remand from the Ninth Circuit for this purpose. *Williams* v. *Woodford*, 384 F.3d 567, 568 (9th Cir. 2004).  Docket No. (DN), 449-452, 490.  Therefore, this Court should assess the credibility of the witnesses without any preconceived notions or previously expressed opinions.

Plaintiffs' counsel accurately observes that his clients have changed their stories  on different occasions over the years regarding whether White abused them.  This means that the credibility of their self-serving statements to the Special Master that White molested them is equally suspicious.  Opp., 16-17.[1]  Plaintiffs's differing statements prove a lack of credibility.

Plaintiffs' counsel is correct that White is alleging "that the settlement and judgment

---

[1]   While twelve Plaintiffs told the Trust Protector about their socioeconomic deprivation and psychological trauma from sexual abuse, tellingly none even mentioned White.  Opp., 16-17.

1   in this case resulted from fraud on the Court."  Opp., 4:24-27.  This is the deleterious

2   consequence of the fraudulent case from its inception, which continued with extensive

3   litigation and culminated with the settlement conference, a final settlement and the *ex parte*

4   application to approve the minors' compromises.  However, Plaintiffs understandably want

5   to avoid addressing the broader picture here of an entire case that was based on a persistent

6   pattern of fraud covering two years from filing to judgment.  Toward this end they attempt to

7   minimize the fraud by focusing solely on the resulting settlement and judgment while

8   disregarding what preceded it — a case that was fraudulently filed and pursued.

9          The appropriate question is not the isolated query posed by Plaintiffs of whether "the

10  alleged falsity of the underlying claims was []relevant to the settlement," but rather whether

11  the court was defrauded *because* of the false claims from the outset through entry of

12  judgment, which encompassed the settlement conferences and resulting settlement agreement.

13  Opp., 15:1-3.  The court was defrauded at every stage — when Replogle *et al* sought

14  appointment of Borrego as guardian *ad litem*, when they sought permission to file three

15  amended Complaints, when opposing White's motion to stay discovery until conclusion of

16  his criminal cases, when moving for leave to depose White in the Thai prison, when moving

17  to advance the trial and oppose White's motion to continue, when opposing White's motion

18  to dismiss for *forum non conveniens*, when seeking approval of the minors' compromises, etc.

19  Plaintiffs entirely avoid addressing this consistent pattern of fraud throughout the litigation.

20         This Court's orders in February and May 2008, removing Borrego as the guardian

21  because he and Replogle concealed their fee agreement and unethical relationship in the case

22  from the beginning, followed by sanctions against Replogle with substantially reduced

23  attorneys fees, are *res judicata* that they defrauded the court from its inception.  DN 804, 941.

24         This fraud on the court requires that the judgment be vacated under Rule 60(b)(6) and

25  (d)(3) of the Federal Rules of Civil Procedure (hereafter referenced by "Rule"), and pursuant

26  to the Court's inherent power to remedy fraud on the judicial system.

27         **B.  Fraudulent Representations to Court by Replogle, Borrego and Plaintiffs**

28         Rule 11 requires that attorneys be truthful in pleadings they sign and file on behalf of

their clients as parties to an action.

> (a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

>> (4) ... .

> (*Accord*, Local Rule 11-4(a).)

"Before filing a civil action, the attorney has a duty to make an investigation to ascertain that it has at least some merit, and further to ascertain that the damages sought appear to bear a reasonable relation to injuries actually sustained. This is one of the purposes of F.R.Civ.P. 11. [Citation.] The failure of plaintiff's attorney to discharge this duty, ..., prejudiced defense counsel in their preparation of the case. A district court has the power to dismiss a complaint if it is frivolous or brought for some ulterior purpose." *Rhinehart* v. *Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979).

Replogle defrauded this Court from the inception of the case when he signed and filed his Complaint for Damages on behalf of Plaintiff Jose Roe I on September 3/4, 2003. DN 1,

1    p. 12.   Replogle certified to the Court that to the best of his knowledge, information and

2    belief, formed after a reasonable inquiry, his Complaint was not being presented for any

3    improper purpose, that the claims and other legal contentions were warranted by existing law

4    and that the factual contentions therein had evidentiary support.   He deliberately and

5    intentionally lied *to the Court*.

