GEOFFREY ROTWEIN (CA SBN 58176)
LAW OFFICES OF GEOFFREY ROTWEIN
400 Montgomery Street, Second Floor
San Francisco, CA 94104
Facsimile: (415) 397-0862
Telephone: (415) 397-0860

Attorney for Defendant
THOMAS F. WHITE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ROE I, *et al*, | No. C-03-4035 CRB |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO VACATE ORDERS, SETTLEMENT AGREEMENT AND JUDGMENT** |
| vs. | |
| THOMAS F. WHITE, | |
| Defendant. | DATE: November 4, 2011<br>TIME: 10:00 a.m.<br>CTRM: 6, 17th Floor,<br>Hon. Charles R. Breyer |

### I.

### HISTORY OF CASE

On September 4, 2003, Plaintiff Jose Roe I, a minor, filed suit against Defendant and Nathan Lovaas for damages from alleged childhood sexual abuse and other related claims. 18 U.S.C. §§ 2241, *et seq*. The Fourth Amended Complaint filed October 1, 2004, added twenty-one Plaintiffs and Arthur Collingsworth as a defendant. Defendant answered on December 3, 2004, and Lovass defaulted on March 15, 2005.

On June 13, 2005, the settlement conference occurred before Hon. Joseph Spero, producing a *Confidential Settlement Agreement and Mutual General Release* (Agreement).

On August 29, 2005, over Defendant's objection, the Court approved the Agreement and the minors' compromises. Defendant filed motions to vacate the judgment on various grounds, all of which were denied. On December 5, 2005, this Court granted Plaintiffs' motion for summary

judgment and entered partial judgment thereon and Defendant appealed.

On August 3, 2006, while the matter was on appeal, Defendant filed a Motion to Vacate and on October 4, 2006 the Court declined to exercise jurisdiction to entertain over the motion and denied it.

On May 27, 2007, the Ninth Circuit affirmed the validity of the Agreement but remanded with instructions that this Court consider three issues.

On remand, on August 16, 2007, this Court appointed a Special Master to investigate the three issues. On February 1, 2008, the Special Master filed his final Report, and on February 14, 2008, this Court disqualified and removed Borrego as guardian due to conflicts of interest from an improper fee agreement with Plaintiff's counsel David Replogle from the inception of the case.

On February 18, 2008, Defendant filed a motion under Rule 60 to vacate the Agreement and the related District Court orders and judgment. On April 22, 2008, this Court denied the motions and Defendant appealed to the Ninth Circuit. While on appeal, on September 25, 2009, Defendant again moved to vacate the judgment based on newly discovery evidence. The matter was briefed and argued, and on December 11, 2009, the Court denied the motion on the basis that it did not have jurisdiction to entertain and also indicated a disinclination to grant it.

On September 16, 2010, the Ninth Circuit affirmed this Court's April 22, 2008 denial of Defendant's motion to vacate and issued the following directive and proviso:

> Subsequent to the district court order, news stories not of record suggest the possibility that a former attorney for the plaintiffs, a plaintiff to whom moneys are payable under the order, and others may have committed a fraud on the court. Although the district court did not err and we affirm, the district court may, on motion or sua sponte, reopen the case and take such other actions as may in its discretion be appropriate. *See* Fed. R. Civ. P. 60(d)(3); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *Dixon v. Comm'r*, 316 F.3d 1041, 1046–47 (9th Cir.2003).

Docket No. 1014, pages 3-4.

The "news stories" to which the Ninth Circuit was referring was that David Replogle had been arrested and charged along with co-defendants in the Riverside County Superior Court with murder, conspiracy to commit murder, burglary, and other related offenses, in case titled *People of the State of California* v. *David Replogle, et al*, No. INF064492.

## II.

## OUTCOME OF DAVID REPLOGLE'S MURDER CRIMINAL CASE

Following the Ninth Circuit's decision in Defendant's appeal, the criminal case proceeded to jury trial before Hon. David B. Browning in the Riverside County Superior Court. Following a several month trial, the jury returned guilty verdicts against Replogle and other defendants to all counts, namely first degree murder with special circumstances, conspiracy to commit murder, first and second degree burglary, grand theft, impersonating another in order to obtain credit, forging an instrument, receiving stolen property, fraud and embezzlement enhancements.

On May 6, 2011, Judge Browning sentenced Replogle to prison for life without the possibility of parole. On April 2, 2009, the California State Bar initiated disciplinary proceedings against Replogle in action titled *State Bar of California* v. *David Replogle*, San Francisco Superior Court, No. CGC-09-486892, and he has been suspended by the California State Bar as a result of the conviction and nonpayment of fees and MCLE compliance.

