1/09/12                                                                 Page:    3
--------------------------------------------------------------------------------
Case Number : INF064492       People vs. KAUSHAL NIROULA
================================================================================
        Pvt M Rodriguez waives appearance of his client
        Daniel Garcia.
        At 15:57, the following proceedings were held:
        Court Reporter: D. Erwood
        Pvt M Rodriguez Present in Court.
        Court and Counsel Confer regarding: Attorney Client privilege
        documents.
        Court orders documents sealed that pretain to
        defendant Daniel Garcia.
        At 16:20, the following proceedings were held:
        Court Reporter: D. Erwood
        DPD J Forth Present in Court.
        Defendant Miguel Bustamante Present in Court.
        Interpreter R Reed is Present and Sworn to interpret
        Spanish/English for Miguel Bustamante. Sworn oath on file.
        Court excludes DDA L DiMaria and All Parties not
        associated with defendant Miguel Bustamante
        from the Court Room.
        Court Reporter was Not present for the following proceedings:
        DPD J Forth and Defendant Miguel Bustamante
        review documents out of the presence of Co-Counsel
        and Co-Defendants.
        Interpreter M Reed is Present and Sworn to interpret
        Spanish/English for defendant M Bustamante. Sworn oath on file.
        At 16:38, the following proceedings were held:
        Court Reporter: D. Erwood
        DPD J Forth Present in Court.
        Defendant Miguel Bustamante Present in Court.
        Interpreter R Reed is Present and Sworn to interpret
        Spanish/English for defendant Miguel Bustamante. Sworn oath on
        file.
        No claim or privilege from documents as to
        defendant Miguel Bustamante.
        At 16:45, the following proceedings were held:
        DDA L DiMaria Present in Court.
        Detective Simon Min Present in Court.
        Court orders all Search Warrant Documents not
        Sealed returned to Detective Simon Min PSPD.
        Hearing on 07/02/2009 at  8:30 for FSC in Dept. 3N is Confirmed.
        Bail To Remain as fixed.
        Defendant ordered to return on any and all future hearing dates.
        Remains Remanded to custody of Riverside Sheriff.
        Minute order printed to Indio Jail.

# EXHIBIT D2

COURT REPORTERS PARTIAL TRANSCRIPT AND CERTIFICATION OF THE PUBLIC HEARING PRIOR TO THE EXCLUSION OF THE GOVERNMENT ON JUNE 18, 2009 RELATIVE TO MATERIAL OBTAINED FROM THE DELL DESKTOP COMPUTER OF DAVID REPLOGLE AND OTHER ELECTRONIC ITEMS BEFORE THE HONORABLE CHARLES F HAINES.

NOTE : THIS TRANSCRIPT WAS OBTAINED FROM THE DIGITAL REPLOGLE BUSTAMANTE TRIAL TRANSCRIPT AND IN THE ABSENCE OF A TRANSCRIPT COVER PAGE ON ITS DIGITAL FORM THE ENTIRE INDEX OF THE REPLOGLE BUSTAMANTE DIGITAL TRANSCRIPTON APPEAL AND CERTIFICATION IS ATTACHED HERE AS EXHIBIT.

INTERESTED THIRD PARTY KAUSHAL NIROULA'S NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION /EXIBITS

25

# SUPERIOR COURT – STATE OF CALIFORNIA
## COUNTY OF RIVERSIDE



## NOTICE OF TRANSCRIPTS FILED

JAN 05 2012

**CASE NAME:** People v. Niroula, Riplogle, Garcia, Bustamante, McCarthy

K. HINOS

**CASE NUMBER:** INF064492 / DCA E053711

**COURT-ORDERED TRANSCRIPT:** 1) One copy of computer-readable (PDF) Transcript on Appeal delivered to Kaushal Niroula; 2) One copy of computer-readable (PDF) Transcript on Appeal delivered to Daniel Carlos Garcia.

**DELIVERY MEDIUM:** HP 4G flash drive, containing 103 files as itemized below, sealed hearings excluded.

**SUPERVISING REPORTER:** Terri L. Dickneider

| REPORTER NAME | DATE | FILE NAME | PAGES |
|---|---|---|---|
| D. Erwood | 03/09/09 | 20090309 | 13-18 |
| | 03/12/09 | 20090312 | 19-22 |
| | 04/10/09 | 20090410 | 23-34 |
| | 06/09/09 | 20090609 | 125-137 |
| | 06/18/09 | 20090618 | 138-148 (149 – 200-1 sealed) |
| T. Dible | 07/02/09 | 20090702A | 201-213 |
| | | 20090702B | 214-221 |
| A. Delgado | 07/22/09 | 20090722 | 222 – 230-231 |
| T. Dible | 07/31/09 | 20090731 | 232-248 |
| D. Erwood | 08/10/09 | 20090810 | 249-262 |
| R. Brown | 08/11/09 | 20090811 | 263-275 |
| D. Erwood | 11/13/09 | 20091113 | 276-301 |
| K. Cagney | 01/08/10 | 20100108 | 302-305 |
| | 02/08/10 | 20100208 | 306-316 |
| | 02/26/10 | 20100226 | 317-428 |
| | 03/05/10 | 20100305 | 429-444 |
| C. Stires | 03/12/10 | 20100312 | 445-511 (512-542 sealed) |
| K. Cagney | 04/30/10 | 20100430 | 543-587 |
| | 05/10/10 | 20100510 | 588-617 |
| | 05/14/10 | 20100514 | 618-644 |
| | 05/28/10 | 20100528 | 645-663 |
| | 08/04/10 | 20100804 | 664-698 |
| | 08/05/10 | 20100805 | 699-726 |
| | 08/06/10 | 20100806 | 727-834 (798-815 sealed) |
| | 08/11/10 | 20100811 | 835-839 (840-855 sealed) |
| | 08/13/10 | 20100813 | 856-937 (938-953 sealed) |
| | 08/17/10 | 20100817 | 954-955 (956-973 sealed) (974-1000 block numbered) |
| | 08/27/10 | 20100827 | 1001-1073 |
| | 08/30/10 | 20100830 | 1074-1086 |
| | 08/31/10 | 20100831 | 1087-1175 |

| REPORTER NAME | DATE | FILE NAME | PAGES |
|---|---|---|---|
| | 09/01/10 | 20100901 | 1176-1231 |
| | 09/03/10 | 20100903 | 1232-1243 |
| | 09/07/10 | 20100907 | 1244-1269 (1270-1283 sealed) |
| | 09/08/10 | 20100908 | 1284-1295 (1296-1307 sealed) |
| | 09/09/10 | 20100909 | 1308-1330 (1331-1343 sealed) |
| | 09/13/10 | 20100913 | 1344-1403 |
| | 09/14/10 | 20100914 | 1404-1415 |
| | 09/15/10 | 20100915 | 1416-1473 |
| | 09/20/10 | 20100920 | 1474-1606 |
| | 09/21/10 | 20100921 | 1607-1680 |
| | 09/22/10 | 20100922 & 201009-22-23-29 Blocked Pages | 1681-1808 & (Pages 1800-1808 renumbered as 1799-1 – 1799-9) |
| | 09/23/10 | 201009-22-23-29 Blocked Pages | 1799-10 – 1799-91 |
| | 09/29/10 | 201009-22-23-29 Blocked Pages | 1799-92 – 1799-93 |
| | 10/05/10 | 20101005 | 1799-94 – 1799-122 |
| | 10/06/10 | 20101006 | 1800-1859 |
| | 10/07/10 | 20101007 | 1860-1868 |
| T. Runyon | 10/12/10 | 20101012 | 1869-2038 |
| | 10/13/10 | 20101013 | 2039-2204 |
| K. Cagney | 10/14/10 | 20101014 | 2205-2375 |
| | 10/18/10 | 20101018 | 2376-2532 |
| | 10/19/10 | 20101019 | 2533-2613 |
| T. Runyon | 10/20/10 | 20101020 | 2614-2774 |
| K. Cagney | 10/21/10 | 20101021 | 2775-2968 |
| | 10/25/10 | 20101025 | 2969-3110 |
| T. Runyon | 10/26/10 | 20101026 | 3111-3263 |
| K. Cagney | 10/27/10 | 20101027 | 3264-3425 |
| T. Runyon | 10/28/10 | 20101028 | 3426-3588 |
| K. Cagney | 11/01/10 | 20101101 | 3589-3753 |
| | 11/02/10 | 20101102 | 3754-3898 |
| K. Smith | 11/03/10 | 20101103 | 3899-4034 |
| | 11/04/10 | 20101104 | 4035-4133 |
| T. Runyon | 11/05/10 | 20101105 | 4134-4301 (4196-4212 and 4220-4249 sealed) |
| K. Cagney | 11/08/10 | 20101108 | 4302-4426 |
| T. Runyon | 11/09/10 | 20101109 | 4427-4565 |
| K. Cagney | 11/10/10 | 20101110 | 4566-4696 |
| | 11/15/10 | 20101115 | 4697-4888 |
| | 11/16/10 | 20101116 | 4889-5033 |
| T. Runyon | 11/17/10 | 20101117 | 5034-5196 |
| | 11/18/10 | 20101118 | 5197-5365 |
| K. Cagney | 11/22/10 | 20101122 | 5366-5417 |
| | 11/23/10 | 20101123 | 5418-5470 |
| | 11/24/10 | 20101124 | 5471-5492 |
| C. Stires | 11/30/10 | 20101130 | 5493-5640 |
| K. Cagney | 12/01/10 | 20101201 | 5641-5793 |
| T. Runyon | 12/02/10 | 20101202 | 5794-5911 |

| REPORTER NAME | DATE | FILE NAME | PAGES |
|---|---|---|---|
| K. Cagney | 12/06/10 | 20101206 | 5912-6050 |
| | 12/07/10 | 20101207 | 6051-6161 |
| L. Kiel | 12/09/10 | 20101209 | 6162-6234 |
| | 12/13/10 | 20101213 | 6235-6242 |
| | 12/14/10 | 20101214 | 6243-6382 |
| | 12/15/10 | 20101215 | 6383-6515 |
| | 12/16/10 | 20101216 | 6516-6587 |
| | 12/17/10 | 20101217 | 6588-6651 |
| | 12/20/10 | 20101220 | 6652 – 6723-6754 |
| T. Runyon | 12/22/10 | 20101222 | 6755-6770 |
| | 12/23/10 | N/A | (6771-6807 sealed) |
| K. Cagney | 01/03/11 | 20110103 | 6808-6828 |
| | 01/25/11 | 20110125 | 6829 – 6835-6859 |
| J. Giminez | 02/01/11 | 20110201 | 6860-6877 |
| P. Brock | 05/06/11 | 20110506 | 6878-6944 |

| CERTIFICATE PAGES | FILE NAME |
|---|---|
| A. Delgado | 2009certcsr11185 |
| R. Brown | 2009CertCSR13325 |
| C. Stires | 2010certcsr4472 |
| L. Kiel | 2010CertCSR9692 |
| K. Smith | 2010CertCSR11501 |
| T. Runyon | 2011CertCSR3037 |
| D. Erwood | 2011CertCSR5065 |
| J. Giminez | 2011certcsr8396 |
| P. Brock | 2011CertCSR10633 |
| K. Cagney | 2011CertCSR10850 |
| T. Dible | 2011CertCSR12928 |
| INDICES | FILE NAME |
| Appearance Index | 2011ReplogleAppearanceIndex |
| Alpha Index | 2011ReplogleAlphaIndex |
| Chrono Index | 2011ReplogleChronoIndex |
| Exhibit Index | 2011ReplogleExhibitIndex |

1          INDIO, CALIFORNIA, JUNE 18, 2009

2          BEFORE THE HONORABLE CHARLES F. HAINES

3          (The following proceedings were held in chambers:)

4              THE COURT:  Then let's just go back on the record

5      with the matters of People versus Replogle, call it Replogle,

6      et. al.  And since we had a new lineup of folks, can I ask

7      everyone to state their appearances for the record.

8              MS. DIMARIA:  Yes, sir.  Lisa Dimaria for the People.

9              MS. SHAW:  Denise Shaw on behalf of Mark Sullivan,

10     Sullivan & Shaw, for Mr. Niroula.

11             MR. RODRIGUEZ:  Mario Rodriguez on behalf of Daniel

12     Garcia.

13             MR. VERLATO:  Richard Verlato making a special

14     appearance for Joe Forth on behalf of Mr. -- I don't want to

15     get the name wrong.