6        He lied again the same day to Hon. Marilyn Hall Patel in his Application for Order

7    Permitting the Filing of the Complaint under Fictitious Name and Appointing Mauricio

8    Borrego as Guardian *Ad Litem*.   DN 2.   He also deliberately lied in his accompanying

9    Declaration under oath that "Plaintiff has a cause of action against Defendants Thomas F.

10   White and Nathan Lovass for childhood sexual abuse, sexual tourism and related causes of

11   action." *Id.*, 3:2-5; DN 3, 3:10-13.   Borrego misled the Court when joining in the request for

12   appointment as guardian in a declaration under oath on August 19, 2003.   DN 2, Exhs. A, C.

13       Replogle's First Amended Complaint signed and filed September 16, 2003, added

14   phony Plaintiffs to the fraudulently initiated case, as did his Second Amended Complaint filed

15   June 4, 2004, Third Amended Complaint filed August 2, 2004, and finally his 200 page

16   Fourth Amended Complaint for twenty-two false Plaintiffs filed October 1, 2004.   DN 7, 114,

17   126, 135.

18       Replogle and Borrego defrauded the Court from the outset about their financial

19   arrangement and the absence of Borrego's conflict of interest, which White's persistent and

20   diligently filed motions finally uncovered, prompting this Court to remove him as guardian

21   and sanction Replogle on February 14 and May 8, 2008.   DN 804, 941.   This Court found that

22   Replogle even lied in open court on October 7, 2005, and then in his follow-up letter dated

23   October 24, 2005 — deceiving *the court* in order to settle the fraudulent case.   DN 341, 941.

24       Replogle's numerous pleadings through entry of judgment on December 5, 2005, are

25   replete with his lies, omissions and misrepresentations.   He knew that none of the Plaintiffs

26   had ever been abused by White — he and Borrego concocted a fraudulent scheme to solicit

27   Mexican boys to serve as phony plaintiffs in order to extract huge sums of money from White

28   by exploiting his inability to provide a deposition or appear in court to testify and assist his

1    counsel during trial.  Replogle, Borrego and their clients exploited and abused the court

2    system to carry out their scam.

3           Note the following additional instances of fraud: Replogle lied in his declaration filed

4    December 28, 2003, opposing a requested stay of the action pending the criminal case.  DN

5    39, 2:17-22; *see also* Replogle's Memoranda, falsely describing White's conduct in DN 37,

6    pp. 2-3 and DN 25, pp. 2-3, and Declaration filed November 5, 2003, in DN 26, 2:17-22.  In

7    his declaration for an order shortening time, he lied about having identified twenty-five

8    additional victims of White.  DN 54, 2:5-10.  Replogle lied to the court on February 3, 2004,

9    when seeking a modification of the sealing order in the related criminal case.  DN 49, 3:1-5;

10   DN 48, 2:17-21. When seeking leave to depose White in the Thai prison, filed March 3, 2004,

11   Replogle falsely declared under oath to the Court that twelve of his clients reported sexual

12   abuse by White.  DN 56, 4:9-11; Exhibit C, Replogle's letter dated August 20, 2003.  His

13   supporting Memorandum falsified sexual misconduct by White.  DN 65, pp. 2-3.

14          In support of his motion to advance the case for trial filed in November 2004, Replogle

15   and Plaintiffs submitted a declaration by psychologist Edgar O. Angelone falsifying Plaintiffs'

16   claims that White molested them and the resulting mental damages. DN 144, 142-146.  On

17   December 17, 2004, defense counsel objected to a trial date in July 2005 given the enormity

18   of the discovery, but on December 20, 2004, the Court granted Plaintiffs' motion to advance

19   and set trial for July 26, 2005.  DN 156, 157.  Replogle *et al* deliberately misled the Court

20   about the importance of advancing the trial date, knowing that the longer the delay, the greater

21   the likelihood that White or the Court would discover their hoax and that he would be able

22   to give a deposition or appear for trial.