Trial of the remaining two defendants, Daniel Garcia and Kaushal Niroula, on the same charges is scheduled in September 2011.

## III.

## DEFENDANT SUED DANIEL GARCIA

On November 29, 2006, Defendant sued Daniel Garcia for attempted theft in civil case titled *Thomas Frank White* v. *Daniel Garcia*, San Francisco Superior Court, No. CGC-06-458269. Garcia was served, did not respond and his default was entered April 17, 2007.

On May 23, 2011, Garcia appeared by attorney David L. Wright, successfully moved to vacate the default and he answered on June 8, 2011. On August 24, 2011, the Court struck Garcia's Answer for failure to pay filing fees. The case remains pending in the Superior Court.

## IV.

## NEWLY DISCOVERED EVIDENCE

In their pre-charging investigation of the case, the Palm Springs Police Department secured search warrants and seized computers owned by Replogle and Garcia. Two computers were seized from Replogle, a laptop and a desktop. The Police Department has maintained possession

of Garcia's computer and Replogle's laptop, and Replogle's desktop was delivered to the courtroom of Judge Browning and is currently there. A special master was appointed pursuant to California Penal Code section 1538.5 to search Replogle's desktop since he was an attorney, but a hearing on disclosing the contents did not occur and the contents and computer were not admitted in evidence.

In the San Francisco civil case titled *White* v. *Garcia*, on January 5, 2011, Defendant issued a deposition subpoena for production of business records through Compex Legal Services to produce a copy of the hard drive for Garcia's computer that was in the custody of the Palm Springs Police Department. (Exhibit A to Rotwein Declaration.) Garcia's motion in the San Francisco Superior Court to quash the subpoena was denied on March 3, 2011.

In response to the deposition subpoena, the Palm Springs Police Department made an imaged copy of Garcia's hard drive and downloaded it onto a blank hard drive provided by Defendant. This copied hard drive was delivered to Compex pursuant to the subpoena, who then delivered it to Defendant's counsel here, who in turn delivered it to retained computer expert James Norris in San Mateo for his examination.

Mr. Norris downloaded the hard drive onto his computer, while maintaining and preserving the integrity of the hard drive delivered to him, and then he conducted searches for specific words and phrases provided by Defendant's counsel. This searching process revealed that Garcia's computer had documents and emails that were created prior to this Court approving the settlement agreement on August 29, 2005, that had been hacked from the computers of Defendant's attorneys, Stuart Hanlon, Nanci Clarence, Kate Dyer and possibly Michael Bolgatz.

Mr. Norris's searches also produced numerous privileged attorney/client and work produced documents that were maintained on the computers of Ms. Clarence, Ms. Dyer and Messrs. Hanlon and Bolgatz regarding their work in the instant and other civil cases, and the related criminal charges pending in the Indictment before Judge Breyer. Emails with Defendant's other counsel in Mexico and Thailand are also on Garcia's computer. This proves that someone using Garcia's computer was also hacking into White's attorneys' computers and downloading privileged and confidential attorney/client and work product materials in Defendant's civil and

criminal cases, in addition to the email transmissions between them.

These privileged documents and emails are listed in Exhibit B to the Rotwein Declaration, and given that Defendant is asserting privilege as to the contents of the documents, they are not being filed nor provided to Hon. Charles R. Breyer or opposing counsel. Defendant requests that instead the Court appoint a magistrate/judge of the Court to receive the documents under seal and confidentially with instructions regarding how to evaluate the relevance of their content and then report to Judge Breyer regarding the pertinence for the separately filed motion to vacate.

The searches also produced hundreds of communications between Garcia and Replogle regarding fraud schemes against Defendant and others, and numerous other personal subjects. Replogle had represented Garcia in a civil case filed against Defendant in the San Francisco Superior Court titled *Daniel Garcia* v. *Thomas White*, CGC-02-414-569, which resulted in a settlement of $1.5 Million to Garcia.

Attached to the Rotwein Declaration are the following exhibits:

Exhibit C – showing Garcia was assisting Replogle on this case
Exhibit D – showing discussions between Garcia and Shahbazian about hacking
Exhibit E – showing discussions between Replogle and Shahbazian
Exhibit F – list of emails where Garcia forwarded to Replogle emails between Defendant's counsel in 2006 and 2007

It is clear from iChats on Garcia's computer that he was working closely with Replogle on the prosecution of this case against Defendant up to the Court finalizing the settlement on August 29, 2005. The searches also revealed that another person named Alex Shahbazian, who is a suspect in the criminal case against Replogle and Garcia in Riverside County, was working with Garcia and Replogle on the instant civil case.