16             THE CLERK:  Bustamante.

17             MR. VERLATO:  Bustamante.

18             MR. DOLAN:  And John Patrick Dolan on behalf of David

19     Replogle.

20             THE COURT:  Okay.  Good morning, everyone.

21             Mr. Rodriguez, the bailiff informs me that your

22     client for some reason did not make the list, and they have

23     him over in Riverside, so it will take at least an hour, if

24     not more up to this point, going on an hour, to transport.

25     What I'm going to suggest is, if you don't object, if everyone

26     will look, you can see I have a small box that the special

27     master gave me which contains, according to this, 40 e-mail

28     printouts from the desktop printer and eleven copies of

1 extracts from a cell phone. If you want to waive your

2 client's appearance and we could open this.

3 And Mr. Verlato, you were not present the last time

4 we did this. Let me just give you briefly a thumbnail sketch

5 of the way I proceeded here, with the concurrence of the rest

6 of the group.

7 Typically with a special master, if we were going to

8 have a claim of an attorney-client privilege, I think all of

9 the cases presume that the judge just comes into chambers with

10 the attorney and the court reporter and goes through the

11 material to see whether there's a claim. For reasons that

12 should be obvious, that won't work for us. So the procedure

13 that we've used is, when we open the materials, I provided

14 them to the attorneys in open court with your clients, ask the

15 bailiffs to stand out of earshot, and eyes where they can't

16 read the materials, either, and we'll go off the record, and I

17 let the lawyers go through these materials with their clients

18 to see, are there going to be any items, of course, they're

19 going to claim their privilege. And then if they are, I take

20 the attorney back, and then we go through, just the attorney,

21 the judge and the reporter.

22 MR. VERLATO: Okay.

23 THE COURT: So isn't that what we did last time?

24 MR. RODRIGUEZ: Yes.

25 MR. DOLAN: Yes.

26 THE COURT: So I propose to do the same thing again

27 today. That just leaves Ms. Dimaria out of the picture until

28 we decide what's going to get released today.

DALLAS ANN H. ERWOOD, CSR

139

1       So if you want to waive your client's appearance so

2   that we could get started on this, we could at least let

3   everybody see what's here.  Theoretically -- I don't know, you

4   might theoretically look at this and say, "I can tell from

5   looking at it that there's not going to be a claim from my

6   client."  But if it looks like you need your client, you let

7   us know and I'll tell the bailiffs to bring them down.  Will

8   that work for you?

9       MR. RODRIGUEZ:  That will work.

10      MR. DOLAN:  And may I just amend this.  I think our

11  procedure was Mr. Replogle and I looked through everything

12  first because they're potentially his privilege.

13      THE COURT:  They're his records.

14      MR. DOLAN:  Yes.

15      THE COURT:  Good point.

16      MR. VERLATO:  The attorney does have to assert a

17  privilege on behalf of the client anyway, so I think that's

18  the proper --

19      THE COURT:  But the privilege belongs to the client,

20  so there's lots of different angles here.  In any event, so if

21  that will work for everybody, we can at least begin to do

22  something out there with the clients.  And is there anything

23  while we're here that anybody wants to put on the record?

24      MR. DOLAN:  I would just like to know if we have any

25  indication of the instructions that were given to Mr. Dean,

26  because I think from what I'm hearing you say that there's

27  e-mails and some correspondence.  There may very well be other

28  things on Mr. Replogle's computer that we might want to be

1  able to access.

2       So I suppose I'm asking two things.  What were the

3  instructions to Mr. Dean?  And once we get there, what has

4  been presented to us, what's the status of what remains as far

5  as accessing what has been seized?

6       THE COURT:  Why don't we go -- let's do it the easy

7  way.  Who owns this computer?

8       MR. DOLAN:  Mr. Replogle.

9       THE COURT:  Who would seem to have the right to have

10  access to it, especially for use in his defense.

11       MR. DOLAN:  Right.

12       THE COURT:  So it seems to me, I -- that that's how

13  it would strike me; that it's his property.  Once we've

14  already looked, once the government has already looked at it

15  and decided there's only some stuff here that's of evidentiary

16  value, how could they deny Mr. Replogle access to that

17  property for his own defense?

18       MR. DOLAN:  And subsequently, I will prepare an order

19  for return of property so that once we've gone through this,

20  we will --

21       THE COURT:  But again, Mr. Dolan -- let me remind

22  everybody:  My role here is limited.  Okay.  I sign the

23  warrant.  The Code says the special master gives the material

24  seized to the judge who signed the warrant.  You've asked me

25  to come down.  I'm happy to come down, but -- I like coming

26  down here.  They asked me to come down to go through this,

27  just to go through this procedure.  That's my involvement

28  here.  I'm sure this is a fascinating case, that you're

 1 | wonderful lawyers to work with, and it would be a lot of fun
 2 | to try this, if I went that far with you, but I'm not going
 3 | there.   Okay.   I'm going to take care of this search warrant
 4 | and then I think -- I think that that's going to be the end of
 5 | my involvement.   Okay.   But that's the way I would analyze the
 6 | issue you raise, but I'm not the judge on that.

 7 | MR. DOLAN:   Right.   And I'll deal with the Judge
 8 | Douglass on that.

 9 | THE COURT:   Okay.   Anything else we want to put on
10 | the record?   Okay.

11 | MS. DIMARIA:   Sir, the only thing I would inquire is,
12 | the way this was done last time, since it was pursuant to a
13 | search warrant, we had the officer come to court, seize the
14 | materials that were released.   He booked them into evidence
15 | and then could do the return on the search warrant.   This
16 | particular officer is about 35, 40 minutes away.

17 | THE COURT:   We'll do it after lunch.

18 | MS. DIMARIA:   So -- okay.   Well, last time we went
19 | till after 5:00, so I was just going to ask if Madam Clerk
20 | might have an idea that we were wrapping up, if I could get a
21 | phone call, and then I'll call him and have him come on his
22 | way.

23 | THE COURT:   Yeah, that's Detective Min, right?

24 | MS. DIMARIA:   Yes, sir.

25 | THE COURT:   Well, whatever's convenient.   I'll try to
26 | accommodate everybody.

27 | MS. DIMARIA:   Okay.

28 | THE COURT:   So why don't we -- why don't I give you a

DALLAS ANN H. ERWOOD, CSR

```
 1   couple minutes again to explain to your clients what's going

 2   on.  Just let me know when we're ready we'll get rolling.

 3              MR. DOLAN:  Sure.

 4              MS. DIMARIA:  And I think I'll just leave and leave

 5   Madam Clerk my phone number.

 6              THE COURT:  Why don't you wait and see if there's

 7   anything lawyers want to put on the record before you leave.

 8              MS. DIMARIA:  Yes, sir.

 9              THE COURT:  Okay.

10              MS. DIMARIA:  Thank you.

11              THE COURT:  Thank you.

12              MR. RODRIGUEZ:  And I'll just give my number to the

13   clerk, Your Honor.

14              THE COURT:  Well, I was going to -- yeah, why don't

15   we do it that way.

16         (The following proceedings were held in open court:)

17              THE COURT:  Everybody ready?

18              MR. DOLAN:  Yes, Your Honor.

19              THE COURT:  All right.  Why don't we go back on the

20   record briefly since we have almost all the clients here.

21   Let's call the case again.  This is the People versus

22   Mr. Replogle, Garcia, Niroula and Bustamante.  Counsel, may I

23   have your appearances for the record, please.

24              MS. DIMARIA:  Lisa Dimaria for the People.

25              MR. DOLAN:  John Patrick Dolan on behalf of David

26   Replogle.  He is present in court in custody.

27              MS. SHAW:  Denise Shaw, Sullivan & Shaw, on behalf of

28   Mr. Sullivan for Mr. Niroula who's present in custody.
```

1          MR. VERLATO: And Richard Verlato making a special

2  appearance for Joe Forth on behalf of --

3          MS. DIMARIA: Bustamante.

4          MR. VERLATO: Bustamante.

5          THE COURT: Is Mr. Bustamante using an interpreter?

6          THE INTERPRETER: Yes, Your Honor.

7          THE COURT: May I have the interpreter's appearance

8  for the record.

9          THE INTERPRETER: Raquel Reed.

10        THE COURT: We did not have an interpreter the last

11  time. Do you have any information on that, Mr. Verlato?

12        MR. VERLATO: I believe that the defendant speaks

13  English but feels more fluent in the Spanish language and was

14  requesting an interpreter so that he could fully understand.

15        THE COURT: All right. I do want the record to

16  reflect that nobody made such a request the last time we were

17  here, and, of course, I haven't been involved in any of the

18  other proceedings, so I don't know what the situation was

19  then.

20        MS. DIMARIA: And, Your Honor, to let you know, I put

21  on the record last time we were here is when he started using

22  an interpreter; I also had mentioned on the record that he

23  gave several interviews to law enforcement in English and that

24  he had been coming to court since January and had never used

25  an interpreter, either, so this --

26        THE COURT: Okay.

27        MS. DIMARIA: Okay.

28        THE COURT: So you have your record.

 1        Okay.  That what I'd like to do especially -- first

 2   of all, Mr. Rodriguez, did he leave?

 3             MR. DOLAN:  He did.

 4             MS. DIMARIA:  Yes.

 5             THE COURT:  I wish he hadn't left.  We did do this in

 6   chambers on the record.  He's waiving his client's appearance

 7   because he did -- he wasn't brought back from Riverside, but I

 8   kinda wanted him to be here so he could see I have the

 9   materials, the electronic materials that were seized pursuant

10   to the search warrant I signed and seized by the special

11   master who --

12             MS. DIMARIA:  May I check the hall, sir?  Sometimes

13   our hall's still very busy.

14             THE COURT:  Sure you can, if you want to.

15             THE CLERK:  Want me to call him, Your Honor?  I have

16   his cell number.  He's probably still in the building.

17             THE COURT:  Let's see if he's here.  No.

18             THE CLERK:  I'm calling him.

19             THE COURT:  Well, I think we can proceed without him,

20   because he agreed to this.  It was just that I have the sealed

21   documents.  What I intend to do is open them here.  We'll do

22   the same procedure we did last time.

23             THE CLERK:  He is on his way, Your Honor.

24             THE COURT:  Okay.  We'll wait a second.

25             MS. DIMARIA:  Sir, since we are on a lull for a

26   moment, what I forgot to bring up is, I have been attempting

27   to get --

28             THE COURT:  You know what?  Since Mr. Rodriguez is on

DALLAS ANN H. ERWOOD, CSR

1  the way, why don't we wait and, that way, have all of us hear

2  it.

3         MS. DIMARIA:  Okay.  It pertains only to

4  Mr. Replogle, though, and --

5         THE COURT:  I know.  But the cannon of ethics say

6  that we shouldn't discuss the matter until we're all together.

7         MS. DIMARIA:  Yes, sir.

8         THE COURT:  Well, you never know.

9         MS. DIMARIA:  Yes, sir.

10        THE COURT:  Right.  And you have a clean record.

11        MS. DIMARIA:  Yes, sir.

12        THE COURT:  Okay.  Now we -- Mr. Rodriguez has joined

13 us.

14        Mr. Rodriguez, thank you for coming back.  What I

15 wanted to do was while we were all present, for purposes of

16 these proceedings, do you waive your client's appearance?

17        MR. RODRIGUEZ:  I do.

18        THE COURT:  Yeah.  I'm going to open -- I have a box

19 in my hand of the materials from Martin Dean who is the

20 special master.  Let me open these and see what we've got

21 here.

22        They certainly sealed this one.  Okay.

23        Okay.  There is number of e-mail and what looks like

24 some phone records.  Let me turn this over to Mr. Dolan.  And

25 why don't you review them, and if you're going to make a claim

26 of attorney-client privilege, let us know.