23          Then Replogle and Borrego misled Hon. Joseph C. Spero during settlement

24   conferences in June 2005 — they successfully concealed their fraud and secured a settlement

25   agreement where White would pay each Plaintiff $350,000, for a total $7 million.  DN 225.

26          The fraud by Replogle *et al* culminated in their Application to Approve Settlement

27   Agreement and *ex parte* Motion to Approve Compromise of Minor's Claims, filed August 26,

28   2005.  DN 239, 240.  Replogle and Borrego signed the Motion, Borrego under oath, lying to

1   Hon. Charles R. Breyer that they had "made a careful and diligent inquiry and investigation

2   to ascertain the facts relating to the incident or accident in which the claimants were injured,"

3   lying that the Plaintiffs had been abused by White and misrepresenting that the settlement was

4   "fair, reasonable, and in the best interest of the claimants."  *Id.*, ¶¶ 4, 19, 20.  Relying on

5   these fraudulent representations, Judge Breyer approved the Agreement and minors'

6   compromises on August 29, 2005.  DN 243.

7           Different from the cases cited by Plaintiffs, this entire case was premised on fraud, not

8   just false testimony in deposition or trial, or presentation of false documents to the court, or

9   false discovery practices.  Opp., 12-14.  Had Judges Patel, Spero or Breyer even suspected

10  fraud, steps undoubtedly would have been taken *by the court* to investigate, and if the fraud

11  was exposed, dismiss the case.  The cases cited by Plaintiffs are different as they did not

12  involve fraudulent conduct by an attorney, court officer or party *on the court*, whereas the

13  fraud by Replogle *et al* effected the core legitimacy of all the claims against White throughout

14  the case.

15                                              **II.**

16              **JUDICIAL AUTHORITY TO REMEDY FRAUD ON THE COURT**

17          **A.  General Legal Principles**

18          Courts are vested with inherent power to vacate judgments and orders obtained by

19  fraud.  "The inherent power of a federal court to investigate whether a judgment was obtained

20  by fraud, is beyond question.  *Hazel-Atlas Co.* v. *Hartford-Empire Co.*, 322 U.S. 238 [1944].

21  The power to unearth such a fraud is the power to unearth it effectively.  Accordingly, a

22  federal court may bring before it by appropriate means all those who may be affected by the

23  outcome of its investigation." *Universal Oil Products Co.* v. *Root Refining Co.*, 328 U.S. 575,

24  580-81 (1946).  "The spirit of the 'fraud on the court' rule is applicable whenever the integrity

25  of the judicial process or function has been undercut — certainly in any instance, of

26  misconduct of a party."  *Greater Boston Television Corp.* v. *FCC*, 463 F.2d 268, 278 (C.A.

27  D.C. 1971).  "Of particular relevance here, the inherent power also allows a federal court to

28  vacate its own judgment upon proof that a fraud has been perpetrated upon the court."

1  *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 44 (1991).

2    This inherent power is recognized despite the strong judicial policy favoring the

3  finality of judgments, and based on the equally important judicial principle that "a decision

4  produced by fraud on the court is not in essence a decision at all and never becomes final."

5  *Kenner* v. *Comm. of Internal Revenue Service*, 387 F.2d 689, 691 (7th Cir. 1968).

6    Trial courts are empowered to vacate a judgment or order when a litigant shows that

7  the procedure used to obtain it was so tainted by fraud as to effect the integrity of the judicial

8  process itself.   According to the Ninth Circuit, "fraud on the court requires a grave

9  miscarriage of justice and a fraud that is *aimed at the court*." *Appling* v. *State Farm Mut.*

10  *Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003), italics added.