On August 8, 2011, Patricia De Larios Peyton, the investigator for Mr. Hanlon in the criminal case, visited Garcia in the Riverside County Jail to interview him for the criminal case. During the interview Garcia told Ms. De Larios Peyton the following:

Mr. Garcia met Shahbazian in 2002, they became very close friends and within a short time in approximately 2003, Shahbazian moved in with Garcia at the Avalon Towers in San Francisco, California. Shahbazian was a very experienced hacker into computers and the Internet, and he worked from home at the Avalon Towers on computers that he and Garcia shared. Garcia

1  personally observed Shahbazian's computer hacking activities.

2  Garcia personally observed Shahbazian hack into the emails and computer hard drives of
3  the attorneys representing Thomas White – Nanci Clarence and Kate Dyer at the law firm of
4  Clarence & Dyer, and Stuart Hanlon. Shahbazian was able to get into the hard drives of the
5  computers by the following different methods: he had many hacking programs to identify
6  passwords; he physically visited the attorneys' offices and surreptitiously plugged into their
7  ethernets and then downloaded information; and, he hacked into their computer systems from
8  outside their offices and over the Internet.

9  On one occasion Garcia saw Shahbazian park in a blue SUV vehicle outside the offices of
10 White's attorneys and he (Garcia) observed Shahbazian penetrate White's attorneys' computer
11 systems and remotely download all privileged data stored on their computers.

12 Garcia observed Shahbazian transfer the hacked data from White's attorneys' emails and
13 computer hard drives that Shahbazian had downloaded onto the computer that they shared, onto
14 an external hard drive. Garcia then witnessed Shahbazian give the same external hard drive to
15 David Replogle, counsel for the plaintiffs in the instant case.

16 Shahbazian gave the hacked data to Replogle starting in 2003 and continuing through 2004
17 and 2005, long before and up to the court approval of the settlement of this case in late August
18 2005. Shahbazian actively continued to share hacked data from the attorneys' emails and
19 computers with Replogle after this civil case settled. For example, in October 2007, Garcia
20 observed Shahbazian hack into the computer of Michael Bolgatz, another attorney for Thomas
21 White, and then download White's financial documents from Bolgatz's computer, which
22 Shahbazian then shared with Replogle.

23 Garcia observed Replogle pay Shahbazian $5,000 at different times for the information he
24 (Shahbazian) hacked and turned over to Replogle.

25 The documents found on Garcia's computer by Mr. Norris corroborate Garcia's assertions
26 that Defendant's attorneys' computers were hacked into and then provided to Replogle. Also
27 found on Garcia's computer were copies of emails between Defendant's attorneys in 2006 and
28 2007 that Garcia forwarded to Replogle. They are listed in Exhibit F to the Rotwein Declaration,

and like the privileged documents in Exhibit B, they are being withheld pending this Court assigning a magistrate/judge to review them and report to the Court on the pertinence of their content for the

If Replogle had Defendant's counsels' privileged documents and emails prior to August 29, 2005, he clearly defrauded the court. This would mean that during the litigation of the case from its inception, through extensive motion litigation and the settlement conferences that produced a final Agreement that was approved by this Court, Replogle intentionally sabotaged and cheated the core adversarial process by representing to the Court in pleadings, in open court and during settlement conferences that the privacy and attorney/client confidences and privileges of Defendant and his attorneys were being protected from invasion by Plaintiffs.

If Replogle had Defendant's privileged materials, then the Plaintiffs occupied an enormous illegal and unethical advantage throughout the case during litigation of the many motions and then the settlement. Replogle concealed his illegal and unethical access to defense confidences from the Court. Thus the crucial adversarial process between Plaintiffs and Defendant was destroyed by Replogle which in turn gave to Plaintiffs an unconscionable advantage over Defendant when litigating motions and then settling the case.