27        MS. DIMARIA:  Your Honor, if I may, before I leave

28 the room, I apologize; I should have brought this up.  There

```
 1 | was a fingerprint of Mr. Replogle's that was taken up in San
 2 | Francisco which would require me to bring San Francisco
 3 | witnesses down.  There has been an agreement that we may take
 4 | his fingerprint here from Mr. Dolan, and last I had heard,
 5 | Mr. Replogle didn't have an objection to that.  However,
 6 | Mr. Dolan had hurt his back, wasn't able to make that court
 7 | appearance, and the judge didn't feel comfortable with getting
 8 | the fingerprint until Mr. Dolan was present.  I have my
 9 | forensic tech here.  If we could just get that fingerprint
10 | real quickly; that way I don't need to transport San Francisco
11 | witnesses for prelim.
12 |          MR. DOLAN:  Well, Your Honor, as I understand the
13 | state of the law, I have no standing to object to the request
14 | for a fingerprint.  Were there such a foundational basis, I
15 | would certainly do so, but under the circumstances, I don't
16 | think that I can object, and Mr. Replogle's here, and
17 | detective's here so --
18 |          THE COURT:  So you want to do that before we take a
19 | break?
20 |          MR. DOLAN:  I think that makes -- or you could do it
21 | now.
22 |          THE COURT:  That's what I mean, while we're all here.
23 |          MR. DOLAN:  Go ahead.
24 |          MS. DIMARIA:  Thank you, sir.
25 |          THE COURT:  While we're doing that, if the other
26 | attorneys would like to leave us your phone number, and then
27 | we'll call you.
28 |          THE DETECTIVE:  Right here fine?
```

DALLAS ANN H. ERWOOD, CSR

```
 1              THE DEPUTY SHERIFF:  Yeah.

 2              THE COURT:  Mr. Rodriguez?

 3              MR. RODRIGUEZ:  Yes, Your Honor.

 4              THE COURT:  After you saw what a cursory look I took

 5    at those documents, I think we're going to need your client.

 6              MR. RODRIGUEZ:  Okay.

 7              THE COURT:  Would you -- would you -- can you arrange

 8    for Mr. Garcia to be brought over?

 9              THE DEPUTY SHERIFF:  I'll call down and see when we

10    can get him, Your Honor.

11              THE COURT:  Thank you.  Okay.

12              MS. DIMARIA:  Your Honor, am I excused, please?

13              THE COURT:  Yes.

14              MS. DIMARIA:  Thank you, sir.

15              THE COURT:  So if you, the other attorneys, you just

16    leave us your number, we'll call you.  In the meantime, we're

17    going to have to do this as an in-camera proceeding, so I

18    can't have members of the public here.

19              So for the interpreter, do we have a way to get ahold

20    of you?

21              THE INTERPRETER:  Yes, the clerk knows how to get

22    ahold of me.

23              THE COURT:  Thank you.

24    (Pages 149 through 200-1 sealed separately.  No omissions.)

25

26

27

28
```

1    REPORTER'S CERTIFICATE

2

3

4    PEOPLE OF THE STATE OF CALIFORNIA, )
                                        )
5                    Plaintiff,         )
                                        )
6              vs.                      )    Case No. INF064492
                                        )    (INF064301 Consolidated)
7    KAUSHAL NIROULA                    )
     DAVID REPLOGLE                     )
8    DANIEL CARLOS GARCIA               )
     MIGUEL ADOLFO BUSTAMANTE           )
9    CRAIG ANTHONY MCCARTHY             )
                                        )
10                   Defendants.        )
                                        )
11   _____)

12        I, DALLAS ANN H. ERWOOD, Certified Shorthand Reporter No.

13   5065, hereby certify:

14        On 03-09-09, 03-12-09, 04-10-09, 06-09-09, 06-18-09,

15   08-10-09, 11-13-09, in the county of Riverside, state of

16   California, I took in stenotype a true and correct report of

17   the testimony given and proceedings had in the above-entitled

18   case, pages 13 through 34; 125 through 148; 149 through 200-1

19   sealed; 249 through 262; 276 through 301; and that the

20   foregoing is a true and accurate transcription of my stenotype

21   notes, taken as aforesaid, and is the whole thereof.

22

23   Dated:   Indio, California, August 15, 2011.

24

25

26

27   _____
                        DALLAS ANN H. ERWOOD, CSR No. 5065
28

DALLAS ANN H. ERWOOD, CSR

1
2
3
4
5
6
7

# EXHIBIT D3

8

COVER PAGE AND REPORTERS CERTIFICATION OF THE SEALED EN CAMERA

9

TRANSCRIPTS OF JUNE 18 2009 PROCEEDINGS BEFORE HON CHARLES F HAINES

10

RELATIVE TO KAUSHAL NIROULA IN RELATION TO MATERIALS ITEMS DOCUMENTS

11

OBTAINED FROM THE DELL DESKTOP COMPUTER OF DAVID REPLOGLE .

12

13 NOTE : THE EN CAMERA TRANSCRIPTS WILL BE PRODUCED EN CAMERA BEFORE THE

14 UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA SAN

15 FRANCISCO DIVISION FOR AN EN CAMERA REVIEW OF THE COURT FOR ANY JUDICIAL

16 DETERMINATIONS TO ESTABLISH THE FACTS ASSERTED WITHIN THIS MOTION AS

17 OTHERWISE TO PUBLISH THE SEALED TRANSCRIPTS IN A PUBLIC FILING WOULD

18 VERY MUCH WAIVE THE PRIVILIDGE ASSERTED SUSTAINED AND SEALED.

19
20
.
21
22
23
24
25

INTERESTED THIRD PARTY KAUSHAL NIROULA'S NOTICE OF MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS INFORMATION OR
OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION /EXIBITS

26

1                    SUPERIOR COURT - STATE OF CALIFORNIA

2                        COUNTY OF RIVERSIDE

3

4

5  PEOPLE OF THE STATE OF CALIFORNIA,   )

6               Plaintiff,        )

7                vs.              ) Case No. INF064492

8  **KAUSHAL NIROULA,**              )

9              Defendant.        )

10                                 )

11

12

13 REPORTER'S PARTIAL TRANSCRIPT OF SEALED IN-CAMERA TRANSCRIPT

14              RE:   DEFENDANT NIROULA ONLY

15         BEFORE THE HONORABLE CHARLES F. HAINES

16                 JUNE 18, 2009

17

18

19

20 APPEARANCE:

21 For the Defendant         SULLIVAN & SHAW
   Niroula:              BY:   DENISE SHAW

22                      555 S. Palm Canyon Dr., Ste. 201
                        Palm Springs, California  92264

23

24

25

26

27 Reported by:            DALLAS ANN H. ERWOOD, CSR No. 5065

28

1    REPORTER'S CERTIFICATE

2

3

4   PEOPLE OF THE STATE OF CALIFORNIA, )
                                       )
5                   Plaintiff,         )
                                       )
6          vs.                         )    Case No. INF064492
                                       )
7   KAUSHAL NIROULA,                   )
                                       )
8                   Defendant.         )
    _____)
9

10       I, DALLAS ANN H. ERWOOD, Certified Shorthand Reporter No.

11  5065, hereby certify:

12       On June 18, 2009, in the county of Riverside, state of

13  California, I took in stenotype a true and correct report of

14  the testimony given and proceedings had in the above-entitled

15  case, pages 1 through 9, and that the foregoing is a true and

16  accurate transcription of my stenotype notes, taken as

17  aforesaid, and is the whole thereof.

18

19  Dated:  Indio, California, June 29, 2011.

20

21

22

23
                        DALLAS ANN H. ERWOOD, CSR No. 5065
24

25

26

27

28

DALLAS ANN H. ERWOOD, CSR

1
2
3
4
5
6
7

# EXHIBIT E

8
9
10
11
12
13
14
15
16

REPORTERS PARTIAL TRANSCRIPTS OF JUNE 18 2010 : THE EXCHANGE BETWEEN
KAUSHAL NIROULA AND LISA DI MARIA REGARDING THE TOSHIBA LAPTOP
COMPUTER OF DAVID REPLOGLE UNLAWFULLY OBTAINED BY SIMON MIN OF PALM
SPRINGS POLICE DEPARTMENT OUTSIDE THE SCOPE OF SPECIAL MASTER WHERE
LISA DI MARIA WILLFULLY MISLEADS THE COURT BY STATING MR. REPLOGLES
COMPUTER IS WITH THE SPECIAL MASTER WITH THE FULL AND COMPLETE
KNOWLEDGE OF THE UNLAWFUL ACTIONS OF THE CASE AGENT SIMON MIN WHO
ALSO WAS PRESENT ON SAID DATE IN COURT .

17
18
19
20
21
22
23
24
25

INTERESTED THIRD PARTY KAUSHAL NIROULA'S NOTICE OF MOTION AND MEMORANDUM IN
SUPPORT OF MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS INFORMATION OR
OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION /EXIBITS

27

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2             IN AND FOR THE COUNTY OF RIVERSIDE

3

4  PEOPLE OF THE STATE OF CALIFORNIA,  )
                                )

5                    Plaintiff,  )
                                )

6          vs.            )   Case No.  INF064492
                                )

7  DANIEL GARCIA, KAUSHAL NIROULA,    )
    and DAVID REPLOGLE,           )

8                            )
                    Defendants. )

9  _____)

10           REPORTER'S TRANSCRIPT OF 1538.5 MOTION

11       BEFORE THE HONORABLE DAVID B. DOWNING, JUDGE

12                  DEPARTMENT 1B

13                  June 18, 2010

14  APPEARANCE Of COUNSEL:

15

16  For the People:         ROD PACHECO,
                      DISTRICT ATTORNEY
                      BY: LISA DIMARIA,

17                    DEPUTY DISTRICT ATTORNEY
                      82-675 Highway 111, 4th Floor

18                    Indio, CA  92201

19

20  For Defendant Garcia:    DANIEL CARLOS GARCIA, IN PRO PER

21  For Defendant Replogle:   JOHN PATRICK DOLAN, ESQ.
                      45915 Oasis Street
                      Indio, CA  92201

22

23  For Defendant Niroula:    KAUSHAL NIROULA, IN PRO PER

24  Also Present:           Luis Bolanos, Investigator
                      Enrique Tira, Investigator

25                    David L. Wright, Esq.
                      1882 S. Caliente Road

26                    Palm Springs, CA  92264

27

28  Reported By:           JACKIE LENORE MUSSELMAN, CSR 5681

1    clarify for Mr. Bolanos' purpose, ultimately he is the one who

2    is responsible, um, for if I ask for phone time and legal

3    supplies, does he have permission to provide those to me?

4            THE COURT:  Yes.

5            MR. GARCIA:  Also in regard to, um -- okay.  That's

6    it.  We're good.

7            THE COURT:  Okay.  Okay.  Anything else, Mr. Garcia?

8            MR. GARCIA:  One last thing I forgot to mention.

9    Since there were three computers, um, I don't know, there has

10    been mention of one Min used and the -- the People's intention

11    not to use the others or are they still waiting to analyze

12    them?  If so, I have a declaration from my father under penalty

13    of perjury requesting that his computer be returned to him

14    pursuant to it was subsequent to it being seized and everything

15    else, and he has been deprived of access to it now for 18

16    months.

17            MS. DIMARIA:  I am not stipulating to that.  I have no

18    proof of that.  I don't know what further investigation we

19    intend to do.

20            THE COURT:  Okay.  I am not going to grant it now, Mr.

21    Garcia.  I don't have time to worry about it.  I don't know if

22    it's his.  Does he have a bill of sale?  How do I know it's his

23    computer?

24            MR. GARCIA:  The second you boot it up, it has his

25    profile and all of his personal content file.  I actually know

26    the password.

27            THE COURT:  I can't do it today.

28            MS. DIMARIA:  And the fact he knows the password means

1    he could have been using it for his own use.

2              MR. GARCIA:  No.  My father told me.

3              THE COURT:  Folks, I know.  I am not going to rule on

4    it today.  We've got to move to other things --

5              MR. GARCIA:  Okay.

6              THE COURT:  -- in the 65 minutes I have left here.

7              Okay.  Mr. Garcia, I will see you April 6th.  Um,

8    strike that.  August 6th.  Um, and I hope you gentlemen,

9    Detective Min and Investigator Bolanos can work out the deals

10   you need to work out.  Um, I have been liberal with funding so

11   I will pay for any reasonable thing that needs to be done, Mr.

12   Bolanos, okay?  Right?

13             MR. GARCIA:  Yes, sir.

14             Your Honor, can I ask to remain in the courtroom on --

15   to remain in the courtroom with Mr. Bolanos?

16             THE COURT:  Mr. Niroula, do you need to talk to me

17   from the table?

18             MR. NIROULA:  I can do it here.  Good afternoon, Your

19   Honor, Kaushal Niroula, representing myself, present in

20   custody.  Mr. Tira is present, my adviser.  And of record, I

21   had filed petitions to the Court, and prosecuting counsel has

22   stated that ten days notice was not sufficient.  I understand

23   that Detective Min has to leave at three o'clock, so let's deal

24   with that issue, Your Honor.