11    To obtain relief, the litigant must show that the fraud involved an "unconscionable plan

12  or scheme designed to improperly influence the court in its decision." *Pumphrey* v. *K.W.*

13  *Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995); *Abatti* v. *Commissioner*, 859 F.2d

14  115, 118 (9th Cir. 1988).  The Ninth Circuit has approved the definition by Professor Moore:

15    "Fraud on the court" should, we believe, embrace only that
     species of fraud which does or attempts to, defile the court itself,
16    or is a fraud perpetrated by officers of the court so that the
     judicial machinery can not perform in the usual manner in its
17    impartial task of adjudging cases that are presented for
     adjudication.
18
     *In re Intermagnetics America, Inc.*, 926 F.2d 912, 916 (9th Cir.
19    1991); *see also*, *Alexander* v. *Robertson*, 882 F.2d 421, 424 (9th
     Cir. 1989) (quoting 7 J. Moore & J. Lucas, Moore's Federal
20    Practice  § 60.33, at 515 (2d ed. 1978)).

21    In *Virgin Islands Housing Authority* v. *David*, 823 F.2d 764, 766 (3rd Cir. 1987), the

22  Third Circuit found that plaintiff's counsel's misrepresentations were fraud on the court:

23    Under Rule 60, an explicit saving clause empowers each federal
     court "to set aside a judgment for fraud upon the court."
24    [Citations] *Kupferman* v. *Consolidated Research & Mfg. Corp.*,
     459 F.2d 1072, 1074 n. 1 (2d Cir. 1972) ("a finding of fraud on
25    the court empowers the district court to set aside the judgment
     *sua sponte*"); *Root Ref. Co.* v. *Universal Oil Prods. Co.*, 335 U.S.
26    912, 169 F.2d 514, 522, 69 S.Ct. 481, 93 L. Ed. 444 (3d Cir.
     1948) ("the power inheres in the appellate as well as in the trial
27    court"), cert. denied sub nom. [Citations.] This provision codifies
     "the historic power of equity to set aside fraudulently begotten
28    judgments." *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322

1    U.S. 238, 245, 88 L.Ed. 1250, 64 S.Ct. 997 (1944) ... . Leading
     commentators have suggested that the concept of fraud upon the
2    court "should ... embrace only that species of fraud [that] does[,]
     or attempts to, subvert the integrity of the court itself, or is a
3    fraud perpetrated by officers of the court so that the judicial
     machinery cannot perform in the usual manner its impartial task
4    of adjudging cases ... ." [Citations.] ... .

5        A key consideration is whether an officer of the court, such as an attorney or court

6    appointed guardian *ad litem*, perpetrates the fraud. *See*, *Lockwood* v. *Bowles*, 46 F.R.D. 625,

7    632 (D.C. 1969) ("the involvement of an attorney (an officer of the court) in the perpetration

8    of the fraud"), citing *Sutter* v. *Easterly*, 354 Mo. 282, 189 S.W.2d 284 (1945), where the court

9    relied on *Hazel-Atlas Glass Co.* v. *Hartford Empire Company*, *supra*, 322 U.S. 238 (*Hazel-*

10   *Atlas)*, overruled on other grounds in *Standard Oil Co.* v. *United States*, 429 U.S. 17 (1976),

11   and holding that fraud on the court was shown where an attorney conspired to produce

12   fabricated evidence; *see also*, *H.K. Porter Co., Inc.* v. *Goodyear Tire & Rubber Co.*, 536 F.2d

13   1115, 1119 (6th Cir. 1976) ("Since attorneys are officers of the court, their conduct, if

14   dishonest, would constitute fraud on the court.").

15       The Court in *Demjanjuk* v. *Petrovsky*, 10 F.3d 338 (6th Cir. 1993), vacated a district

16   court judgment that was "procured as a result of prosecutorial misconduct that constituted

17   fraud on the court." *Id.*, at 356.  The court noted that "[c]ases dealing with fraud on the court

18   often turn on whether the improper actions are those of parties alone, or if the attorneys in the

19   case are involved." *Ibid.*  The court also quoted approvingly from a leading treatise: "[W]hen

20   [an attorney] departs from that standard [integrity and honest dealing with the court] in the

21   conduct of a case he perpetrates fraud upon a court." *Ibid.*, citing 7 Moore's Federal Practice

22   and Procedure, page 60.33.