## V.

## PRINCIPLES GOVERNING MOTIONS TO VACATE JUDGMENTS

Courts are vested with inherent power to vacate a judgment or order obtained by fraud. *Universal Oil Products Co.* v. *Root Ref. Co.*, 328 U.S. 575, 580 (1946). "The spirit of the 'fraud on the court' rule is applicable whenever the integrity of the judicial process or function has been undercut — certainly in any instance, of misconduct of a party." *Greater Boston Television Corp.* v. *FCC*, 463 F.2d 268, 278 (C.A. D.C. 1971). This inherent power is recognized despite the strong judicial policy favoring the finality of judgments, on the equally important judicial principle that "a decision produced by fraud on the court is not in essence a decision at all and never becomes final." *Kenner* v. *Comm. of Internal Revenue Service*, 387 F.2d 689, 691 (7th Cir. 1968).

Trial courts are empowered to set aside a judgment or order under Rule 60(d)(3) when a

litigant shows that the procedure used to obtain it was so tainted by fraud as to affect the integrity of the judicial process. According to this Court, "fraud on the court requires a grave miscarriage of justice and a fraud that is *aimed at the court*." *Appling* v. *State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003), italics added.

To obtain relief, the litigant must show that the fraud involved an "unconscionable plan or scheme designed to improperly influence the court in its decision." *Pumphrey* v. *K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995); *Abatti* v. *Commissioner*, 859 F.2d 115, 118 (9th Cir. 1988). This Court has approved the Professor Moore's definition:

> "Fraud on the court" should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner in its impartial task of adjudging cases that are presented for adjudication.
>
> *In re Intermagnetics America, Inc.*, 926 F.2d 912, 916 (9th Cir. 1991); *see also*, *Alexander* v. *Robertson*, 882 F.2d 421, 424 (9th Cir. 1989) (quoting 7 J. Moore & J. Lucas, Moore's Federal Practice § 60.33, at 515 (2d ed. 1978)).

In *Virgin Islands Housing Authority* v. *David*, 823 F.2d 764 (3rd Cir. 1987), the Third Circuit Court of Appeals found that misrepresentations by plaintiff's counsel constituted fraud on the court that entitled defendant to relief.

> Under Rule 60, an explicit saving clause empowers each federal court "to set aside a judgment for fraud upon the court." [Citations] *Kupferman* v. *Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1074 n.1 (2d Cir. 1972) ("a finding of fraud on the court empowers the district court to set aside the judgment *sua sponte*"); *Root Ref. Co.* v. *Universal Oil Prods. Co.*, 335 U.S. 912, 169 F.2d 514, 522, 69 S.Ct. 481, 93 L. Ed. 444 (3d Cir. 1948) ("the power inheres in the appellate as well as in the trial court"), cert. denied sub nom. [Citations.] This provision codifies "the historic power of equity to set aside fraudulently begotten judgments." *Hazel-Atlas Glass Co.* v. *Hartford-Empire Co.*, 322 U.S. 238, 245, 88 L.Ed. 1250, 64 S.Ct. 997 (1944) ... . Leading commentators have suggested that the concept of fraud upon the court "should ... embrace only that species of fraud [that] does[,] or attempts to, subvert the integrity of the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases ... ." [Citations.] ... .
>
> *Id.*, at 766.

A key consideration is whether an officer of the court, such as an attorney or a guardian

1  appointed by the court, perpetrates the fraud. *See*, *Lockwood* v. *Bowles*, 46 F.R.D. 625, 632 (D.C.
2  D.C. 1969) ("the involvement of an attorney (an officer of the court) in the perpetration of the
3  fraud"), citing *Sutter* v. *Easterly*, 354 Mo. 282, 189 S.W.2d 284 (1945), where the court relied on
4  *Hazel-Atlas Glass Co.* v. *Hartford Empire Company*, 322 U.S. 238 (*Hazel-Atlas*), holding that
5  fraud on the court was shown where an attorney conspired to produce fabricated evidence; *H. K.*
6  *Porter Co., Inc.* v. *Goodyear Tire & Rubber Co.*, 536 F.2d 1115, 1119 (6th Cir. 1976) ("Since
7  attorneys are officers of the court, their conduct, if dishonest, would constitute fraud on the
8  court.").

"If our adversary system is to function according to design, we must assume that an attorney will observe his [or her] responsibilities to the legal system, as well as to [the] client." *Geders* v. *United States*, 425 U.S. 80, 93 (1976) (Marshall, J., joined by Brennan, J., concurring).

In *Hazel-Atlas*, a patent infringement case, an attorney for defendant Hartford wrote an article extolling the patent and arranged to have it printed in a trade journal under the name of an ostensibly disinterested expert. Both the Patent Office when granting the patent and the Third Circuit when upholding its validity relied on the misleading article. The Supreme Court reviewed the matter and held that the judgment must be vacated due to the attorney's fraud:

> Every element of the fraud here disclosed demands the exercise of the historic power of equity to set aside fraudulently begotten judgments. This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, even if we consider nothing but Hartford's sworn admissions, we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals. ...
>
> Furthermore, tampering with the administration of justice in the manner indisputably shown here involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society.