25             I am going to require Detective Min, who currently has

26   under the custody of Palm Springs Police Department the Toshiba

27   laptop seized from 309 Main Street, San Francisco, California,

28   pursuant to a search warrant, a nonexistent warrant, first time

 1    that Judge signed, and later a warrant received from Judge
 2    Nancy Davis. It's the mirror image of that. The power of
 3    attorney documentation of Kaushal Niroula granted to David
 4    Replogle. I would like a copy of that so Mr. Tira can go down
 5    to the police station and get a copy of that. And then, also,
 6    forensic complete copy of notary book of Matthew Turner. Not
 7    the pages where the alleged act of the forgery, but the entire
 8    notary book. It is necessary for defense work product, Your
 9    Honor.
10              THE COURT: Wait. Wait. Wait. Who has that?
11              MR. NIROULA: Palm Springs PD, Your Honor.
12              MS. DIMARIA: Okay. Your Honor, for starters, and by
13    the way, Detective Min got a text. He does need to leave;
14    right?
15              DETECTIVE MIN: Correct.
16              MS. DIMARIA: Okay. The computer he is asking for to
17    be released to him?
18              MR. NIROULA: I am not asking for it to be released, I
19    am -- I require the mirror image of that computer.
20              MS. DIMARIA: That is an attorney's computer. Even --
21    we are not allowed to look at it. That is David Replogle's
22    computer. That has only been able to have been accessed by the
23    Special Master, Martin Dean. So I certainly can't give the
24    defense a mirror hard drive when I am not even allowed to have
25    it. Only the special master has it.
26              THE COURT: Mr. Niroula, you can work it out.
27              MR. NIROULA: No, Your Honor. With all due respect to
28    Madam Prosecutor, I am not talking about the computer in the

1    possession of Mr. Martin Dean.  I am talking about the Toshiba

2    laptop computer seized from Replogle's residence.  And as

3    pursuant to search warrant and evidence in the report, shows

4    that it is in the custody of Palm Springs Police Department.

5    And I am fully aware of the Dell computer in the custody of Mr.

6    Martin Dean.  Mr. Dolan is here, Mr. Replogle is here.  Mr.

7    Dolan is also fully aware a Toshiba laptop was seized without

8    utilizing a special master.  And an attorney's computer, simply

9    based on the fact that Mr. Replogle apparently allegedly told

10   the police that he does not have attorney-client information.

11   I have brought this before the Court.  The police have that in

12   possession.  Their evidence report indicates it.  They have a

13   mirror image of it.

14            THE COURT:  It's not your computer?

15            MR. NIROULA:  No, it's not, Your Honor.  But it

16   pertains -- if you would like me to elaborate why I require the

17   mirror image, it will be suitable for a in camera hearing, but

18   I will go ahead and do it, Your Honor.

19            THE COURT:  Not today.

20            MS. DIMARIA:  Your Honor, this is news to me.  Um, I

21   believe it concerns me to give one defendant's property or a

22   mirror of it to another defendant.

23            THE COURT:  I know.  I asked Mr. Replogle, Mr. Dolan,

24   talk to Mr. Dolan about it.  I don't know what you guys are

25   talking about.  First I have heard of it.

26            MS. DIMARIA:  Mr. Dolan is walking away acting like he

27   doesn't hear you.

28            MR. DOLAN:  Just walking on the right side of the

1    courtroom.  Um, I really am not prepared to respond to that
2    right now.  I just walked in the door.  I am sorry.  I can't
3    help you.

4              THE COURT:  Okay.  Listen, Mr. Dolan, apparently from
5    what Mr. Niroula says, somebody took a computer that belongs to
6    Mr. Replogle.  A Toshiba.

7              MR. NIROULA:  It is a Toshiba laptop with blue
8    indentations on it.  That is what is marked on under the search
9    warrant of March 2nd by Honorable Judge Nancy Davis of San
10   Francisco, California to the Court.  It's in the evidence from
11   Palm Springs.  The evidence was signed in at nine --
12   approximately -- don't get me on that -- approximately nineteen
13   thirty hours Pacific Standard Time by Detective Frank Browning,
14   who is also a detective in this case.

15             THE COURT:  I know.  But it isn't yours, it's Mr.
16   Replogle's.

17             MR. NIROULA:  Your Honor, if I cannot be given a
18   mirror image of that, I can request the Court, and I can
19   explain why, and I can give  --

20             THE COURT:  I can't take away -- I can't give you
21   something that belongs to a co-defendant unless the
22   co-defendant consents.

23             MR. NIROULA:  Your Honor, I am not requesting the
24   physical computer, I am requesting a mirror image of the
25   computer, because I believe that the People have used
26   information that is in that computer.

27             THE COURT:  Mr. Niroula, the bottom line is here is
28   the reason why.  It ain't yours, it's Mr. Replogle's.  If he

1   says you can't have it, you can't have it. That's that simple.
2   It might not be that simple, but that's my ruling for now,
3   subject to any conversations Mr. Niroula may want to have with
4   Miss DiMaria about it, or his client. Mr. Replogle may
5   consent. If he consents, I don't care. If he doesn't consent,
6   then he doesn't consent. It's his property, please.
7           MR. NIROULA: Which was obtained without utilizing a
8   special master -- legitimate special master.
9           THE COURT: So even more reason. It still is Mr.
10  Replogle's.
11          What else, Mr. Niroula, in the short time I have left?
12          MR. NIROULA: Okay. Your Honor, I am going to,
13  with -- Mr. Garcia had requested the items that is in the
14  custody of Palm Springs Police Department.
15          THE COURT: The photos?
16          MR. NIROULA: No, I am going to reference page
17  numbers. It would be easier for Miss DiMaria. The items
18  listed on 003925.
19          MS. DIMARIA: I don't have my Bates binder here.
20          MR. NIROULA: Just write it down, 009325, the iPhone
21  (415)305-2908.
22          MS. DIMARIA: I am sorry. Sorry.
23          THE COURT: Mr. Niroula, you do realize nobody can
24  type or write numbers as fast as you are saying them. You have
25  to slow down, because the Court Reporter can't take numbers
26  that fast. Slow down, because besides, numbers are irrelevant
27  sometimes. The Bates number, we got. Okay?
28          MS. DIMARIA: I actually didn't. 003 --

1       MR. NIROULA:  003925.

2       THE COURT:  All right.  That is a page?

3       MR. NIROULA:  Correct, Your Honor.

4       THE COURT:  What page?

5       MR. NIROULA:  It is the page number on a search

6    warrant requested by Simon Min on June 2nd.

7       THE COURT:  Okay.  And what, specifically, do they

8    have that you want?

9       MR. NIROULA:  Um, a mirror image of the Apple iPhone

10   (415)205-2908.  I am also  --

11       THE COURT:  Why are you telling us the number of the

12   Apple iPhone?  There is only one of them.

13       MR. NIROULA:  There is three in the case, Your Honor.

14       THE COURT:  Well, news to me then.

15       MR. NIROULA:  And the Apple on that same page, what is

16   listed as item number 35 Apple MAC Pro serial number double oh

17   86160DSZWW.

18       THE COURT:  What is that?

19       MR. NIROULA:  That is -- that's an Apple laptop I

20   think, Your Honor.

21       Number 36, Apple Power Book G4, serial number

22   V73432Z2NRY.

23       Number 37, Apple Mac Book Pro, sir.

24       THE COURT:  Never mind numbers, just tell description.

25       MR. NIROULA:  There are three Apple laptops that were

26   siezed in Sacramento California, Your Honor.  And once again,

27   you tell me -- that it belongs to Mr. Garcia.  But the reason

28   why I am requesting this is I can give Your Honor a copy of

1    defense exhibit -- I mean, I will take that back. People's
2    exhibit number 74, what alleged text messages between Mr.
3    Garcia and supposedly between Defendant Kaushal Niroula, that
4    would be me, was obtained allegedly from the iPhone. Detective
5    Min testified at the preliminary hearing that he took the
6    iPhone to Eric Bashelter (phonetic) of San Francisco Police
7    Department between March 16th and March 19th on page 737. If
8    Your Honor requires it, I have highlighted it to make the
9    decision easier.

10    However, on June 2nd, Detective Min, on that search
11    warrant, is requesting to bypass the password of that
12    particular iPhone, so clearly on March 16 and 19 he didn't have
13    the password.

14    And the middle of the preliminary hearing, pursuant to
15    what Mr. John Patrick Dolan asked Detective Min, who authored
16    these messages, Detective Min pointed at Miss DiMaria and said
17    he did not have it. The preliminary transcript speaks for
18    itself.

19    On a question asked by Mark Sullivan, as what the
20    bottom line was on what the defense brought in as a true copy
21    of what the download of the text messages exactly looked like,
22    Detective Min stated it looks like as it is in Mr. Dolan's
23    computer. The defense would like to examine the mirror image
24    of these two computers, because the defense is absolutely
25    positive that these text messages were never downloaded by San
26    Francisco Police Department, neither by Detective Min, that
27    they were found downloaded on a different source that was
28    obtained pursuant to the seizure in Sacramento, California.

1   And to establish that, defense would request that these three
2   laptops and the iPhone be taken to a forensic analyst.
3   Detective Min can carry it to the forensic analyst of our
4   choice. Mr. Tira would be there with him. We can -- cannot
5   loose sight of either item. My choice is, I have problems with
6   Detective Min giving us the mirror image, because of what I
7   laid down in front of the Court.

8           THE COURT: Mr. Niroula, you just heard a long
9   discussion half an hour ago between myself, Detective Min and
10  Mr. Garcia about how we're going to do this on the other
11  laptops. Hold that thought for a few minutes.

12          MS. DIMARIA: Okay. May I? When that iPhone -- and
13  it actually crosses my mind with Mr. Garcia, too -- when that
14  iPhone was downloaded, it was downloaded onto a CD or DVD or
15  DVR, some round disk thing. That -- don't laugh at me. That
16  was copied and given out as discovery in its disk form to all
17  of the defendants. They all got their own copy.

18          Contained in that download of the phone were
19  30,000-plus text messages. Over 30,000. When I went to
20  prelim, rather than introducing 30,000 text messages, I had
21  pulled out -- I don't remember now. It was six months ago,
22  however long ago -- approximately 200 or so text messages that
23  I felt were inculpatory. Mr. Dolan, on his -- in his case,
24  brought in a handful. I don't remember. Five or seven text
25  messages that he felt were exculpatory. And when asked who
26  chose which text messages to bring into court, did you do that,
27  Detective Min, he said, no, I did. And it's true. As the
28  prosecutor, I chose out of 30,000 text messages, which ones I

1    REPORTER'S CERTIFICATE

2

3    PEOPLE OF THE STATE OF CALIFORNIA,  )
                                          )
4                          Plaintiff,     )
                                          )
5            vs.                          )    Case No. INF064492
                                          )
6    DANIEL GARCIA, KAUSHAL NIROULA,      )
     and DAVID REPLOGLE,                  )
7                                         )
                            Defendants.   )
8    _____)

9

10

11        I, Jackie Lenore Musselman, Certified Shorthand Reporter,

12   No. 5681, do hereby certify:

13        That on June 18, 2010, in the County of Riverside, State

14   of California, I took in stenotype a true and correct report of

15   the testimony given and proceedings had in the above-entitled

16   case, Pages 1 through 149, and that the foregoing is a true and

17   accurate transcription of my stenotype notes, taken as

18   aforesaid, and is the whole thereof.

19

20

21

22   DATED:  Eureka, California, December 15, 2011.

23

24

25

26                        JACKIE LENORE MUSSELMAN, CSR 5681

27

28

JACKIE LENORE MUSSELMAN, CSR NO. 5681

# EXHIBIT F

REPORTERS TRANCRIPTS OF SEPTEMBER 13, 2011 DEPICTING THE EXCHANGE BETWEEN HON DAVID B DOWNING AND MR. KAUSHAL NIROULA  REGARDING THE CONDUCT OF THE PROSECUTOR LISA DI MARIA OF TRYING TO OBTAIN WARRANTS TO OBTAIN SEALED MATERIAL BY HON CHARLES F HAINES BY OBTAINING WARRANTS RATHER THAN ISSUING WRITS AND  JUDGE DOWNINGS  ACCEPTANCE THAT HE HAS TO ABIDE BY THE RULINGS AND FINDINGS OF HONORABLE CHARLES F HAINES AS NOT BEING IN THE COURT OF APPEAL .... ALL IN RELATION TO THE DELL DESKTOP IN COMPUTER OF DAVID REPLOGLE .

Case 3:08-cr-01065-CRB   Document 1052-1   Filed 02/16/12   Page 34 of 66

## SUPERIOR COURT – STATE OF CALIFORNIA
## COUNTY OF RIVERSIDE


SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

## <u>NOTICE OF TRANSCRIPTS FILED</u>

JAN 05 2012

**CASE NAME:** People v. Niroula, Riplogle, Garcia, Bustamante, McCarthy    K. HINOS

**CASE NUMBER:** INF064492 / DCA E053711

**COURT-ORDERED TRANSCRIPT:** 1) One copy of computer-readable (PDF) Transcript on Appeal delivered to Kaushal Niroula; 2) One copy of computer-readable (PDF) Transcript on Appeal delivered to Daniel Carlos Garcia.