23       Fraud threatening the integrity of the judiciary is so serious that Congress has set no

24   time limit for motions for relief.  In *Universal Oil Products Co.* v. *Root Refining Co.*, *supra*,

25   the motion was presented fifteen years after judgment and in *Demjanjuk* eight years later.

26   From September 2005, White has repeatedly challenged the settlement and judgment herein

27   based on the fraudulent conduct as it surfaced.  His current application four years after

28   judgment on December 5, 2005 can hardly be faulted for lack of diligence.

REPLY MEMORANDUM TO OPPOSITION
TO MOTION TO VACATE JUDGMENT
No. C-03-4035 CRB                          -8-

1   An attorney commits fraud upon the court by instituting an action "to which he knew

2   there was a complete defense." *Kupferman* v. *Consol. Research & Mfg. Corp.*, *supra*, 459

3   F.2d at 1079; *see also*, *Alexander* v. *Robertson*, 882 F.2d at 425.

4   "If our adversary system is to function according to design, we must assume that an

5   attorney will observe his [or her] responsibilities to the legal system, as well as to [the] client."

6   *Geders* v. *United States*, 425 U.S. 80, 93 (1976).

7   In *Hazel-Atlas*, a patent infringement case, an attorney for defendant Hartford wrote

8   an article extolling the patent and arranged to have it printed in a trade journal under the name

9   of an ostensibly disinterested expert.  Both the Patent Office when granting the patent and the

10  Third Circuit when upholding its validity relied on the misleading article.  The Supreme Court

11  reviewed the matter and held that the judgment must be vacated due to the attorney's fraud:

> Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments.  This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals. ...

> *Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant.  It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.*

> *Id.*, at 246, italics added.

22  The Court also held that it was not required to determine the extent to which the article

23  had in fact effected the judges who had voted to uphold the patent nor was it relevant whether

24  the statements in the article were true.  The key factor of importance for the Court was that

25  because Hartford through its attorney had deliberately arranged its publication under a false

26  name, Hartford was estopped thereafter from disputing its effectiveness in the litigation.  *Id.*,

27  at 246-47.  To remedy Hartford's fraud, the Supreme Court directed the Third Circuit to

28  vacate the judgment and instruct the district court to deny all relief to Hartford.  *Id.*, at 250-51.

1    Notably, the Supreme Court also opined that had the District Court or the Circuit Court

2    learned of the corruption and fraud when it was occurring, Hartford's cause of action would

3    have been dismissed.  *Id.*, at 250.  "The total effect of all this fraud, practiced both on the

4    Patent Office and the courts, calls for nothing less than a complete denial of relief to Hartford

5    for the claimed infringement of the patent thereby procured and enforced."  *Ibid.*

6    The recognized judicial principles governing a litigant's claim that another litigant or

7    his/her attorney has defrauded the court derive from *Hazel-Atlas*.  So important are these

8    principles that a court may *sua sponte* address the matter and impose a sanction if fraud is

9    found.  *Universal Oil Products Co.*, 328 U.S. 575; *Martina Theatre Corp.* v. *Schine Chain*

10   *Theatres, Inc.*, 278 F.2d 798 (2nd Cir. 1960).

11   Even if there are no adverse parties to the fraud on the court, the court still has

12   jurisdiction to address and fashion a remedy, since it retains ancillary jurisdiction to determine

13   whether *it* has been the victim.  *Root Ref. Co.* v. *Universal Oil Prods. Co.*, 169 F.2d 514, 521-

14   22 (3rd Cir. 1948).  There are no time limits for setting aside a judgment on this ground,

15   which is reflected in Rule 60(d)(3), nor can laches bar consideration of the matter, nor is it

16   relevant that the party claiming fraud does not have clean hands.  *Hazel-Atlas*, 322 U.S. at

17   246; *Toscano* v. *Comm. of Internal Revenue Service*, 441 F.2d 930, 936-37 (9th Cir. 1971);

18   *Martina Theatres Corp.*, 278 F.2d at 801.