*Id.*, at 246.

The Court also held that it was not required to determine the extent to which the article had in fact impressed the judges who had voted to uphold the patent nor was it relevant whether the statements in the article were true. The key factor of importance was that because Hartford

through its attorney had deliberately arranged its publication under a false name, they were estopped thereafter from disputing its effectiveness in the litigation. *Id.*, at 246-47. To remedy Hartford's fraud, the Supreme Court directed the Third Circuit to vacate the judgment and instruct the district court to deny all relief to them. *Id.*, at 250-51.

Notably, the Supreme Court also opined that had the District Court or the Circuit Court learned of the corruption and fraud when it was occurring, the plaintiff's cause of action would have been dismissed. *Id.*, at 250. "The total effect of all this fraud, practiced both on the Patent Office and the courts, calls for nothing less than a complete denial of relief to Hartford for the claimed infringement of the patent thereby procured and enforced." *Id.*

The judicial principles governing a litigant's claim that another litigant or his/her attorney has defrauded the court derive from *Hazel-Atlas*. So important are these principles that a court may *sua sponte* address the matter and impose a sanction if fraud is found. *Universal Oil Products Co.* v. *Root Ref. Co.*, 328 U.S. 575; *Martina Theatre Corp.* v. *Schine Chain Theatres, Inc.*, 278 F.2d 798 (2nd Cir. 1960).

Moreover, even when there are no adverse parties to the fraud on the court, hardly the situation here, the court is not deprived of jurisdiction to address and fashion a remedy, since the court retains ancillary jurisdiction to determine whether *it* has been the victim of a fraud. *Root Ref. Co.* v. *Universal Oil Prods. Co.*, 169 F.2d 514, 521-22 (3rd Cir. 1948). There are no time limits for setting aside a judgment on this ground, which is reflected in Rule 60(d)(3), nor can laches bar consideration of the matter, nor is it relevant that the party claiming fraud does not have clean hands. *Hazel-Atlas*, 322 U.S. at 246; *Toscano* v. *Comm. of Internal Revenue Service*, 441 F.2d 930, 936-37 (9th Cir. 1971); *Martina Theatres Corp.*, 278 F.2d at 801.

In addition, Rule 60(b)(6) allows trial courts to vacate orders and judgments on "any other reason that justifies relief," i.e., independent from the specific grounds in Rule 60(b)(1)-(5). This catchall provision of Rule 60 does not particularize the factors that justify relief, but the Supreme Court has held that courts are vested with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott* v. *United States*, 335 U.S. 601, 614-15 (1949). "Rule 60(b)(6) gives district courts the authority to vacate

judgments whenever that action is appropriate to accomplish justice and leaves such determinations to its discretion." *Trade Arbed* v. *African Express MV*, 941 F. Supp. 68, 70 (Ed La. 1996).

## VI.

## CONCLUSION

Given the presence of Defendant's privileged and confidential attorney communications and work product on Garcia's computer, his and Shahbazian's close involvement and joinder with Replogle when working on the prosecution of this case, and Garcia's statements, a substantial compelling showing is presented that these materials were delivered to Replogle during the case and prior to settlement. This showing in turn shows ample *prima facie* evidence of fraud by Replogle to justify discovery of the contents of his computers and his files relating to cases he handled against Defendant that will either confirm or dispel fraud on the court.

If Replogle received an external hard drive or flash drive from Shahbazian, as Garcia says, and then plugged it into his (Replogle's) computer, he could have downloaded the contents or just printed the documents without downloading. If he did the former, then the privileged documents still would be on his computers, and even if he just printed out the documents, according to computer expert James Norris, there might still be imaging on his computer from the printing process.

This discovery can be accomplished without violating privileged communications by Replogle with his other clients or his work product in their cases. If a search of Replogle's computers and/or case files reveal the presence of Defendant's confidential and privileged emails and other materials, then fraud on the court is proven and Defendant's accompanying motion to vacate under Rule 60(d)(3) and/or 60(b)(6) should be granted.

DATED: September 1, 2011

Respectfully submitted:

*Geoffrey Rotwein*
GEOFFREY ROTWEIN
Attorney for Defendant
THOMAS F. WHITE