**DELIVERY MEDIUM:** HP 4G flash drive, containing 103 files as itemized below, sealed hearings excluded.

**SUPERVISING REPORTER:** Terri L. Dickneider

| REPORTER NAME | DATE | FILE NAME | PAGES |
|---|---|---|---|
| D. Erwood | 03/09/09 | 20090309 | 13-18 |
| | 03/12/09 | 20090312 | 19-22 |
| | 04/10/09 | 20090410 | 23-34 |
| | 06/09/09 | 20090609 | 125-137 |
| | 06/18/09 | 20090618 | 138-148 (149 – 200-1 sealed) |
| T. Dible | 07/02/09 | 20090702A | 201-213 |
| | | 20090702B | 214-221 |
| A. Delgado | 07/22/09 | 20090722 | 222 – 230-231 |
| T. Dible | 07/31/09 | 20090731 | 232-248 |
| D. Erwood | 08/10/09 | 20090810 | 249-262 |
| R. Brown | 08/11/09 | 20090811 | 263-275 |
| D. Erwood | 11/13/09 | 20091113 | 276-301 |
| K. Cagney | 01/08/10 | 20100108 | 302-305 |
| | 02/08/10 | 20100208 | 306-316 |
| | 02/26/10 | 20100226 | 317-428 |
| | 03/05/10 | 20100305 | 429-444 |
| C. Stires | 03/12/10 | 20100312 | 445-511 (512-542 sealed) |
| K. Cagney | 04/30/10 | 20100430 | 543-587 |
| | 05/10/10 | 20100510 | 588-617 |
| | 05/14/10 | 20100514 | 618-644 |
| | 05/28/10 | 20100528 | 645-663 |
| | 08/04/10 | 20100804 | 664-698 |
| | 08/05/10 | 20100805 | 699-726 |
| | 08/06/10 | 20100806 | 727-834 (798-815 sealed) |
| | 08/11/10 | 20100811 | 835-839 (840-855 sealed) |
| | 08/13/10 | 20100813 | 856-937 (938-953 sealed) |
| | 08/17/10 | 20100817 | 954-955 (956-973 sealed) (974-1000 block numbered) |
| | 08/27/10 | 20100827 | 1001-1073 |
| | 08/30/10 | 20100830 | 1074-1086 |
| | 08/31/10 | 20100831 | 1087-1175 |

Page 1 of 3

| REPORTER NAME | DATE | FILE NAME | PAGES |
|---|---|---|---|
| | 09/01/10 | 20100901 | 1176-1231 |
| | 09/03/10 | 20100903 | 1232-1243 |
| | 09/07/10 | 20100907 | 1244-1269 (1270-1283 sealed) |
| | 09/08/10 | 20100908 | 1284-1295 (1296-1307 sealed) |
| | 09/09/10 | 20100909 | 1308-1330 (1331-1343 sealed) |
| | 09/13/10 | 20100913 | 1344-1403 |
| | 09/14/10 | 20100914 | 1404-1415 |
| | 09/15/10 | 20100915 | 1416-1473 |
| | 09/20/10 | 20100920 | 1474-1606 |
| | 09/21/10 | 20100921 | 1607-1680 |
| | 09/22/10 | 20100922 & 201009-22-23-29 Blocked Pages | 1681-1808 & (Pages 1800-1808 renumbered as 1799-1 – 1799-9) |
| | 09/23/10 | 201009-22-23-29 Blocked Pages | 1799-10 – 1799-91 |
| | 09/29/10 | 201009-22-23-29 Blocked Pages | 1799-92 – 1799-93 |
| | 10/05/10 | 20101005 | 1799-94 – 1799-122 |
| | 10/06/10 | 20101006 | 1800-1859 |
| | 10/07/10 | 20101007 | 1860-1868 |
| T. Runyon | 10/12/10 | 20101012 | 1869-2038 |
| | 10/13/10 | 20101013 | 2039-2204 |
| K. Cagney | 10/14/10 | 20101014 | 2205-2375 |
| | 10/18/10 | 20101018 | 2376-2532 |
| | 10/19/10 | 20101019 | 2533-2613 |
| T. Runyon | 10/20/10 | 20101020 | 2614-2774 |
| K. Cagney | 10/21/10 | 20101021 | 2775-2968 |
| | 10/25/10 | 20101025 | 2969-3110 |
| T. Runyon | 10/26/10 | 20101026 | 3111-3263 |
| K. Cagney | 10/27/10 | 20101027 | 3264-3425 |
| T. Runyon | 10/28/10 | 20101028 | 3426-3588 |
| K. Cagney | 11/01/10 | 20101101 | 3589-3753 |
| | 11/02/10 | 20101102 | 3754-3898 |
| K. Smith | 11/03/10 | 20101103 | 3899-4034 |
| | 11/04/10 | 20101104 | 4035-4133 |
| T. Runyon | 11/05/10 | 20101105 | 4134-4301 (4196-4212 and 4220-4249 sealed) |
| K. Cagney | 11/08/10 | 20101108 | 4302-4426 |
| T. Runyon | 11/09/10 | 20101109 | 4427-4565 |
| K. Cagney | 11/10/10 | 20101110 | 4566-4696 |
| | 11/15/10 | 20101115 | 4697-4888 |
| | 11/16/10 | 20101116 | 4889-5033 |
| T. Runyon | 11/17/10 | 20101117 | 5034-5196 |
| | 11/18/10 | 20101118 | 5197-5365 |
| K. Cagney | 11/22/10 | 20101122 | 5366-5417 |
| | 11/23/10 | 20101123 | 5418-5470 |
| | 11/24/10 | 20101124 | 5471-5492 |
| C. Stires | 11/30/10 | 20101130 | 5493-5640 |
| K. Cagney | 12/01/10 | 20101201 | 5641-5793 |
| T. Runyon | 12/02/10 | 20101202 | 5794-5911 |

| REPORTER NAME | DATE | FILE NAME | PAGES |
|---|---|---|---|
| K. Cagney | 12/06/10 | 20101206 | 5912-6050 |
|  | 12/07/10 | 20101207 | 6051-6161 |
| L. Kiel | 12/09/10 | 20101209 | 6162-6234 |
|  | 12/13/10 | 20101213 | 6235-6242 |
|  | 12/14/10 | 20101214 | 6243-6382 |
|  | 12/15/10 | 20101215 | 6383-6515 |
|  | 12/16/10 | 20101216 | 6516-6587 |
|  | 12/17/10 | 20101217 | 6588-6651 |
|  | 12/20/10 | 20101220 | 6652 – 6723-6754 |
| T. Runyon | 12/22/10 | 20101222 | 6755-6770 |
|  | 12/23/10 | N/A | (6771-6807 sealed) |
| K. Cagney | 01/03/11 | 20110103 | 6808-6828 |
|  | 01/25/11 | 20110125 | 6829 – 6835-6859 |
| J. Giminez | 02/01/11 | 20110201 | 6860-6877 |
| P. Brock | 05/06/11 | 20110506 | 6878-6944 |

| CERTIFICATE PAGES | FILE NAME |
|---|---|
| A. Delgado | 2009certcsr11185 |
| R. Brown | 2009CertCSR13325 |
| C. Stires | 2010certcsr4472 |
| L. Kiel | 2010CertCSR9692 |
| K. Smith | 2010CertCSR11501 |
| T. Runyon | 2011CertCSR3037 |
| D. Erwood | 2011CertCSR5065 |
| J. Giminez | 2011certcsr8396 |
| P. Brock | 2011CertCSR10633 |
| K. Cagney | 2011CertCSR10850 |
| T. Dible | 2011CertCSR12928 |
| **INDICES** | **FILE NAME** |
| Appearance Index | 2011ReplogleAppearanceIndex |
| Alpha Index | 2011ReplogleAlphaIndex |
| Chrono Index | 2011ReplogleChronoIndex |
| Exhibit Index | 2011ReplogleExhibitIndex |

1               INDIO, CALIFORNIA; SEPTEMBER 13, 2010

2               BEFORE THE HONORABLE DAVID B. DOWNING

3          (Outside the presence of the prospective jury.)

4               THE COURT:  Let's go on the record -- it's 9:00 --

5     please.

6               Okay.  Calling the matter of Miguel Bustamante, Daniel

7     Garcia, Kaushal Niroula, and David Replogle.  This is INF064492.

8     All those folks are present with their lawyers and/or their

9     investigators, and Ms. DiMaria is present from the D.A.'s

10    office.

11              Folks, we've been told our 80 potential jurors this

12    morning will be coming over, which is good, because we need to

13    up the numbers.

14              Let me remind everybody we won't be in session tomorrow

15    morning, if you have forgotten.  So we'll have a jury trial

16    panel this morning, a jury panel this afternoon, and a jury

17    trial panel tomorrow afternoon.  We won't be in session tomorrow

18    morning, okay, just in case you've forgotten.

19              Mr. Niroula, have you gotten your writ done yet, so I

20    can keep track?

21              MR. NIROULA:  It's being worked on.  It will be done by

22    Friday.  I want to be cautious and get everything on the writ,

23    so I'm going to be reviewing the second rough draft as of

24    tomorrow, and it will be filed on Friday.

25              THE COURT:  All right.  Let me say a couple things for

26    the record, for both Mr. Garcia's and Mr. Niroula's edification.

27              On Friday, when I had time, I reread all of the Faretta

28    advisements, all the transcripts supporting all that,

1 Mr. Garcia's original request for continuance, and then the writ
2 request in some detail.

3 I had a long conversation with Investigator Bolanos on
4 Friday, not about this case. We didn't talk about the case, but
5 we talked about discovery and how a better way could have been
6 done and should have been done.

7 After talking with him is when I sat down and reread
8 everything, and to say that I'm angry with the sheriff's
9 department would be an understatement. I cannot tell you what I
10 really think about the way they've handled Mr. Niroula and
11 Mr. Garcia in terms of -- in terms of their access to the law
12 library because, if I told you what I really think, I would be
13 disciplined by the Commission on Judicial Performance for saying
14 it.

15 I'm that angry over it because they have interfered
16 with both Mr. Niroula's and Mr. Garcia's right to a fair trial.
17 That's a fact. There's no doubt about it. What they should
18 have done is they should have had modern laptop computers
19 available in the library so Mr. Niroula or Mr. Garcia could have
20 a thumb drive or disc or whatever, go in there, put it in there,
21 get all the discovery, with a printer so they could print out
22 stuff they needed to print.

23 That would cost almost nothing in terms of the
24 Sheriff's budget and would have allowed Mr. Garcia and
25 Mr. Niroula to have access to all discovery here, at their
26 leisure, basically.

27 Mr. Garcia, have you ever sat down and have you at this
28 point, gone through all the discovery in this case? I'm talking

1   about just the paper, just the Bates stamped paper?

2          MR. GARCIA: I'm about a third of the way through.

3          THE COURT: Mr. Niroula, same question.

4          MR. NIROULA: No, Your Honor.

5          THE COURT: How far have you gotten?

6          MR. NIROULA: What I have looked at is I have read the

7   preliminary hearing transcript (unintelligible) and as I did

8   point out on the (unintelligible), it was September 1st that I

9   requested my 1050 continuance that there was evidence that was

10   introduced by the People and brought in by law enforcement.

11          However, I have been unable to authenticate whether

12   this evidence is true, if there's evidence that's planted,

13   because I think I know this case much better than law

14   enforcement does because I've lived it.

15          I would know what I ate Monday morning for breakfast; I

16   would know what I ate on Sunday afternoon for lunch. So I know

17   when something does not exist in my safety deposit box, for

18   example, and all of a sudden something surfaces on the safety

19   deposit box, I have to question how it got there.

20          THE COURT: Okay.

21          MR. NIROULA: The only thing is law enforcement put it

22   there. And I have not been able to do that. So I cannot --

23   this is why I pointed out to the Court that when I do go to

24   trial, I can't tell the jury, ladies and gentlemen of the jury,

25   I know for a fact that this information was not there, but I

26   can't tell you because I've not been -- I've been instructed not

27   to make the legal arguments. You have to believe me versus

28   Detective Simon Min or versus any other law enforcement agent --

1       THE COURT: Okay.

2       MR. NIROULA: -- that this is planted evidence. For

3   that fact, I have not viewed discovery in its true form.