19   If it is shown that the court was defrauded, the judgment or order must be vacated and

20   the party responsible denied all relief.  *Hazel-Atlas*, 32 U.S. at 250-51; *Root Ref.*, 169 F.2d at

21   534-35.  In addition, the entire cost of the proceedings, including attorneys fees, may be

22   assessed against the parties or persons responsible.  *Universal Oil Prods. Co.*, 328 U.S. 580.

23   **B.  Prejudice to a Party from the Fraud Is Not Required for Relief**

24   It is established that since the harm from the fraud is to *the court* and the judicial

25   system as a whole, the party or person moving for relief under Rule 60 is not required to show

26   prejudice to him/her/it.  *Hazel-Atlas*, 322 U.S. at 238; *Pumphrey*, 62 F.3d at 1132-33; *Dixon,*

27   *et al* v. *Commissioner of Internal Revenue*, 316 F.3d 1041, 1046 (9th Cir. 2003).

28   Fraud on the court occurs when the misconduct threatens or harms the integrity of the

1   judicial process, regardless of whether the opposing party is prejudiced. *Alexander* v.

2   *Robertson*, 882 F.2d at 424 ("nor does it necessarily require a showing that the party was

3   prejudiced by the misconduct"); Comment, Rule 60(b)*: Survey and Proposal for General*

4   *Reform*, 60 Cal.L.Rev. 531, 557 (1972) (fraud upon the court "may in appropriate

5   circumstances extend to a case where injury to the public is primarily and extraordinarily

6   involved"); *see also*, *Levander* v. *Prober*, 180 F.3d 1114, 1118 (9th Cir. 1999), citing *Hazel-*

7   *Atlas*.

8          Furthermore, the perpetrator of the fraud should be estopped from disputing its impact

9   on the court after the fact. *Hazel-Atlas*, 322 U.S. at 247; *Pumphrey*, 62 F.3d at 1133.

10   **C.  A Settling Party May Seek Relief from Fraud on the Court**

11          Plaintiffs urge that White should be precluded from seeking relief from the judgment

12   based on fraud on the court because he voluntarily settled the case.  The Court also raised the

13   same concern at the hearing on October 13, 2009.  No case supports Plaintiffs' argument, they

14   have cited none, and in fact the case law is otherwise.

15          In *Universal Oil Products Co.*, *supra*, 328 U.S. 575, Universal sued Root and other oil

16   companies for patent infringement and judgment was entered in Universal's favor.  *Id.*, at 587.

17   The Third Circuit affirmed and the Supreme Court denied certiorari.  *Root then settled with*

18   *Universal*.  Both before and after the *Root* decision, Universal filed similar infringement suits

19   against other oil companies and in those suits Universal invoked the *Root* decision in their

20   favor as *res judicata*.  Thus the other defendant oil companies had an interest in avoiding the

21   adverse effect in their suits of the *Root* decree.  *Ibid.*

22          The attorneys for the other oil companies, who had also represented Root in the

23   previous case, advised Universal's attorneys that they intended to inform the Third Circuit that

24   a judge had been bribed in order to secure a decision favorable to Universal in the *Root*

25   appeal.  These attorneys urged an investigation of the affirmance of the *Root* decree but were

26   concerned that they lacked legal capacity to seek relief since they were not representing any

27   party in that case.  The Third Circuit responded by permitting these attorneys to appear on

28   their own behalf as *amici curiae*, though not for any party.  *Ibid.*

REPLY MEMORANDUM TO OPPOSITION
TO MOTION TO VACATE JUDGMENT
No. C-03-4035 CRB                              -11-

1    A master was appointed, he conducted an extensive investigation and concluded "that

2    there was in connection with this case such fraud as tainted and invalidated the judgments"

3    in the Root appeal.  *Ibid.*  Based thereon the Third Circuit vacated the judgments.