4       THE COURT: All right.

5       MR. NIROULA: If that answers Your Honor's question.

6       THE COURT: Not really. All right. Have you looked

7   through all the Bates documents discovery in this case?

8       MR. NIROULA: No, absolutely not.

9       THE COURT: Tell me why you can't.

10      MR. NIROULA: The fact is, when I went pro per and

11  became a self-litigating defendant, Ms. Tolbert and I requested

12  the district attorney's office to provide my discovery primarily

13  because I've had three strings of separate lawyers.

14      THE COURT: Yeah.

15      MR. NIROULA: Ms. DiMaria at that time was ordered to

16  provide the discovery. However, she stated it's going to take a

17  long time. She actually, in fact, used the Duncan case as an

18  example, where they have -- haven't Bates stamped that, then

19  they worked around it.

20      So what was in discovery at that time and what was not

21  in discovery is not known to me because Mr. Sullivan works on

22  the principle of not giving the client his discovery so other

23  inmates in the jail don't look at the discovery and try to get a

24  deal out of the case. Mr. Lieman works in the same principle;

25  Ms. Tolbert also works in the same.

26      So except for the preliminary hearing transcript and

27  what evidence was educed at the preliminary hearing brought by

28  the People, I have not looked at anything else except the search

1 | warrants, which I have very thoroughly looked at.

2 | THE COURT: Okay. Have you at the moment -- let's say

3 | this past weekend, what access did you have to the law library

4 | in the Indio jail?

5 | MR. NIROULA: When I ask for access to the law library,

6 | as I pointed out to the Court and I pointed out to the ranking

7 | officer --

8 | (Parties speaking simultaneously.)

9 | THE REPORTER: One at a time, please.

10 | THE COURT: Talk about this weekend; just tell me.

11 | MR. NIROULA: Yeah. When you request to get the access

12 | to the law library, the setup at the jail is that you write on a

13 | piece of paper and you ask for it.

14 | THE COURT: Okay.

15 | MR. NIROULA: Except I made five different requests and

16 | none of it was honored.

17 | THE COURT: This weekend?

18 | MR. NIROULA: Correct, Your Honor.

19 | THE COURT: Do you have copies of those or did you give

20 | them to the sheriff?

21 | MR. NIROULA: No. There's only one copy. You can't

22 | make copies.

23 | THE COURT: Mr. Garcia, the same question.

24 | MR. GARCIA: Well, Your Honor, earlier on, there was a

25 | procedure under Captain Gregory that the deputies actually came

26 | and asked me every day. And I -- the record will show that I

27 | used the law library every day without problems.

28 | THE COURT: Okay.

1          MR. GARCIA:  In the new administration with Captain
2     Eaglin, I've never been asked, and when I do ask, I've maybe
3     gone about five times in the past couple months, and it's
4     usually at about midnight.

5          THE REPORTER:  You need to speak up, sir.

6          MR. GARCIA:  As I've said, it's completely
7     unacceptable, considering we eat breakfast at 4:00, so...

8          THE COURT:  Well, okay.

9          Ms. DiMaria, if you want to add anything, yeah, go
10    ahead.  We have a few minutes.

11         MS. DiMARIA:  Absolutely, Your Honor.  Mr. Garcia has
12    been questioned for months of how far he's gotten through his
13    discovery.  His answer for months has been a third of the way.

14         I have suggested that if you print all of the Bates
15    discovery, it will fit in a printer box.  That was never done.
16    He has had the opportunity to go through his discovery.

17         I've also learned from the jail that he's spent hours
18    and hours and hours on the phone, which perhaps had he been
19    spending that time reading through some of his discovery, he
20    might not be able to say that he only was a third of the way
21    through it, which he's been saying this entire time.

22         The People are a little perplexed.  Your Honor has
23    expressed that you spent well over $39,000 on his defense.  And
24    I don't have this in front of me, I didn't know we were going
25    into these topics this morning, but underneath his -- or in his
26    1050, if you read it, it doesn't sound like they've done one
27    single thing in this case.  He hasn't read his discovery.  He
28    hasn't issued subpoena duces tecums.  He hasn't interviewed any

1    witnesses. I'm not sure what he's done with the almost $40,000.

2          As for Mr. Niroula's discovery, Your Honor had been

3    checking throughout the period of months, saying, "How are you

4    doing with discovery," and they've been saying "Fine." We have

5    turned over all of the Bates documents because when we turn over

6    a disc, we turn it over from one until the end, most of the

7    time. I don't have that evidence with me because again, I

8    didn't know we were getting into it today.

9          THE COURT: I know, I'm just asking.

10         MS. DiMARIA: But I can represent that we turned it all

11   over to Mr. Niroula. And Your Honor had inquired, because of

12   the situation between Sullivan and Lieman, their status of

13   getting the discovery, and they indicated they had no problem

14   with it. So here we are after starting jury selection and this

15   is all of a sudden news to myself.

16         THE COURT: All right. Let me -- is the jury outside?

17         THE DEPUTY: Yes, Your Honor.

18         THE COURT: All right I don't want to hold them up.

19   Let me just say this: Mr. Niroula and Mr. Garcia, understand

20   that the trial has commenced. Okay. The trial will continue to

21   go forward.

22         The best case scenario for Mr. Niroula and Mr. Garcia

23   would be myself or the appellate court would sever your case,

24   and you would go in January, but this trial would proceed as to

25   Mr. Bustamante and Mr. Replogle.

26         You both understand that? In other words, the trial --

27   the court of appeal isn't going to stop the entire trial, even

28   if they do rule for you. Do you understand that, gentlemen?

1           MR. GARCIA: Absolutely, Your Honor.

2           THE COURT: All right. I just want to be sure you

3 understand that. What they could do is sever Mr. Garcia and

4 Mr. Niroula's case out; the case against Mr. Replogle and

5 Mr. Bustamante would proceed. There's a -- I mean, there's a

6 two-edged sword to that, depending what happens at the end to

7 those two folks, if that were to occur.

8           But just so you understand, procedurally, in other

9 words, the whole trial is -- if the court of appeal rules for

10 Mr. Garcia and Mr. Niroula, they're not going to stop the entire

11 trial. They might stop your part of it, but the other part is

12 not before the court of appeal. It's been there. Mr. Replogle

13 has been there a couple times.

14           So, do you both understand that? Mr. Garcia?

15           MR. GARCIA: Absolutely. And, in fact, that would be

16 the preference for me, Your Honor.

17           THE COURT: Mr. Niroula?

18           MR. NIROULA: That would be the preference, Your Honor,

19 as well. I fully understand that.

20           THE COURT: You understand what could happen,

21 hypothetically -- and, Mr. Replogle and Mr. Bustamante, don't

22 draw anything from this because I don't predict what juries

23 do -- but hypothetically, if they are convicted in January,

24 hypothetically, and then your trial, Mr. Niroula, and your

25 trial, Mr. Garcia, starts, right. That's the way it would work

26 mechanically, if that's what would happen; right? Do you

27 understand that?

28           MR. GARCIA: Absolutely.

1       THE COURT:  And their conviction may or may not help
2   you, depending.

3       MR. NIROULA:  I'm fully aware of that, Your Honor, and
4   without disclosing work product --

5       THE COURT:  I understand.

6       MR. NIROULA:  -- in the next couple of weeks, which I'm
7   working very diligently to file a couple of motions, I doubt the
8   People would have a case against Defendant Niroula.

9       THE COURT:  Gentlemen, I just want you to be sure.
10  Obviously, so you all understand, obviously, I'm struggling with
11  this issue.  I'm trying to balance the right of the People and
12  the preference for a joint trial to go forward against the right
13  of you two defendants, Mr. Garcia and Mr. Niroula, to have a
14  fair trial.  The bottom line, when you cut through all the
15  verbiage, is that both -- is everyone in the system is entitled
16  to a fair trial.  That's the bottom line, obviously.

17      My job, among other things, is to ensure everybody here
18  gets one.  And at the moment, I'm struggling with that because I
19  have doubts as to whether or not -- as a practical matter,
20  Mr. Niroula and Mr. Garcia have been able to see all the
21  discovery.  Even all the police reports, because of the
22  sheriff's department's refusal to come into the 21st Century on
23  that subject.

24      That's -- I can say for the record, when Captain
25  Gregory was the commanding officer of the Indio jail, he was
26  wonderful to deal with.  Once he realized the problem, he jumped
27  right on it and did all he could to fix it.  I agree with that.
28      But he's no longer the commanding officer, and so his

1    view has not prevailed, and the defendants like Mr. Niroula and

2    Mr. Garcia have not had open access to the law library like they

3    did under Captain Gregory.  That would appear to be what's

4    happened.

5            I don't run the sheriff's department, but I am very

6    concerned about the way they handle the pro pers in this case.

7            MS. DiMARIA:  Your Honor --

8            THE COURT:  They don't seem to understand that their

9    lack of being in the 21st Century on the subject is interfering

10   with the defendants' right to a fair trial.  Maybe they don't

11   understand it.  I don't know.

12           Yes?  Briefly, because the jury is outside, folks.

13           MS. DiMARIA:  Sir, I have to admit one of my concerns

14   is that all of -- a lot of your opinion seemed to have been

15   formed ex parte --

16           THE COURT:  No.  No.  No.

17           MS. DiMARIA:  -- discussions that I wasn't aware of.

18           THE COURT:  There's been no ex parte communications

19   whatsoever.  The only thing I talked to Mr. Bolanos about was

20   the way in which the sheriff's department handles pro per

21   defendants, and he and I discussed why don't they just go buy

22   new laptops, put everything on a disc or a thumb drive and the

23   defendant comes in there, and he has all the discovery at his

24   fingertips with a printer so we he can print it out.

25           MS. DiMARIA:  But I've been told --

26           THE COURT:  That's it.  We did not talk about this

27   case.

28           MS. DiMARIA:  -- I've been told by the detective and

1    the sergeant that all they have to do is ask for the library. I
2    have no idea how many times Mr. Garcia's made that request,
3    considering how often he's on the phone.

4         THE COURT: All right. Ms. DiMaria, the problem seems
5    to be is that mechanically, not -- anybody, any pro per charged
6    defendant cannot go into the library here and access all the
7    files he has in that particular case, somehow. And then even if
8    he could, he can't print out parts of that to work on, like five
9    pages of this witness's testimony or statement, for example. He
10   can't do that.

11        MS. DiMARIA: But, sir, if I may, please, I need to
12   protect my side of the record, too. As I've stated before and I
13   know for a fact, Mr. Garcia has until perhaps a couple of days
14   ago been in a cell all by himself. They're allowed to have a
15   box in there. If you printed out the discovery in this case
16   double-sided, it would have fit in the box. It could have been
17   taken into his cell.

18        THE COURT: Okay.

19        MS. DiMARIA: So I'm not really sure why this just
20   wasn't printed out and given to him if there were difficulties
21   with reading it on the computer.

22        THE COURT: Okay.

23        MS. DiMARIA: So I don't know how much of it is set up.

24        THE COURT: Mr. Garcia, one minute or less.

25        MR. GARCIA: I'll be brief, Your Honor.

26        THE COURT: Go ahead.

27        MR. GARCIA: In fact, I have three property boxes

28   filled with paper pertaining to this case.

1            THE COURT: Yeah.

2            MR. GARCIA: A lot of it is discovery; a lot of it is

3    transcripts. Almost one entire box is just transcripts.

4            THE COURT: Yeah.

5            MR. GARCIA: There's a mountain of discovery, not to

6    mention I can't print out audio and video recordings.

7            THE COURT: Yeah, I know.

8            MR. GARCIA: In the response to the district attorney's

9    admonition about how much money we've spent, that's neither here

10   nor there. I would ask how much money they have spent preparing

11   their case?

12           THE COURT: Mr. Garcia, I'm not complaining about the

13   money. I keep telling you all that. And I was -- approved

14   other monies since then. I'm not complaining about that. I

15   have tried to spend money so that you could be prepared for this

16   trial by September 7th. I'm not complaining about it, and I'm

17   not going to complain about it for either Mr. Garcia or

18   Mr. Niroula.

19           All right, folks, listen --

20           MR. NIROULA: Your Honor, if I could --

21           THE COURT: Briefly.

22           MR. NIROULA: I'll be very brief. The People indicated

23   every time they've talkened [sic] to this jail detective,

24   however the People fail to forget -- the People fail to remember

25   that this jail detective directly became a participant in

26   blocking Defendant Niroula's access for one month and derailing

27   his preparation by giving absolutely bogus information to the

28   court by conducting an absolutely lurid investigation, failing

1  to inform Defendant Niroula, in fact, treating him as an
2  attorney in fact, in which the prosecutor also failed in that
3  aspect.