4    Citing the well established inherent power of the courts to remedy fraud that impugns

5    the integrity of the judiciary, the Supreme Court upheld the *amici* appearance of the attorneys

6    to seek relief even though the case had been settled and no party in the case was seeking to

7    vacate the judgment.  *Id.*, at 580.  If a non-party to a lawsuit (e.g., an attorney for a party who

8    is not moving to vacate) has standing to move to vacate the judgment that resulted from fraud

9    on the court, certainly every party to the lawsuit has the same standing, including the settling

10   parties and especially those who settled under duress from the fraud.[2/]

11   Analogously, in *Bush Ranch, Inc.* v. *E.I. DuPont De Nemours & Co.*, 99 F.3d 363

12   (11th Cir. 1996), the Court upheld the district Court investigating an alleged fraud on the court

13   even after the parties had settled and plaintiff dismissed with prejudice two years earlier.  The

14   court "was free to vacate its earlier judgment, in whole or in part, and to resume proceedings

15   on the same jurisdictional basis as it possessed in the underlying case."  *Id.*, at 367-68.

16   Indeed, courts are empowered *sua sponte* to remedy an uncovered fraud on the court.

17   Were the characterization [of a party's conduct as "fraud on the
     court"] accurate, the defrauded district court would have been
18   empowered to take action *sua sponte* to expunge the judgment,
     and we would suppose that anyone, whether his hands were clean
19   or dirty, could suggest that it do so. Indeed, as much is indicated
     by *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, ... .
20

21   *Martina Theatre Corp.*, 278 F.2d at 801.

22   *Accord*, *In re M.T.G., Inc., et al*, 366 B.R. 730, 754 (Bank. Ct., E.D. Mich., 2007)

23   (orders favoring the secured creditor for Chapter 7 debtor were vacated under Rule 60 because

24   the trustee and his attorneys defrauded the court by concealing their fee agreement with the

25   secured creditor — striking similar to the instant case where this Court removed Borrego and

26

27   ───────────────

28   [2/]  If this Court determines that White cannot move for Rule 60 relief, then his current attorney will
     request *amicus curiae* status in order to move for relief under the authority of *Universal* v. *Root.*

1   sanctioned Replogle for concealing their illegal fee arrangement).  Another example is *USM*

2   *Corp.* v. *SPS Technologies, Inc.*, 694 F.2d 505 (11th Cir. 1982) — though the parties settled

3   a patent lawsuit, the court nevertheless entertained a fraud on the court claim three years later.

4   Though the fraud claim was rejected, settlement was not a factor or considered.  *Id.*, at 510.

5          Therefore, White has standing to move for Rule 60 relief despite having settled with

6   Plaintiffs, which under the law is not even a relevant consideration.  Moreover, White *was*

7   seriously prejudiced from the conspiracy by Replogle *et al*, as it forced him between a *rock*

8   *and a hard place* — he could either settle for $7 million *or* risk the inevitable far higher jury

9   verdict because he could not testify or provide a deposition denying the allegations, or even

10  appear before the jury and assist his counsel.  Despite his attempts to continue the trial, the

11  Court ordered it to for mid-October 2005.  White would have been absent, and the Plaintiffs

12  would have testified to sexual abuse without denials or explanations from him and the jury

13  would have his multi-million dollar net worth when setting punitive damages.

14         The fraudulent scheme was specifically designed to force White into an extremely

15  compromised  legal  dilemma.    Replogle  *et al*  then  very  effectively  exploited  these

16  disadvantages White faced by successfully forcing him to accept the lesser of the two

17  unavoidable evils in order to resolve the case.  In this sense White did not freely and

18  voluntarily settle, but instead was pressured to settle by virtue of the fraud.

19                                          **III.**

20                          **RELIEF UNDER RULE 60(b)(6)**

21         Plaintiffs first argue that White cannot avail of the catchall remedy under Rule 60(b)(6)

22  on the basis that his motion to vacate is untimely.  Opp., 4-5.  The answer is that White's

23  obligations to move to vacate arose when the new witness surfaced and confirmed the fraud,

24  and White diligently filed his motion within days thereafter.