4          I'm not going to comment where the Court stood on that
5  because I'm not going to --

6          THE COURT: The Court has nothing to do with it.

7          MR. NIROULA: Yes, Your Honor, I'm aware of that. And
8  at that time, what level of defense work product has been
9  exposed to the prosecution because of that fact is unknown to us
10 because the Court has refused to talk about it.

11         The prosecutor, to her credit, will claim that, "No, we
12 don't have any access." And I can believe this from the
13 prosecutor for one month being fully aware and having an active
14 participation in that blockade gave an absolute -- accurate of
15 the truth statement and expressing her oblivion to why defendant
16 was curtailed in the jail for his ability to defend himself.

17         On April 30th at 4:00 o'clock in the afternoon, when
18 Ms. DiMaria and Mr. Cameron Quinn had that conversation with the
19 Court. I'm not stating that the Court had a conversation, but
20 Ms. DiMaria had that conversation.

21         Ms. DiMaria stated on the record it's a jail issue. If
22 it was a jail issue, the detective should have gone to
23 Mr. Quinn. Why was the Court involved? It was as though it was
24 done to prevent the Court from interfering on Defendant
25 Niroula's behalf, which Defendant Niroula asked the Court to do
26 so.

27         But by seeking an indirect patronage of the Court, the
28 prosecution, the jail detective utilizing bogus information

1  given by a probable prosecutorial agent blockaded Defendant

2  Niroula's access and derailed his ability to defend himself.

3         And it started the day I declared in open court that

4  Investigator Enrique Tira was going to Northern California to

5  investigate the loopholes of the prosecution's case.

6         THE COURT:  Okay, Mr. Niroula --

7         MR. NIROULA:  Coincidences, I don't believe in, Your

8  Honor.

9         THE COURT:  Okay.  I've got to bring in the jurors,

10  folks.  They're sitting outside.

11         MS. DiMARIA:  And I was not involved in any of that.

12  It needs to be put on the record I don't have involvement with

13  the jail, their investigation, where they house people.  I'm

14  being accused of all kind of misconduct I did not commit.

15         MR. NIROULA:  Your Honor, for the record,

16  Ms. DiMaria --

17         THE COURT:  Okay -- Mr. Niroula --

18               (Parties speaking simultaneously.)

19         THE REPORTER:  I did not get anything you said,

20  gentlement.  You're talking over one another.

21         THE COURT:  Stop the record.  We'll bring the jurors.

22         (Jury voir not transcribed in the record on appeal.)

23         THE COURT:  Okay.  Let's go back on the record.

24  Everybody, let's go back on the record in Bustamante, Garcia,

25  Niroula, and Replogle.  They're all present with their

26  investigators and lawyers.  Ms. DiMaria is present.

27         It's 20 after 11:00 on Monday.  We had gotten through

28  hardships of the jurors this morning, and the next panel is

1   coming in at 1:30. In the meanwhile, I thought I'd get some
2   402s out of way.

3          What I did is I started going through the trial briefs,
4   picking out areas that I needed to ask you all about and to
5   decide what to do about it. Some of the stuff, we need to start
6   doing now, because we're going to run out of time, because we're
7   not going to have enough time, because I suspect that the 20th
8   and 21st of September we're going to be doing jury selection,
9   because I don't think we're going to have enough jurors. But
10  we'll see.

11         Meanwhile, okay. So what I've done is arbitrarily
12  pulled subject areas off both the D.A.'s and Mr. Dolan's trial
13  briefs. And so -- because we on the minute order have to keep
14  what we have done.

15         So for the minute order, issue number one, and I'll do
16  it by issue so we can find it: In camera hearing re search
17  warrant served on Defendant Replogle. That's how I will entitle
18  this. This concerns the special master issue and what was or
19  was not found, because I'm not sure what was or was not found.
20  So let me tell you all my concerns and then maybe we can clear
21  this up quickly or not, I don't know, but I need to ask you
22  about it.

23         The two cases about search warrants and defendants who
24  are lawyers are Bauman, People versus Superior Court, (Bauman &
25  Rose) 37 Cal.App.4th 1757, which is now referred to as the
26  Bauman & Rose hearing after that case, and then People versus
27  Superior Court (Laff), L-a-f-f, 25 Cal.4th 703, which I have
28  read twice trying to figure out what they're talking about.

1    Both of those cases -- Laff basically agrees with
2  Bauman & Rose.  Bauman & Rose was an appellate case, Laff was a
3  supreme court, basically say a criminal defendant who is a
4  lawyer have a right to an in camera hearing to determine claims
5  that material seized pursuant to search warrant are protected by
6  the attorney-client privilege or work product, and, therefore,
7  this should not be inspected by or disclosed to a law
8  enforcement authority.
9    On Laff, the attorneys -- both attorneys asked for a
10  special master, and in that case, that didn't happen.  The
11  police seized everything, and the D.A. even let it go in
12  discovery to the defense until a judge put a stop to it.  The
13  judge appointed a special master.  They were fighting in Laff
14  over who pays for it, believe it or not, but that's not
15  pertinent to our proceeding.
16    A special master can be appointed by the Court.  A
17  special master can issue findings and recommendations, and those
18  are not binding on the trial judge.  But -- because the trial
19  judge has to have independent review -- but the judge can adopt
20  the special master's finding.
21    So my question here, one:  What does -- what were
22  seized?  What did the special master recommend, if anything?
23  And of that, are there documents that the D.A. seeks to admit
24  that need to be the subject of a Bauman & Rose hearing.  If, of
25  course, the D.A. doesn't seek to admit anything, then this issue
26  is moot.
27    My recollection of the evidence here -- remember, I
28  didn't do the prelim -- was that Mr. Dean was appointed as a

1 special master. Now, I don't know if that was when the search
2 warrant was served or afterwards. I don't know how that was
3 done mechanically, but apparently Mr. Dean was appointed, and
4 that involved all that.

5 So, Mr. Dolan, fill me in, just so I have an idea of
6 what happened and what, if anything, I need to do about it.
7 Maybe nothing, I don't know.

8 MR. DOLAN: Well, I just for background --
9 THE COURT: Yeah.

10 MR. DOLAN: -- Mr. Dean was appointed as a special
11 master by Judge Haines in San Francisco.

12 THE COURT: Right.

13 MR. DOLAN: Before the preliminary hearing, Judge
14 Haines came down here, and we had a hearing wherein Mr. Replogle
15 and I reviewed material that Mr. Dean had taken off of
16 Mr. Replogle's computer to determine if there was any need to
17 assert an attorney-client privilege. In the instances where
18 there was a need to assert the attorney-client privilege, we
19 then passed that information along to the representatives of
20 Mr. Niroula. I think maybe Mr. Garcia as well, although it's
21 been a long time --

22 THE COURT: Okay.

23 MR. DOLAN: -- who then reviewed to determine whether
24 or not they sought to assert the attorney-client privilege. So
25 that was one thing that happened. And I think it's important to
26 make sure that that's clear on the record.

27 Since that happened, we have been seeking, as the Court
28 knows, and finally received it, a mirror image of Mr. Replogle's

1　computer.  There are a couple of documents that were provided to

2　the district attorney that we took off of that hard drive,

3　including a letter to Mr. Lambert in mid-November and a draft of

4　a settlement agreement with Mr. Lambert between Mr. Niroula and

5　Mr. Lambert.

6　　　　　As I understand it, the People have subpoenaed records

7　from the actual hard drive, and that's what the Court had in the

8　box here not so long ago.

9　　　　　MS. DiMARIA:  Excuse me.

10　　　　　THE COURT:  I still have them.

11　　　　　MS. DiMARIA:  Just to clarify, that was under a new

12　search warrant, not a subpoena.

13　　　　　MR. DOLAN:  Correct, right, it's a new search warrant,

14　and that's -- the potential, I suppose, number of problems here

15　is there's a special master appointed.  Rather than going

16　through the -- having the special master come down for a

17　hearing, the People have asked for and received a search

18　warrant, which was then executed, and, obviously, the results of

19　that delivered to the Court.

20　　　　　At this point --

21　　　　　THE COURT:  Stop for a minute.  Okay.  But my

22　understanding now is Ms. DiMaria has told us she's not going to

23　use the stuff in the box I have up here, and I said -- because I

24　have not opened it either, and we have talked about this box

25　that I have before.

26　　　　　So, Ms. DiMaria, if you're not going to use -- my

27　understanding of Laff and -- is that in a Bauman & Rose hearing,

28　those two cases, if no one's going to use it, then I'm not going

1    to struggle with it. So I don't need to worry about it.

2          What I didn't know specifically here, because again,

3    this was done by a judge out of San Francisco, by a special

4    master appointed by that judge, which I had nothing to do with

5    it. The only thing I know is Mr. Garcia has told me in separate

6    proceedings that Judge Haines actually flew down here and dealt

7    with it down here, which was -- I mean, that's wonderful, but --

8    so of course, then I would think about it.

9          I'm concerned that any lawyer who's the subject of a

10   search warrant, it isn't so much for that lawyer that the

11   concern is but rather for his clients, even the names of his

12   clients shouldn't be in the public record. And that's why the

13   special master is appointed, to protect those folks.

14         MR. DOLAN: I agree with that, Your Honor. I think the

15   Court's point is well taken; if we're not going to go into

16   what's in the box, then maybe we don't have a problem.

17         However, the computer was not the only thing seized.

18   As I understand it, there was also a telephone which is the

19   subject of a good number of telephone records that have been

20   obtained, et cetera.

21         So I think where we need to probably focus our

22   attention is having the People make an offer of proof of what

23   they intend to offer that came, and then of course, we can

24   respond properly to that.

25         If they're not offering that was seized in

26   Mr. Replogle's office, obviously, I don't have any particular

27   issue at this point. But if there's items that were seized at

28   his office under the purview of the special master that the

1  People were now going to offer, then we'd want an offer of proof
2  of that, then we'd want to respond accordingly.

3  MR. NIROULA: Your Honor, if I may, Mr. Dolan stated
4  that there was one special master hearing. The second one was
5  for Mr. Replogle's computer, an OmniTech USB device, two cell
6  phones. The first special master was for the physical documents
7  obtained from Mr. Replogle's office. That was also subject to
8  Judge Haines flying down here and conducting a special master
9  hearing.

10  THE COURT: Okay.

11  MR. NIROULA: Judge Haines appointed special master
12  Martin Dean after -- in San Francisco on March 2nd per attorney
13  Amparan --

14  THE REPORTER: I'm sorry?

15  MR. NIROULA: A-m-p-a-r-a-n -- Amparan asserted
16  attorney-client privilege and a request of a special master
17  hearing on behalf of both David Replogle and (unintelligible)
18  who testified (unintelligible) David Replogle, and that was how
19  the special master got appointed by Judge Haines.

20  THE COURT: Okay.

21  (People speaking in courtroom.)

22  THE REPORTER: Quiet, gentlemen, please.

23  MR. NIROULA: And in fact, Judge Haines as a superior
24  court magistrate, made the ruling to which Mr. Sullivan asked
25  Judge Haines, Your Honor, if the People are not satisfied with
26  what they get, what's the process?

27  Judge Haines responded in that in camera hearing and
28  said, "I am the fact-finder. I have made the fact-finding.

1   I've released the documents that I don't see that are for
2   attorney-client privilege or attorney-clients should be asserted
3   and has prima facie of a crime being committed within the
4   relevant of attorney-client privilege."

5          As far as everything else is concerned, a superior
6   court magistrate made a decision to seal everything, and Judge
7   Haines's exact words were, "If the People want anything more,
8   they can file a writ at the appellate court.  They can file an
9   appeal to the appeal court, not issue subsequent search
10  warrants."  I like to put that on the record, Your Honor.

11         THE COURT:  Okay.  Again, Mr. Niroula, I wasn't present
12  for that.  I don't know if that's what happened.  I wasn't
13  present.  And apparently subsequent to that, there was a search
14  warrant --

15         MR. NIROULA:  There was several, Your Honor.

16         MS. DiMARIA:  Your Honor, may I respond, please?

17         THE COURT:  Just a minute.

18         -- and I signed off on those, which is all the stuff in
19  the box up here.  My understanding of Laff is that even if there
20  is a search warrant, those documents seized are sealed anyway
21  and a judge has to make a determination of whether to release
22  some or all of it, period.

23         So the stuff in the box up here, Ms. DiMaria has told
24  me she's not going to use.  So that's a moot point.  But if
25  there are other things out there, then I need to deal with
26  those, whether they should be released or not.