25         As for the five declarations and testimony that White presented in support of his

26  August 3, 2006 motion to vacate while the case was on appeal, this Court declined to indicate

27  a willingness to entertain the motion but opined that it would deny the motion if it was heard

28  and expressed disbelief of the witnesses' credibility.  (The Court's opinions have no binding

effect on the current motion to vacate. See page 1 above.)

Therefore White diligently presented the motion at that time. Moreover, any credibility concerns for the five witnesses clearly have been redeemed by the new witness. Since the declarations and testimony of the five persons and the new witness completely corroborate each other, taken together they paint an unquestionable picture of pervasive fraud on the court. These six witnesses are unimpeached by any counter declarations and the reports by the Special Master and Trust Protector are inadmissible hearsay for this motion. Opp. 16-17.

The fraud on the court in this case effected the fairness of all the proceedings, the resultant settlement and final judgment. Thus "extraordinary circumstances" have occurred that require relief under Rule 60(b)(6) as an equitable remedy "'to accomplish justice.'" *Liljeberg* v. *Health Services Acquisition Corp.*, 486 U.S. 847, 863 (1988), quoting *Klapprott* v. *United States*, 335 U.S. 601, 614-15 (1949); *see also*, Ackermann v. *United States*, 340 U.S. 193, 199-200 (1950). Plaintiffs' argument otherwise should be rejected. Opp., 9-11.

## IV.

### THIS COURT HAS JURISDICTION TO INDICATE WHETHER IT WILL ENTERTAIN AND/OR GRANT THE MOTION TO VACATE

Though the case is on appeal to the Ninth Circuit, this Court has jurisdiction to announce a willingness to entertain and/or grant White's motion to vacate the judgment. *See*, *Crateo, Inc.* v. *Intermark, Inc.*, 536 F.2d 862, 869 (9th Cir. 1976). Once so expressed, White will move the Ninth Circuit for a limited remand solely for the purpose of authorizing this Court to conduct an evidentiary hearing and rule on the motion.

Effective December 1, 2009, Congress adopted two new rules for district courts and courts of appeals when motions to vacate are presented while cases are on appeal.

Rule 62.1 states:

> (a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
> (1) defer considering the motion;
> (2) deny the motion; or
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

1    (b)  Notice to the Court of Appeals. The movant must promptly
     notify the circuit clerk under Federal Rule of Appellate
2    Procedure 12.1 if the district court states that it would grant the
     motion or that the motion raises a substantial issue.

3    (c)  Remand. The district court may decide the motion if the court
4    of appeals remands for that purpose.

5    Rule 12.1 of the Federal Rules of Appellate Procedure (FRAP) states:

6    (a)  Notice to the Court of Appeals. If a timely motion is made in
     the district court for relief that it lacks authority to grant because
7    of an appeal that has been docketed and is pending, the movant
     must promptly notify the circuit clerk if the district court states
8    either that it would grant the motion or that the motion raises a
     substantial issue.

9    (b)  Remand After an Indicative Ruling. If the district court states
10   that it would grant the motion or that the motion raises a
     substantial issue, the court of appeals may remand for further
11   proceedings but retains jurisdiction unless it expressly dismisses
     the appeal. If the court of appeals remands but retains
12   jurisdiction, the parties must promptly notify the circuit clerk
     when the district court has decided the motion on remand.

13

14        White requests that this Court follow the procedure outlined in Rule 62.1(a)(3) and

15   indicate a willingness to entertain and/or grant the motion to vacate, so that he can then seek

16   a limited remand for this purpose from the Ninth Circuit under FRAP Rule 12.1.

17                                          **V.**

18                                   **CONCLUSION**

19        White has presented a strong *prima facie* showing by clear and convincing evidence

20   that Replogle, Borrego and Plaintiffs conspired to defraud the Court in this case.  They must

21   be held accountable to this Court, and following an evidentiary hearing the judgment should

22   be vacated.

23   DATED:  November 9, 2009                    Respectfully submitted:

24                                               *Geoffrey Rotwein*
                                                 GEOFFREY ROTWEIN
25                                               Attorney for Defendant
                                                 THOMAS F. WHITE

26

27

28