27         Ms. DiMaria, tell me what else there is or not.  I
28  don't know.

1        MS. DiMARIA: There is nothing else, Your Honor.

2        THE COURT: Okay.

3        MS. DiMARIA: If I may be permitted to make my record

4 for a change. The initial search warrant, a special master was

5 appointed. Everything was done. The searches were done through

6 Martin Dean.

7        Subsequent to that, two different hearings were held in

8 Southern California when Judge Haines flew down. One hearing

9 was specifically for physical documents collected from

10 Mr. Replogle's office, and one was for documents off of a

11 computer.

12        I was only given whatever Judge Haines felt was

13 appropriate for me to receive after every single defendant sat

14 down with Judge Haines and had an in camera hearing. This took

15 two separate days, and I was only given a very small number of

16 documents. In fact, when he held up the two piles and said,

17 "Ms. DiMaria gets this; she doesn't get these," the pile that I

18 didn't get appeared to be much larger. I've never gotten those

19 documents.

20        THE COURT: Okay.

21        MS. DiMARIA: So I don't intend to use what I don't

22 have.

23        THE COURT: Okay.

24        MS. DiMARIA: Subsequent to that, I did a new search

25 warrant. Martin Dean drug his feet, was supposed to have had

26 the documents to us six months prior to getting them to us,

27 because we didn't feel that the search warrant -- that the

28 computer was adequately searched. He gave them to us very late

KATHLEEN P. CAGNEY, CSR 10850        1365

1   in the game.

2   And just to remind Your Honor of my ethics, without you
3   understanding what had gone on, you were willing to release
4   those to me to copy for the defense. I am the one who said,
5   "Excuse me, Your Honor, you may not want to do that. There
6   needs to be a special master hearing."

7   THE COURT: Correct.

8   MS. DiMARIA: Then you said, "Yes, absolutely, thank
9   you for pointing that out, Ms. DiMaria." They have stayed with
10  you sealed.

11  THE COURT: Okay.

12  MS. DiMARIA: I have never had access to them. I don't
13  intend to introduce them. I don't have them.

14  THE COURT: All right. So it appears to me, then, what
15  I've heard is Judge Haines made whatever findings he made which
16  I am bound by, since I'm not an appellate court. Whatever he
17  did, I have to accept. In other words, the big pile that you
18  are not going to get, Ms. DiMaria, whatever that was, I don't
19  know anything about, and that's not released.

20  MS. DiMARIA: Nor do I, nor have I asked for it.

21  THE COURT: Okay. So it appears then -- it appears
22  from what you're telling me, Ms. DiMaria, whatever you're going
23  to use, that was gotten via a search warrant via a special
24  master proceeding was passed on by Judge Haines. He agreed to
25  it.

26  MS. DiMARIA: Yes, sir.

27  THE COURT: Okay.

28  MS. DiMARIA: And that's after every defendant had an

1  opportunity to be heard in that in camera hearing that I was
2  excluded from. So they've all had their hearing.

3  THE COURT: So there's nothing else out there that the
4  People are going to seek to introduce that was gotten some other
5  way?

6  MS. DiMARIA: Not from the People. If anything, I'd
7  more ask Mr. Dolan. He's the one with the mirror. But I have
8  nothing other than what's been turned over to me, which was
9  reprovided in discovery.

10  THE COURT: All right. Mr. Dolan.

11  MR. DOLAN: Two things: Yes, we provided a draft of a
12  settlement agreement. We provided a letter dated November 15th
13  to Mr. Lambert. And at this point, there's nothing else that I
14  think is relevant that we've seen on the hard drive.

15  But there is another point, and that is that the People
16  have subpoenaed Mr. Replogle's bank records and telephone
17  records, which probably should have gone through a special
18  master process, I'm not quite sure. I think, based on the fact
19  that if you're not going to reveal a client's name, you
20  certainly wouldn't reveal a client's telephone number.

21  And so we still probably have to deal with that
22  question, but I don't think we have to deal with it at this
23  point, but I think that's one of the things that we have to put
24  on our agenda for next week is what about records of his
25  office -- I'm talking about law office bank transactions and
26  records of his telephone that's used as a tool in his law office
27  or his law practice.

28  THE COURT: Well, my understanding of Laff and the

1    Bauman proceeding, the Bauman & Rose hearings, are that any
2    search warrant or subpoena given to a lawyer, whether the lawyer
3    is charged with a crime or not, is treated the same.  There has
4    to be a special master to protect the lawyer's clients.

5        Not -- so, hypothetically, if there was a subpoena or a
6    search warrant served on Mr. Replogle's office at any time,
7    those are sealed.  According to Laff, those are sealed.  Nobody
8    gets them.  The judge has to have an in camera hearing.  The
9    judge can appoint a special master to help the judge out going
10   through boxes of documents.  But in the end, the call is the
11   judge's.  And Laff says that.  There weren't that many documents
12   in that case.  And that's what happened.

13       The judge tried to get a special master.  The D.A.
14   didn't want to pay.  The judge said, I'm not paying, and that
15   was the big fight.  That has nothing to do with anything here,
16   but if there's anything, then I have to review it in camera.

17       MR. NIROULA:  Thank you, Your Honor.  And in fact, the
18   warrant that Mr. Dolan is talking about is the one that was
19   authored by Investigator Bruce Blanck of the district attorney's
20   office.  I don't recall when the warrant issued magistrate was
21   [sic]; however, the People did not seek to appoint a special
22   master in that warrant.  Subsequently, Mr. Replogle
23   brought (unintelligible) --

24       THE COURT:  Slow down.

25       THE REPORTER:  Please slow down.  Please slow down.  I
26   can't understand you.

27       MR. NIROULA:  Subsequently, Mr. Replogle has probably
28   hundreds of clients with retainers from each, plus trust

1    accounts for his clients and attorney fees and all that.

2         So the People are now requesting a special master and

3    that has opened and exposed Mr. Replogle to a massive tort

4    action by his own clients, which Mr. Replogle is going to then

5    have to turn around and dump it on the district attorney's

6    offices.

7         THE COURT:  Mr. Niroula, if I released all that in a

8    public trial like this without having a hearing, you would have

9    a point.  But that isn't going to happen here.

10        My point is if there is anything out there that, as you

11   have described, Mr. Niroula, then I have to have a hearing in

12   camera to decide whether it's releasable or not.

13        My question this morning is what else is there, so we

14   can go through that proceeding, so I don't run afoul of things.

15        MR. NIROULA:  It's actually in discovery, Your Honor.

16   The People issued a search warrant.  It's all over discovery.

17        THE COURT:  All right.

18        MR. NIROULA:  It's in discovery.

19        THE COURT:  All right.  Let me ask Ms. --

20        MR. GARCIA:  Your Honor --

21        THE COURT:  May I ask Ms. DiMaria, please, what's he

22   talking about, please?

23        MS. DiMARIA:  I can never follow Mr. Niroula.  I have

24   no idea what he's talking about.

25        In regard to Mr. Dolan, we did a search warrant on Bank

26   of America for -- and I don't recall if it was a credit card or

27   an account.  I think it was a credit card of Mr. Replogle's.  So

28   the warrant was not to Mr. Replogle's office, nor his home.  It

1   was to the Bank of America.

2             And we did a search warrant to AT&T. Again, AT&T's

3   records of Mr. Replogle's phone number to see phone calls made.

4   There are no names mentioned other than Replogle's name for his

5   phone.

6             MR. NIROULA: Your Honor, if I may respond for the

7   record, I don't have that search warrant with me; however, the

8   search warrant that I have looked at does indicate that Bank of

9   America was in fact served, but it says for the bank account

10   under the name of The Law Offices of David Replogle, The Law

11   Offices of David Replogle.

12             It also -- the search warrant also requests -- now, I

13   don't know what telephone Ms. DiMaria is indicating here, but

14   when special master was appointed, Mr. Replogle's phone number,

15   (415) 999-3111, that is under the name of The Law Offices of

16   David Replogle, was seized by Martin Dean.

17             Subsequently -- it was subsequent to the second special

18   master hearing. Again, Judge Haines made a factual finding, and

19   certain stuff was released; certain stuff was not. Once again,

20   Judge Haines is a superior court judge who made a fact finding.

21             If the People did request a search warrant to bypass

22   without filing a writ, then those are the concerns I'm raising

23   before this Court.

24             THE COURT: Okay. All right. Mr. Garcia, real

25   briefly, what have you got to say about all this?

26             MR. GARCIA: For the record, I actually was precluded

27   from participating in the second special master hearing because

28   the sheriff's deputy didn't transport me from Southwest that

1   day. So I would ask that anything that was released that day

2   that I would have the ability to review to see if I want to

3   assert privilege to it, since I have not seen it.

4           THE COURT: I don't know what it was.

5           MS. DiMARIA: Anything that was released was provided

6   in discovery. Anything I was given, I gave back in discovery.

7           MR. GARCIA: I don't know whether it was from the first

8   hearing, the second hearing. And quite frankly, there's no

9   index, so I don't know where the documents are.

10          MR. NIROULA: Your Honor, if I may --

11          (Parties speaking simultaneously.)

12          THE COURT: All right. Let me tell you how we're going

13  to shake this out. I don't know either. I brought this up

14  because -- let me reiterate what the law is. Nothing seized

15  from the lawyer can be released unless a judge says it can be

16  released. Whether this special master was appointed or not,

17  special master still -- in the end, that judge has to decide

18  whether it should be released or not.

19          It appears to me so far that the district attorney's

20  not seeking to admit anything that has gotten around that rule.

21  The defense may want to. But at this point neither side is

22  telling me what specific documents you're talking about, so I

23  can't make a ruling because I don't know what specific items are

24  in discussion.

25          MS. DiMARIA: Your Honor, I didn't know we were going

26  to address this today, so I don't have authority at this time.

27  I do intend to introduce that credit card record from

28  Mr. Replogle. It shows him purchasing tickets, the airline

1  tickets. And the phone records, as they were introduced at the

2  prelim already, because it shows voluminous phone calls as been

3  mentioned in my trail brief, my 995 --

4       THE COURT: Okay.

5       MS. DiMARIA: -- the prelim, just the number or the

6  sheer volume of phone calls. Both of those documents were not

7  obtained from Mr. Replogle. They were not obtained from his

8  office nor from his home. They were in the care, custody, and

9  control of Bank of America or AT&T, so...

10       THE COURT: What would this matter if it was a lawyer's

11  bank records, and let's say hypothetically a lawyer has an

12  account and he writes checks, a hundred checks in a month. Some

13  of those checks are to clients. Some of those checks are for

14  witness fees, whatever they may be. But it's not uncommon to

15  have the names of the witness, the name of the client, and all

16  the stuff on the checks. So before those can be released,

17  because there's attorney-client privilege stuff there, like the

18  names of the clients.

19       MS. DiMARIA: Your Honor, I can tell you --

20  unfortunately, I wish I had notice so I could have brought this

21  stuff with me. I don't have it in front of me.

22       THE COURT: Okay.

23       MS. DiMARIA: My memory, there are no client names.

24  They are simply purchases that are made, which is why I'm

25  thinking it was a credit card. There is not a list of client

26  names. There are no client funds that came in. They are

27  purchases that were made by Mr. Replogle.

28       THE COURT: Okay. I'm just telling everybody in this

1    trial there's not going to be anything in the public record

2    about Mr. Replogle's stuff that was not cleared by a special

3    master and/or a court. If you serve records on his telephone or

4    whatever, and nothing else is mentioned, only looking for

5    certain things, then names of the defendants here, for example,

6    and those phone numbers, I don't have a problem with that.

7         But I don't want halfway through the trial for somebody

8    to jump up and try to introduce something in violation of the

9    rules about special masters, because if do you, you're not

10   getting it in, flat out --

11        MS. DiMARIA: I'm telling you --

12        THE COURT: -- just so you all know.

13        MS. DiMARIA: -- those are the only records that I have

14   that I intend to introduce. And I did seek guidance from the

15   special master before we executed these, and he said they did

16   not have to go through him.

17        MR. GARCIA: Your Honor, what about redaction? If the

18   concern is phone numbers for other clients, why not just redact

19   any numbers that aren't relevant to this case?

20        MS. DiMARIA: I have no problem with that.

21        MR. NIROULA: Your Honor, if I may --

22        THE COURT: Good point. Thank you.

23        MR. NIROULA: -- the item of redaction issue, again,

24   Mr. DiMaria has stated Mr. Replogle's phone, which was

25   introduced at the preliminary hearing --

26        THE COURT: The phone was introduced?

27        MS. DiMARIA: No.

28        MR. NIROULA: The phone records were introduced at the